Joseph A. Creitz, Cal. Bar No. 169552
dTelephone: (415) 466-3090
Fax: (415) 513-4475
Email: joe@creitzserebin.com

Paul M. Secunda*
*pro hac vice motion pending*
WALCHESKE & LUZI, LLC
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: psecunda@walcheskeluzi.com

Counsel for Plaintiffs and Proposed Class

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## [SAN JOSE DIVISION]

PAUL S. RUBKE AND SHERIDA DU LAC DE
FUGERES individually, and as representatives
of a Class of Participants and Beneficiaries of
the ServiceNow, Inc. 401(k) Plan,

        Plaintiffs,

        v.

SERVICENOW, INC., AND

BOARD OF DIRECTORS
OF SERVICENOW, INC.

        Defendants.

Case No: 24-cv-1050

**CLASS ACTION COMPLAINT FOR
CLAIMS UNDER ERISA,
29 U.S.C. § 1132(a)(2)**

COMES NOW Plaintiffs, Paul S. Rubke and Sherida du Lac de Fugeres ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries on behalf of the ServiceNow, Inc. 401(k) Plan, by and through their counsel, WALCHESKE & LUZI, LLC, and CREITZ & SEREBIN LLP, as and for a claim against Defendants, allege and assert to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

## INTRODUCTION

1.      Plaintiffs are "participants" in a defined-contribution plan under ERISA Section 3(7), 29 U.S.C. § 1002(7): the ServiceNow, Inc. 401(k) Plan (the "Plan" or "ServiceNow Plan").

2.      The Plan is a Section 401(k) "defined contribution" pension plan under 29 U.S.C. § 1002(34), meaning that contributions by their employer, ServiceNow, Inc. ("ServiceNow"), to the payment of Plan costs is guaranteed but the retirement benefits are not. In a defined contribution plan, the value of participants' investments is "determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l,* 575 U.S. 5, 525 (2015).

3.      As a defined-contribution plan, the Plan allows participants to direct the investment of their contributions, but the investment options included in the Plan are selected by the Plans' fiduciaries.

4.      ServiceNow, through its Board of Directors (collectively "Defendants"), are the Plan Sponsor, Plan Administrators, and fiduciaries of the Plan. ServiceNow and its Board of Directors assigned fiduciary management and administrative duties of the Plan to the certain employees of ServiceNow to manage and administer the Plan.

5.      After careful consultation with experts and review of publicly available documents, Plaintiffs allege two ERISA violations against Defendants: (1) a claim for violation of the duty of prudence against Defendants under 29 U.S.C. § 1104(a)(1) for maintaining underperforming investments in the active suite of American Century One Choice target date

funds; and (2) a claim against Defendants for failure to monitor fiduciaries responsible for Plan administration and management with regard to underperforming investments.

6.    Count I alleges a breach of fiduciary duty of prudence by Defendants  for imprudently maintaining the underperforming active target date suite of American Century One Choice  Funds. By maintaining these Funds, Defendants cost Plan participants tens of millions of dollars during the Class Period. Defendants should have replaced these target date funds on the first day of the Class Period on February 21, 2018. Defendant Plan Committee inexplicably have had some version of these active target date funds in the Plan going back to at least 2012, according to Plan 5500 Forms, depriving participants of compounded returns through these investments in underperforming funds.

7.    Counts II alleges a breach of fiduciary duty by Defendants for failing to monitor those individuals  responsible for not removing at the beginning of the Class Period the underperforming American Century One Choice  target date funds.

8.    Under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, plan fiduciaries must discharge their duty of prudence "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

9.    "In determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Tibble*, 575 U.S. at 528–29. The Supreme Court has stated that "a trustee has a continuing duty to monitor trust investments and remove imprudent ones ... separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Id.* at 529. "If the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2002) (citing *Tibble*, 575 U.S. at 529–30).

10.     The duty of prudence requires a plan fiduciary to systematically review its funds both at the initial inclusion of a particular fund in the plan and at regular intervals to determine whether each is a prudent investment.

11.     During the putative Class Period (February 21, 2018, through the date of judgment), Defendants, as fiduciaries of the Plan, as that term is defined under ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duty of prudence they owed to the Plan by "offer[ing] needlessly expensive investment options." *See Hughes*, 142 S. Ct. at 740.

12.     There is no requirement to allege the actual inappropriate fiduciary actions taken because "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which he has no access, as long as the facts alleged tell a plausible story." *Allen v. GreatBanc Tr. Co.,* 835 F.3d 670, 678 (7th Cir. 2016).

13.     The unreasonable selection and retention of Plan investments in the form of the active suite of American Century One Choice target date funds inferentially tells the plausible story that Defendants breached their fiduciary duty of prudence under ERISA.

14.     These breaches of fiduciary duty caused Plaintiff and Class Members tens of millions of dollars of harm in the form of lower retirement account balances than they otherwise should have had in the absence of these unreasonable Plan fees and imprudent investment options.

15.     To remedy these fiduciary breaches, Plaintiffs bring this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) in a representative capacity to enforce Defendants' liability under 29 U.S.C. § 1109(a), to make good to the Plan all losses resulting from these breaches. In addition, Plaintiffs seeks to reform the Plan to comply with ERISA and to prevent further breaches of fiduciary duties and grant other equitable and remedial relief as the Court may deem appropriate.

**JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 et seq.

17.     This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

18.     Venue is appropriate in this District within the meaning of 29 U.S.C. § 1132(e)(2) because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the District.

19.     In conformity with 29 U.S.C. § 1132(h), Plaintiff will serve this Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

**PARTIES**

20.     Plaintiff Paul S. Rubke is a resident of the State of California and currently resides in Menifee, Riverside County, California, and during the Class Period, is a participant in the Plan under 29 U.S.C. § 1002(7).

21.     Plaintiff Rubke was employed by ServiceNow from 2013 through May 2022, in the position of Senior Major Incident Managed, based in San Diego, California.

22.     Plaintiff Rubke held the following investments in the Plan: Fidelity 500 Index and the American Century One Choice In Retirement Trust S Target Date Fund. He rolled out the Plan in June 2023.

23.     Plaintiff Sherida du Lac de Fugeres is a resident of the State of California and currently resides in Mission Viejo, California, and during the Class Period, and is a participant in the Plan under 29 U.S.C. § 1002(7).

24.     Plaintiff Fugeres worked remotely from home for ServiceNow as a Senior Global Mobility Specialist from April 2022 through January 2023. She was invested in the American Century One Choice 2050 Trust S. She is a current participant in the Plan.

25.     Plaintiffs have Article III standing to bring this action on behalf of the Plan because they suffered actual injuries to their own Plan account in which they are still Participants through their holding the American Century One Choice  target date funds, those injuries are fairly traceable to Defendants' unlawful conduct as fiduciaries of the Plan, and the harm is likely to be redressed by a favorable judgment.

26.     Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

27.     The named Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, regarding the underperformance of the American Century One Choice  Target Date Funds) necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

28.     The named Plaintiffs and all Participants in the Plan, having never managed a large 401(k) Plan such as the Plan, lacked actual knowledge of reasonable investment performance and prudent alternatives investments available to such Plans. Further, Plaintiffs did not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan (including Defendants' processes for selecting and monitoring the Plan's investments) because this information is solely within the possession of Defendants prior to discovery. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth below.

29.     Defendant ServiceNow, Inc. ("ServiceNow") is an American software company based in Santa Clara, California that develops a cloud computing platform to help companies manage digital workflows for enterprise operations. Its principal headquarters are located at

2225 Lawson Lane, Santa Clara, CA 95054. In this Complaint, "ServiceNow" refers to the named Defendants and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain.

30.     ServiceNow acted through its officers, including the Board Defendants, to perform Plan-related fiduciary functions in the course and scope of their business. ServiceNow appointed other Plan fiduciaries, and accordingly had a concomitant fiduciary duty to monitor and supervise those appointees. For these reasons, ServiceNow is a fiduciary of the Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

31.     The Plan Administrator of the Plan is also ServiceNow. As the Plan Administrator, ServiceNow is also a fiduciary with day-to-day administration and operation of the Plan under 29 U.S.C. § 1002(21)(A). It has authority and responsibility for the control, management, and administration of the Plan in accord with 29 U.S.C. § 1102(a). ServiceNow has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

32.     In 2022, the Plan had $967,779,387 in assets entrusted to the care of the Plan's fiduciaries. As a result, the Plan has the tremendous bargaining power to demand well-performing, low-cost investment funds. Defendants, however, did not effectively monitor the underperforming active suite of the American Century One Choice  target date funds.

33.     With 10,887 participants in 2022, the Plan had more participants than 99.65% of the defined contribution Plans in the United States that filed 5500 forms for the 2022 Plan year. Similarly, with $967,779,387 in assets in 2022, the Plan had more assets than 99.69% of the defined contribution Plans in the United States that filed 5500 forms for the 2022 Plan year.

## ERISA'S FIDUCIARY STANDARDS

34.     ERISA imposes strict fiduciary standards of prudence on Defendants as a Plan fiduciaries. 29 U.S.C. § 1104(a)(1) provides in relevant part:

[A] fiduciary shall discharge his duties with respect to a Plan solely in the interest of the participants and beneficiaries and –

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

35.    Title 29 U.S.C. § 1109 provides in relevant part:

Any person who is a fiduciary with respect to a Plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such Plan any losses to the Plan resulting from each such breach, and to restore to such Plan any profits of such fiduciary which have been made through use of assets of the Plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

36.    Under ERISA, fiduciaries that exercise any authority or control over Plan assets, including the selection of Plan investments, must act prudently and not for the benefit of third parties including those who provide investment products.

37.    Fiduciaries have "a continuing duty to monitor investments and remove imprudent ones[.]" *Tibble,* 135 S. Ct. at 1828-29.

38.    29 U.S.C. § 1132(a)(2) authorizes Plan Participants to bring a civil action for appropriate relief under 29 U.S.C. § 1109.

### ERISA'S FIDUCIARY STANDARDS FOR PLAN INVESTEMENTS IN THE DEFINED CONTRIBUTION INDUSTRY

39.    Employers must: (1) establish a prudent process for selecting service providers and reviewing investments; (2) ensure that fees paid to service providers are reasonable in light of the level and quality of services provided; and (3) monitor service providers and investments once selected to make sure they continue to be prudent choices.

40.    Plan fiduciaries of a defined contribution plan have a continuing and regular duty of prudence to monitor all investment options they make available to Plan participants on a regular basis and remove imprudent ones.

---

41.     The primary purpose in selecting plan investments is to give all participants the opportunity to create an appropriate asset allocation under modern portfolio theory by providing diversified investment alternatives.

42.     When choosing an active investment option, the analysis is focused on determining whether the portfolio manager is likely to outperform an appropriate benchmark.

43.     Accordingly, the primary focus when choosing an active investment option to make available to plan participants is the skill of the portfolio manager.

44.     When considering the performance of investments in Plan, Plan fiduciaries must consider both quantitative and qualitative performance metrics.

45.     Quantitative metrics should include not just Morningstar peer rankings over various periods of time, but also other commonly-utilized performance metrics such as Sharpe Ratios, Information Ratios, Batting Averages, and Jensen's Alpha.

46.     Qualitative metrics include tenure of fund manager, whether the fund manager has been recently replaced and by whom, and whether the fund has exhibited changes in capitalization or style drift (growth vs. value, international vs. domestic, etc.).

47.     Prudent fiduciaries replace underperforming Plan investments when the combination of quantitative and qualitative metrics indicate over an extended period of time that certain investments are no longer prudent investments in the Plan.

**THE PLAN'S IMPRUDENT INVESTMENT IN THE
AMERICAN CENTURY ONE CHOICE TARGET DATE FUNDS**

48.     According to the Plan's Form 5500s and other Plan documents, the Plan has offered some version of the active suite of the American Century One Choice Fund target date from at least 2012 through the end of 2023.

49.     A target date fund is an investment vehicle that offers an all-in-one retirement solution through a portfolio of underlying funds that gradually shifts to become more conservative as the assumed target retirement year approaches.

50.     All target date funds are inherently actively managed because managers make changes to the allocations to stocks, bonds, and cash over time. These allocation shifts are referred to as a fund's "glide path." The underlying mutual funds that target date fund managers choose to represent each asset class can be actively or passively managed.

51.     Defendants were responsible for crafting the Plan lineup and could have chosen any other target date families.

52.     Defendants failed to act prudently and breached their fiduciary duty by selecting and retaining the active suite of the American Century One Choice target date funds from February 21, 2018 until present.

53.     For each of challenged imprudent investments discussed below, there existed a prudent alternative investment option – a meaningful benchmark - that satisfied the same role in the same asset category as the challenged fund with respect to the plan fiduciaries' duty to provide a diversified lineup of investment options.

54.     Each prudent alternative investment option is in the same Morningstar Investment category as the challenged option it should have replaced throughout the Class Period.

55.     During the Class Period, Plaintiffs had no knowledge of Defendants' process for selecting investments and for regularly monitoring them to ensure they remained prudent.

56.     During the Class Period, Plaintiffs had no knowledge of how the performance of the challenged funds compared to readily-available prudent alternative investments.

57.     During the Class Period, Plaintiffs did not know about the availability of better-performing (and other essentially identical) investment options that Defendants failed to reasonably offer at the beginning of the Class Period on February 21, 20178 because Defendants

provided no comparative information to allow Plaintiffs to evaluate and compare Defendants' investment options.

58.    The following chart shows the American Century consistently over ten years trailing one of its chief competitors, the Fidelity Freedom Funds, which itself has been an underperforming fund in the past. The following chart illustrates the average performance over the past decade for the 2025, 2030, 2035, 2040 and 2045 target dates funds of the American Century One Choice and Fidelity Freedom Funds (Active Suite).

**<u>Trailing 10-Year Returns</u>**
(Annualized total-return %, through Dec. 11, 2023)



Source: Morningstar, https://www.morningstar.com/funds/target-date-fund-problem-that-indexing-cant-solve

59.    Focusing on just 2040 target date funds across fund families over the last ten years show how comparatively poorly American Century target date funds performed against other similarly target date funds in the same investment fund category:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Target-Date 2040 Funds: Total Returns**
(Ranked from highest to lowest, November 2013-October 2023)



Source:  Morningstar,  https://www.morningstar.com/funds/mutual-fund-strategies-dont-belong-trial

60.      The American Century One Choice total returns have trailed both the category averages for Morningstar Target Date Funds by a wide margin for a specific target date year and more specifically, those of the Fidelity Freedom Funds over many different target date years.

61.      The returns for American Century One Choice for 2035 are even worse, according to the same Morningstar article cited above.

62.      In real time, at the beginning of the Class Period on February 21, 2018, it was clear that the American Century One Choice target dates were overly invested in conservative investments. American Century One Choice has remained with the same conservative equity allocation over the last ten years.

63.      The following chart shows that the American Century One Choice 2040 was the most conservative equity allocation in its investment category:

**Target-Date 2040 Funds: Equity Allocations**
(Ranked from highest to lowest, November 2013-October 2023)



Source:  Morningstar,  https://www.morningstar.com/funds/mutual-fund-strategies-dont-belong-trial

64.     Given the investment objective and purpose of target date funds to grow retirement accounts over the life of the participant's career, it was imprudent to invest in a target date fund family that placed *all* employees in overly-conservative target date funds like the American Century One Choice Funds.

65.     Defendants either did not consider the conservative equity allocation and the poor performance of the American Century One Choice funds in real-time, or if they did, they did not prudently take into account the investment objectives of those who are not in retirement or close to retirement and would desire growth for their retirement accounts as opposed to maintenance of the principal.

66.     Defendants were imprudent starting on February 21, 2018, in retaining the American Century One Choice target date funds, knowing its lacking historical performance and its conservative equity allocation for the previous five years going back to 2013.

67.     During the Class Period and because Defendants imprudently chose investment options that were not materially similar to the better performing comparator funds identified above at the beginning of the Class Period, Defendants caused unreasonable and unnecessary losses to Plaintiffs and Plan's participants invested in the American Century target date funds in the tens of millions of dollars.

68.     Defendants caused objectively unreasonable losses to Plaintiff and the Plan's participants in the amount of approximately $22,135,125.00 from February 21, 2018 through August 31, 2023, when comparing the active suite of the American Century One Choice target date funds to the replacement funds in the American Funds TDF Active Suite:

| Fund Replaced by American Fund | Ticker | Morningstar Category | Damages (08/31/23) |
|---|---|---|---|
| American Century 2020 R6 - Trust I, S | ARBDX | Target-Date 2020 | $ 249,763.00 |
| American Century 2025 R6 - Trust I, S | ARWDX | Target-Date 2025 | $ 665,935.00 |
| American Century 2030 R6 - Trust I, S | ARCVX | Target-Date 2030 | $ 1,664,453.00 |
| American Century 2035 R6 - Trust I, S | ARYIX | Target-Date 2035 | $ 3,963,768.00 |
| American Century 2040 R6 - Trust I, S | ARDUX | Target-Date 2040 | $ 4,706,976.00 |
| American Century 2045 R6 - Trust I, S | ARODX | Target-Date 2045 | $ 4,780,747.00 |
| American Century 2050 R6 - Trust I, S | ARFVX | Target-Date 2050 | $ 3,500,461.00 |
| American Century 2055 R6 - Trust I. S | AREVX | Target-Date 2055. | $ 1,771,225.00 |
| American Century 2060 R6 - Trust I, S | ARGVX | Target-Date 2060 | $ 1,021,950.00 |
| American Century Retire R6 - Trust I, S | ARDTX | Target-Date Retirement | $ (109.153.00) |
| **Total** | | | **$ 22,135,125.00** |

69.     Suitable replacement funds identified in the chart above were selected based on fiduciary performance measures *available in real time* to Defendants in February 2018 (not hindsight) to determine replacement funds.

70.     These identified American Fund TDF alternative investments are not unique in their ability to replace the challenged funds. Other meaningful benchmarks exist in addition to the American Funds TDFs.

71.     The following charts illustrates, based on standard investment performance metrics, other target date funds ("TDFs") in the same investment style category that act as

meaningful benchmarks to the underperforming American Century One Choice 2040 Active Fund:

| Description | ID | Ticker | composite | TotalAnRtn3Years | TotalAnRtn5Years | SharpeRatio3Years | BattingAverage3Years | Alpha3Years | ExcessInfRatio3Years | SharpeRatio5Years | BattingAverage5Years | Alpha5Years | ExcessInfRatio5Years |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| American Funds 2045 Trgt Date Retire R5 | F0USA069U0 | RDHTX | 2.163125471 | 7.92482 | 7.9393 | 0.73 | 0.58 | 1.66 | 0.97014 | 0.79 | 0.61 | 1.38 | 1.16374 |
| TIAA-CREF Lifecycle Index 2045 Instl | F00000IV0R | TLIIX | 1.215720353 | 7.02542 | 7.1891 | 0.65 | 0.57 | 0.69 | 0.84687 | 0.69 | 0.53 | 0.34 | 0.74185 |
| T. Rowe Price Retirement 2045 | F0USA05C0B | TRRKX | 1.460039327 | 7.4569 | 7.1967 | 0.61 | 0.62 | 0.34 | 0.43626 | 0.71 | 0.72 | 0.62 | 0.6348 |
| Mutual of America 2045 Retirement | F0USA06MDX | MURMX | 1.38713184 | 7.71977 | 7.3576 | 0.65 | 0.55 | 0.82 | 0.50278 | 0.75 | 0.58 | 1.03 | 0.68542 |
| TIAA-CREF Lifecycle 2045 Institutional | F0USA06MDX | TTFIX | 0.464137631 | 6.67295 | 6.7118 | 0.57 | 0.55 | -0.16 | 0.14825 | 0.63 | 0.43 | -0.34 | 0.137 |
| Vanguard Target Retirement 2045 Fund | F0USA04B9A | VTIVX | 0.821741227 | 6.74714 | 6.804 | 0.61 | 0.55 | 0.3 | 0.38967 | 0.67 | 0.58 | 0.08 | 0.36285 |
| Fidelity Freedom 2045 | F0USA05N6L | FFICX | 0.435165258 | 6.13877 | 5.3549 | 0.49 | 0.47 | -1.12 | -0.62907 | 0.61 | 0.58 | -0.5 | -0.1696 |
| Voya Index Solution 2045 Port I | F0USA06PI9 | ISIIX | -0.239300304 | 6.31131 | 6.1837 | 0.54 | 0.47 | -0.57 | -0.27796 | 0.61 | 0.53 | -0.55 | -0.10909 |
| JPMorgan SmartRetirement 2045 R5 | F0USA06U8H | JSAIX | -0.360612448 | 6.25085 | 6.5245 | 0.56 | 0.58 | -0.28 | 0.03698 | 0.62 | 0.61 | -0.42 | -0.11128 |
| Fidelity Advisor Freedom 2045 I | F0USA05N6F | FFIIX | -0.650049269 | 5.83352 | 5.271 | 0.49 | 0.45 | -1.13 | -0.70754 | 0.59 | 0.53 | -0.73 | -0.36735 |
| JHancock Multimanager 2045 Lifetime 1 | F0USA05J0I | JLJOX | -0.41759293 | 6.15594 | 5.7541 | 0.51 | 0.48 | -0.98 | -0.47762 | 0.6 | 0.53 | -0.62 | -0.37724 |
| American Century One Choice 2045 I | F0USA055X4 | AOOIX | 1.206125273 | 6.64477 | 7.0211 | 0.68 | 0.55 | 1.05 | 0.35415 | 0.73 | 0.58 | 0.65 | 0.16104 |
| Principal LifeTime 2045 Institutional | F0USA06PAY | LTRIX | 0.020640977 | 6.06068 | 6.2094 | 0.56 | 0.52 | -0.36 | -0.21717 | 0.62 | 0.56 | -0.34 | -0.33564 |
| Fidelity Freedom Index 2045 Investor | F00000436K | FIOFX | -0.915449767 | 5.75186 | 5.3734 | 0.52 | 0.38 | -0.71 | -0.68989 | 0.59 | 0.44 | -0.66 | -0.56453 |
| Franklin LifeSmart 2045 Ret TgtAdv | F0USA05I2G | FLRLX | -0.368303155 | 5.93522 | 5.0682 | 0.5 | 0.48 | -0.93 | -0.57476 | 0.61 | 0.53 | -0.27 | -0.18915 |
| BlackRock LifePath Dyn 2045 K | F00000H3LT | LPHKX | -1.372665553 | 5.23444 | 5.4881 | 0.5 | 0.4 | -1.08 | -0.66443 | 0.53 | 0.36 | -1.38 | -0.77089 |
| Voya Solution 2045 Port I | F0USA05H6F | ISRIX | -0.195876723 | 6.41502 | 5.9132 | 0.52 | 0.48 | -0.88 | -0.3762 | 0.62 | 0.56 | -0.44 | -0.00738 |
| Empower Lifetime 2045 Inv | F0USA08PPC | MXQLX | -0.778278697 | 6.01526 | 6.058 | 0.52 | 0.42 | -0.85 | -0.35599 | 0.58 | 0.42 | -0.88 | -0.34603 |
| Putnam RetirementReady 2045 Y | F0USA05809 | PRVYX | 1.07559621 | 7.0625 | 6.8917 | 0.62 | 0.58 | 0.46 | 0.25162 | 0.73 | 0.56 | 0.75 | 0.36581 |
| Nationwide Destination 2045 R6 | F0USA06X00 | NWINIX | -0.21266003 | 6.039 | 6.083 | 0.53 | 0.53 | -0.66 | -0.29318 | 0.58 | 0.56 | -0.83 | -0.27496 |
| MassMutual RetireSMART by JPM 2045 Adm | F00000SPB8 | MMBYX | -1.416445071 | 5.09231 | 5.2695 | 0.46 | 0.47 | -1.69 | -0.72405 | 0.5 | 0.44 | -1.74 | -0.92424 |
| JHancock Multi-Index 2045 Prsv 1 | F00000GV0P | JFVOX | -0.825028339 | 5.20862 | 5.928 | 0.58 | 0.45 | -0.03 | -0.35743 | 0.55 | 0.42 | -1.05 | -1.35937 |
| GuideStone Funds MyDestination 2045 Inv | F0USA05K3S | GMFZX | -2.244309577 | 3.90489 | 4.0966 | 0.41 | 0.45 | -2.37 | -0.80011 | 0.38 | 0.39 | -3.08 | -1.10889 |

72. This comparative TDF chart further establishes that the American Century One Choice Funds underperformed *multiple* alternative TDFs in the same investment category that act as meaningful benchmarks for the Plan's TDFs during the Class Period.

73. Based on commonly-used, quantitative performance metrics applied to investments (Sharpe ratio, alpha, and batting average), over a five year period of time, the American Century One Choice 2045 target date fund substantially underperformed thirteen other 2045 TDFs, including the American Funds, in the exact same investment category.

74. These comparator TDFs, both the American Fund TDFs and the 2045 TDFs in the chart above therefore, "provid[e] a sound basis for comparison—a meaningful benchmark."

75. By failing to engage in an objectively reasonable investigation process when selecting, retaining, and failing to remove these American Century One Choice Fund investments, Defendants breached their fiduciary duties of prudence to Plaintiffs and Plan participants and are liable to Plaintiffs and Class Members for the retirement monies lost by the challenged funds' poor investment performance net of fees during the Class Period.

## **CLASS ACTION ALLEGATIONS**

76.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

77.     In acting in this representative capacity, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiffs seek to certify, and to be appointed as representatives of, the following Class:

> All participants and beneficiaries of the ServiceNow, Inc. 401(k) Plan who invested in any of the American Century target date funds (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning February 21, 2018, and running through the date of judgment

78.     The Class includes up to 11,000 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

79.     There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owes fiduciary duties to the Plan and took the actions and omissions alleged as to the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

- Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

- Whether Defendants breached their fiduciary duties to the Plan;

- What are the losses to the Plan resulting from each breach of fiduciary duty; and

- What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duty.

80.     Plaintiff's claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were Participants during the time period at issue and the designated participants in the Plan were harmed by Defendants' misconduct in the same manner.

81.     Plaintiffs will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were Participants in the Plan during the Class period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

82.     Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

83.     Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

84.     Plaintiffs' attorneys are experienced in complex ERISA and class litigation and will adequately represent the Class.

85.     The claims brought by the Plaintiffs arise from fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts. The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in the Plan. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

86. Under ERISA, an individual "participant" or "beneficiary" are distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

87. Any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

**FIRST CLAIM FOR RELIEF**
**Breach of Duty of Prudence of ERISA, as Amended**
**(Plaintiffs, on behalf of themselves and Class,**
**Against All Defendants – Investment Underperformance)**

88. Plaintiffs restate the above allegations as if fully set forth herein.

89. Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

90. 29 U.S.C. § 1104(a)(1)(B) imposes a fiduciary duty of prudence upon Defendant Plan Committee in managing the investments of the Plan.

91. Defendants, as a fiduciaries of the Plan, are responsible for selecting and maintaining prudent investment options and taking any other necessary steps to ensure that the Plan's assets are invested prudently.

92. During the Class Period, Defendant Plan Committee had a fiduciary duty to do all of the following: manage the assets of the Plan prudently and act with the care, skill, diligence, and prudence required by ERISA.

93. During the Class Period, Defendant Plan Committee breached its fiduciary duties of prudence to Plan Participants, including Plaintiff, by failing to manage the assets of the Plan prudently, and failing to act with the care, skill, diligence, and prudence required by ERISA.

94.     Defendants, as a fiduciaries of the Plan, had a continuing duty to regularly monitor and independently assess whether the Plan's investments were prudent choices for the Plan and to remove imprudent investment options regardless of how long those investments had been in the Plan.

95.     During the Class Period, Defendants breached their fiduciary duty of prudence to Plan participants, including Plaintiffs, by failing to engage in a prudent process for monitoring the Plan's investments and by failing to remove imprudent investments within a reasonable period.

96.     Defendants were directly responsible for selecting investment options in a prudent fashion, prudently evaluating and monitoring the Plan's investments on an ongoing basis, eliminating funds that were no longer prudent, and taking all necessary steps to ensure that the Plan's assets were invested prudently and appropriately.

97.     Defendants failed to employ a prudent process by failing to evaluate the performance and cost of the Plan's investments critically or objectively in comparison to other more reasonable investment options.

98.     Defendant Plan Committee selected and retained for years as Plan investment options with low performance relative to other benchmark investment options that were readily available to the Plan at all relevant times in the same asset category and in the same investment style.

99.     Defendants' failure to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

100.    As a result of Defendants' breach of their fiduciary duty of prudence with respect to the Plan, the Plaintiffs and Plan participants suffered tens of million dollars in unreasonable and unnecessary monetary losses.

101.    Defendants are liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Plan the losses resulting from the breaches, to restore to the Plan any profits defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breach of fiduciary duty alleged in this Count. In addition, Defendants are subject to other equitable relief pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2).

## SECOND CLAIM FOR RELIEF
### Failure to Adequately Monitor Other Fiduciaries under ERISA,
### (Plaintiffs, on behalf of themselves and Class,
### <u>Against Defendants– Investment Underperformance)</u>

102.    Plaintiffs restate the above allegations as if fully set forth herein.

103.    Defendants had the authority to appoint and remove members or individuals responsible for Plan investment management and were aware that these fiduciaries had critical responsibilities for the Plan.

104.    In light of this authority, Defendants had a duty to monitor those individuals responsible for Plan investment management to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

105.    Defendants had a duty to ensure that the individuals responsible for Plan investment management possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan's investments; and reported regularly to Defendants.

106.    The consistent underperformance of the American Century target date funds in the Plan, inferentially suggest that Defendants breached their duty to monitor individuals responsible for Plan investment management, by, among other things:

a.      Failing to monitor and evaluate the performance of individuals responsible for Plan investment management or have a system in place for doing so, standing

idly by as the Plan suffered significant losses in the form of underperforming investments, and inefficient fund management styles that adversely affected the investment performance of the funds' and their Participants' assets as a result of these individuals responsible for Plan imprudent actions and omissions;

b.      Failing to monitor the process by which Plan investments were evaluated, failing to investigate the availability of better performing target date funds in the same investment categories; and

c.      Failing to remove individuals responsible for Plan investment management whose performance was inadequate in that they continued to maintain poorly performing investments within the Plan, all to the detriment of the Plan and Plan Participants' retirement savings.

107.    As a result of Defendants foregoing breaches of the duty to monitor, the Plaintiffs and Plan Participants suffered unreasonable and unnecessary monetary losses.

108.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants are liable to restore to the Plan all loses caused by their failure to adequately monitor individuals responsible for Plan investment management. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

**WHEREFORE**, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.      A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B.      Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.      A Declaration the Defendants have breached their fiduciary duties under ERISA;

D.      An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of fiduciary duty, including restoring to the Plan all losses resulting from imprudent investment of the Plan's assets,

restoring to the Plan all profits the Defendants made through use of the Plan's assets, and restoring to the Plan all profits which the Participants would have made if the Defendants had fulfilled their fiduciary obligation;

E.      An Order requiring Defendants to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Defendants as necessary to effectuate relief, and to prevent Defendants' unjust enrichment;

F.      An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties;

G.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan Fiduciaries deemed to have breached their fiduciary duties;

H.      An award of pre-judgment interest;

I.      An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J.      Such other and further relief as the Court deems equitable and just.

Dated this 21st day of February 2024

*s/ Joseph A. Creitz*

Joseph A. Creitz
CREITZ & SEREBIN LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 466-3090
Fax: (415) 513-4475
Email: joe@creitzserebin.com

Paul M. Secunda*
    * *pro hac vice motion pending*
WALCHESKE & LUZI, LLC
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
Fax: (262) 565-6469
E-Mail: psecunda@walcheskeluzi.com

Counsel for Plaintiffs and Proposed Class