1   **MORGAN, LEWIS & BOCKIUS LLP**
    Mark A. Feller, Bar No. 319789
2   One Market, Spear Street Tower
    San Francisco, CA 94105-1126
3   Tel: +1.415.442.1000
    Fax: +1.415.442.1001
4   mark.feller@morganlewis.com

5
    Attorneys for Defendants
6   SERVICENOW, INC. AND THE BOARD OF
    DIRECTORS OF SERVICENOW, INC.
7

Deborah S. Davidson (*pro hac vice*)
110 N. Wacker Drive
Chicago, IL 60606-1511
Tel: +1.312.324.1159
Fax: +1.312.324.1001
deborah.davidson@morganlewis.com

Sean McMahan (*pro hac vice*)
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Tel:    +1.214.466.4000
Fax:    +1.214.466.4001
sean.mcmahan@morganlewis.com

Jared R. Killeen (*pro hac vice*)
2222 Market Street
Philadelphia, PA 19103
Tel: +1.215.963.5000
Fax: +1.215.963.5001
jared.killeen@morganlewis.com

8

9

10

11

12

13              **UNITED STATES DISTRICT COURT**

14         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15

16   PAUL S. RUBKE and SHERIDA DU LAC DE          Case No. 3:24-cv-01050-TLT
     FUGERES, individually and as representatives
17   of a Class of Participants and Beneficiaries of   **DEFENDANTS' NOTICE OF MOTION**
     the ServiceNow, Inc. 401(k) Plan,                **AND MOTION TO DISMISS**
18                                                     **AMENDED CLASS ACTION**
                    Plaintiffs,                        **COMPLAINT; MEMORANDUM OF**
19                                                     **POINTS AND AUTHORITIES IN**
              v                                        **SUPPORT**
20
     SERVICENOW, INC. and                         Date:      August 20, 2024
21   BOARD OF DIRECTORS OF                        Time:      2:00 p.m.
     SERVICENOW, INC.,                            Location:  San Francisco Courthouse,
22                                                           Courtroom 9
                    Defendants.                              San Francisco, CA 94102
23                                                Judge:     Hon. Trina L. Thompson
                                                  Am. Compl. Filed: May 27, 2024
24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
Case No. 3:24-cv-01050-TLT

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 20, 2024 at 2:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Trina L. Thompson in Courtroom 9 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, ServiceNow, Inc. ("ServiceNow") and the Board of Directors of ServiceNow, Inc. (collectively, "Defendants") will and hereby do move the Court to dismiss with prejudice the Amended Class Action Complaint ("Amended Complaint") filed by Paul S. Rubke and Sherida du Lac de Fugeres ("Plaintiffs"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defendants base their motion to dismiss on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and such other materials and evidence as may be presented to the Court.  As explained herein, Defendants request that the Court dismiss the Amended Complaint with prejudice.

Dated:  June 21, 2024

MORGAN, LEWIS & BOCKIUS LLP
By */s/ Deborah S. Davidson*
   Deborah S. Davidson
Deborah S. Davidson (*pro hac vice*)
Sean K. McMahan (*pro hac vice*)
Jared R. Killeen (*pro hac vice*)
Mark A. Feller, Bar No. 319789

MORGAN, LEWIS & BOCKIUS LLP
*Attorneys for Defendants*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                                    -1-

# TABLE OF CONTENTS

**Page**

I.     STATEMENT OF ISSUES TO BE DECIDED .................................................. 1

II.    INTRODUCTION ............................................................................................ 1

III.   BACKGROUND .............................................................................................. 4

    A.     The Parties................................................................................................. 4

    B.     The American Century TDFs..................................................................... 5

    C.     Plaintiffs' Proposed Benchmarks.............................................................. 7

    D.     Procedural History and Plaintiffs' Claims ............................................... 9

IV.    ARGUMENT ................................................................................................... 10

    A.     Standard Of Review. ............................................................................... 10

    B.     Plaintiffs' Allegations That Defendants Selected Underperforming
           Investments Do Not Support an Inference That the Fiduciary Process Was
           Flawed. .................................................................................................... 11

          1.     The Court cannot infer imprudence based on allegations that the
               American Century TDFs "underperformed" other investments. ............. 11

          2.     Plaintiffs' additional performance metrics cannot save their claims. ....... 14

          3.     Allegations that the American Century TDFs were "too
               conservative" cannot support an inference that the fiduciary process
               was flawed. .............................................................................................. 15

          4.     Plaintiffs' allegations do not support their contention that the
               American Century TDFs' performance rendered them imprudent. ........... 16

    C.     Plaintiffs Do Not Plausibly Allege Their Comparator Funds Are
           Meaningful Benchmarks for Measuring Performance of the American
           Century TDFs. ......................................................................................... 19

          1.     "Through" retirement target-date funds cannot be meaningful
               benchmarks for "to" retirement target-date funds like the American
               Century TDFs. ......................................................................................... 21

           2.     Target-date funds that invest in passively managed funds cannot be
               meaningful benchmarks for those that invest in actively managed
               funds. ....................................................................................................... 22

          3.     Plaintiffs cannot plead a meaningful benchmark by alleging only
               that the American Century TDFs and other target-date funds are
               "similar." .................................................................................................. 23

    D.     Plaintiffs' Derivative Monitoring Claim Fails as a Matter of Law. ........ 25

V.     CONCLUSION ............................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022)...................................................................... 2, 19

5

6

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   579 F. Supp. 3d 1133 (N.D. Cal. 2022) ............................................... *passim*

7

*Barchock v. CVS Health Corp.*,
   2017 WL 9324762 (D.R.I. Jan. 31, 2017)........................................... 15, 16

8

9

*Beldock v. Microsoft Corp.*,
   2023 WL 3058016 (W.D. Wash. Apr. 24, 2023)......................... 2, 13, 14, 25

10

*Bracalente v. Cisco Sys., Inc.*,
   2023 WL 5184138 (N.D. Cal. Aug. 11, 2023)...................................... *passim*

11

12

*Bracalente v. Cisco Sys., Inc.,*
   2024 WL 2274523 (N.D. Cal. May 20, 2024) ..................................... *passim*

13

*Cho v. Prudential Ins. Co. of Am.*,
   2021 WL 4438186 (D.N.J. Sept. 27, 2021) ................................................ 18

14

15

*Davis v. Salesforce*,
   2020 WL 5893405 (N.D. Cal. Oct. 5, 2020).............................................. 25

16

*Davis v. Salesforce.com Inc.*,
   2021 WL 1428259 (N.D. Cal. Apr. 15, 2021) ........................................... 22

17

18

*Davis v. Salesforce.com, Inc.*,
   2022 WL 1055557 (9th Cir. Apr. 8, 2022) ........................................ *passim*

19

20

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020).................................................... 11, 12, 23

21

*Enos v. Adidas Am., Inc.*,
   2021 WL 5622121 (D. Or. Aug. 26, 2021) *R. & R. adopted*, 2021 WL 5611481
   (D. Or. Nov. 30, 2021) .......................................................................... 7, 23

22

23

24

*Evans v. Assoc. Banc-Corp.*,
   2022 WL 4638092 (E.D. Wis. Sept. 30, 2022) .......................................... 18

25

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) ........................................................................ 11, 23

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT

3:24-cv-01050-TLT                                                        -i-

*Fisher v. Secchitano*,
2020 WL 1068873 (D. Or. Feb. 3, 2020), *R. & R. adopted,* 2020 WL 1068068
(D. Or. Mar. 5, 2020) .................................................................................................... 15

*Forman v. TriHealth, Inc.*,
40 F.4th 443 (6th Cir. 2022)......................................................................................... 12

*Hall v. Cap. One Fin. Corp.*,
2023 WL 2333304 (E.D. Va. Mar. 1, 2023) ........................................................... *passim*

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022) .............................................................................................. *passim*

*Johnson v. Parker-Hannifin Corp.*,
2023 WL 8374525 (N.D. Ohio Dec. 4, 2023) ....................................................... 22, 24

*Kendall v. Pharm. Prod. Develop., LLC*,
 2021 WL 1231415 (E.D.N.C. Mar. 31, 2021) ............................................................. 25

*Langston. v. Cobham Advanced Elec. Solutions, Inc.*,
No. 5:23-03785-EJD (N.D. Cal.) .................................................................................. 13

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011)........................................................................................... 8

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023).............................................................................. *passim*

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022)............................................................................................ 3

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018)........................................................................ 3, 12, 19, 22

*Parmer v. Land O'Lakes*,
518 F. Supp. 3d 1293 (D. Minn. 2021) ........................................................................ 25

*Partida v. Schenker, Inc.*,
2024 WL 1354432 (N.D. Cal. Mar. 29, 2024)................................................... 2, 13, 23

*Rosenkranz v. Altru Health Sys.*,
2021 WL 5868960 (D.N.D. Dec. 10, 2021).................................................................. 25

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022)......................................................................... 2, 12, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ........................................................................................................ 4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                                    -ii-

*Tibble v. Edison Int'l,*
    575 U.S. 523 (2015) .................................................................................................. 10

*Tobias v. NVIDIA Corp.,*
    2021 WL 4148706 ..................................................................................................... 20

*Tullgren v. Hamilton,*
    2023 WL 2307615 (E.D. Va. Mar. 1, 2023) ..................................................... 14, 22

*Wehner v. Genentech, Inc.,*
    2021 WL 2417098 (N.D. Cal. June 14, 2021) ............................................... *passim*

*White v. Chevron Corp.,*
    2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ...................................................... 11

*White v. Chevron Corp.,*
    2017 WL 2352137 (N.D. Cal. May 31, 2017) ............................................... *passim*

*White v. Chevron Corp.,*
    752 F. App'x 453 (9th Cir. 2018) .................................................................. 2, 12

**Statutes**

29 U.S.C. § 1104(a)(1) ...................................................................................................... 2

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                                    -iii-

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Court should dismiss Plaintiffs' fiduciary-breach claim in Count I because the Amended Complaint's allegations that Defendants could have selected better-performing target-date funds for the ServiceNow, Inc. 401(k) Plan (the "Plan") still do not support an inference that the Plan's fiduciaries breached their duty of prudence under the Employee Retirement Income Security Act ("ERISA").

2.     Whether the Court should dismiss Plaintiffs' failure-to-monitor claim in Count II because it is derivative of, and falls with, Count I.

## II.     INTRODUCTION

The new allegations in Plaintiffs' Amended Complaint double down on the same flawed theory of liability while doing nothing to correct the defects that required dismissal of their original pleading.  Specifically, Plaintiffs again claim Defendants breached their ERISA duty of prudence by selecting the American Century One Choice Target-Date Funds ("American Century TDFs") as Plan investments instead of a handful of other target-date suites that took on more risk and, purportedly, generated greater returns.  As Defendants demonstrated in their first motion to dismiss Dkt. 22, merely alleging that an investment "underperformed" is not enough to suggest imprudence.  Moreover, Plaintiffs failed to identify meaningful benchmarks for assessing the performance of the American Century TDFs, an independent basis for dismissal.  Plaintiffs responded by filing an Amended Complaint that makes only three notable changes from their original complaint: defining a few of their "standard" performance metrics, Am. Compl. ¶ 88, adding one additional method for measuring investment performance, *id.* ¶¶ 89-92 and proffering one additional inapt benchmark, *id.* ¶¶ 100-04.  These new allegations do not move the needle.  Plaintiffs' claims still fail as a matter of law, and the Court should dismiss the Amended Complaint.

To start, ERISA fiduciaries are not required to select the best-performing investments, and "poor performance, standing alone, is not sufficient to create a reasonable inference" that the fiduciaries breached their duty of prudence "either when the investment was selected or as its

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                                    -1-

underperformance emerged." *Bracalente v. Cisco Sys.*, 2024 WL 2274523, at *11 (N.D. Cal. May 20, 2024) ("*Bracalente II*") (Davila, J.) (citations omitted); *accord White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018) ("*White III*").  Courts thus "widely and consistently reject attempts to impose ERISA liability where the claims are based solely on a fund's underperformance," *Bracalente v. Cisco Sys., Inc.*, 2023 WL 5184138, at *3 (N.D. Cal. Aug. 11, 2023) ("*Bracalente I*") (Davila, J.), as evidenced by the Ninth Circuit's ruling in *White III* and recent decisions by judges in this District.  *See White III*, 752 F. App'x at 455; *Partida v. Schenker, Inc.*, 2024 WL 1354432, at *7 (N.D. Cal. Mar. 29, 2024) (Martínez-Olguín, J.); *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1147 (N.D. Cal. 2022) (Koh, J.), *appeal pending*, No. 22-16268 (9th Cir.).

Plaintiffs' decision to explain the meaning of the performance metrics in their Amended Complaint—such as Sharpe ratios[1]—and include a "composite score" of the metrics from the original complaint is just another way of alleging the American Century TDFs "underperformed." As a result, the Court should dismiss Count I.  *See, e.g.*, *Beldock v. Microsoft Corp.*, 2023 WL 3058016, at *3 (W.D. Wash. Apr. 24, 2023) (dismissing amended complaint challenging performance of target-date funds that relied only on "additional measurements of investment performance beyond those Plaintiffs included in their original complaint'") (citations omitted).

Count I again fails for a second reason: Plaintiffs do not allege facts suggesting their proposed "prudent" alternative investments are apt benchmarks for the American Century TDFs. Every circuit court to address investment underperformance claims, including the Ninth Circuit, has held that to plausibly allege a "prudent fiduciary in like circumstances" (the standard imposed by ERISA, 29 U.S.C. 1104(a)(1)) would have selected a different investment, a plaintiff must provide a "meaningful benchmark" for measuring performance.  *See, e.g.*, *Davis v. Salesforce.com, Inc.*, 2022 WL 1055557, at *2 n.1 (9th Cir. Apr. 8, 2022) (affirming dismissal where complaint did not offer a meaningful benchmark for plan's target-date funds) (unpublished); *accord Matney v. Barrick Gold of N. Am.,* 80 F.4th 1136, 1148 (10th Cir. 2023); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581 (7th Cir. 2022);

---

[1] The Sharpe ratio compares the return of an investment with its risk.  Am. Compl. ¶ 88.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                              -2-

*Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018).  This is a "challenging pleading burden" that requires more than identifying alternative investments with "some similarities" to the contested funds.  *Meiners*, 898 F.3d at 822-823.  Rather, Plaintiffs must plead non-conclusory facts showing each proposed comparator had similar investment strategies, asset allocations, and risk profiles to the challenged funds.  *E.g.*, *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022).

The Amended Complaint adds nothing to the conclusory allegations that failed to state a claim the first time.  Instead, Plaintiffs now assert that "[a]ll TDFs are directly comparable" no matter the differences between their investment strategies and underlying holdings.  Am. Compl. ¶ 60.  That is wrong, and courts throughout the country routinely dismiss underperformance claims that rely on comparisons of target-date funds with different investment strategies or asset allocations.  *See, e.g.*, *Bracalente II*, 2024 WL 2274523, at *8-9 (collecting cases).  Yet Plaintiffs continue to offer *zero* allegations about the underlying investments, asset allocations, strategies, fees, or any other attribute of the American Century TDFs or any of Plaintiffs' proposed comparator funds.  Instead, Plaintiffs allege only that their proffered comparators are in the same Morningstar "investment category" as the American Century TDFs, along with *every other TDF suite offered in the market*.  Am. Compl. ¶ 64.  That is not enough.

Plaintiffs' alternatives are not meaningful comparators in critical respects.  For instance, publicly available information shows the American Century TDFs utilize a "to retirement" investment strategy, meaning they reach their most conservative investment allocation at the designated retirement date (*e.g.,* 2030).  On the other hand, many of Plaintiffs' comparators utilize a "through retirement" strategy, meaning they continue to de-risk years or even decades *after* the designated retirement date.  Comparing returns of funds with this sort of apples-to-oranges investment strategy cannot support a fiduciary-breach claim.  *See, e.g.*, *Salesforce.com*, 2022 WL 1055557, at *2 n.1; *Matney*, 80 F.4th at 1154, n.14 (affirming dismissal of claims comparing "to" retirement and "through" retirement target-date funds); *Wehner v. Genentech, Inc.*, 2021 WL 2417098, at *8 (N.D. Cal. June 14, 2021) (plaintiffs cannot "dodge the requirement for a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                          -3-

1   meaningful benchmark by merely finding a less expensive alternative fund or two with some

2   similarity") (citation omitted) (Orrick, J.), *appeal pending*, No. 24-2630 (9th Cir.).  Beyond that,

3   the Amended Complaint proffers one new comparison—the S&P Target Date Index—but it is just

4   as meaningless as the others because it is essentially a composite of those same funds.  As a result,

5   it necessarily does not share the same investment strategy, style, risk profile, or asset allocation as

6   the American Century TDFs (nor is it even investible).  Plaintiffs' failure to allege any meaningful

7   benchmarks once again dooms their claim.

8       For these reasons, and those explained in further detail below, the Court should dismiss the

9   Amended Complaint with prejudice.

10  **III.   BACKGROUND**

11      **A.   The Parties.**

12      ServiceNow is a software company based in Santa Clara, California, that develops cloud-

13  computing platforms to help companies manage digital workflows.  Am. Compl. ¶ 29.  ServiceNow

14  offers many benefits to its employees, including the Plan.  The Plan is a defined-contribution 401(k)

15  plan that offers retirement benefits to eligible ServiceNow employees.  *Id.* ¶ 2.  Plan participants

16  choose the investments for their individual Plan accounts from a menu of investment options

17  selected by the Plan's fiduciaries.  *Id.* ¶¶ 2-3.  A participant's retirement benefit is determined by

18  the amount of employer and employee contributions and the market performance of the investments

19  selected by each individual participant.  *Id.*  During the putative class period, participants could

20  invest in various iterations of the American Century TDFs and roughly twenty different mutual

21  funds from well-known investment managers such as BlackRock and Fidelity.  Ex. 7, 2021 Form

22  5500, Fin. Stmt. at 15.[2]

23      This lawsuit challenges Defendants' decision to offer the American Century TDFs.  Target-

24  date funds are a popular one-stop investment option designed for individuals who do not want to

---

[2] The Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The cited exhibits are appended to the Killeen declaration included with the Request for Judicial Notice filed concurrently with this motion and are properly before the Court.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                    -4-

actively manage their retirement savings.  Am. Compl. ¶ 50.  Target-date funds utilize a "fund of funds" investment strategy and are comprises of a mix of stocks, bonds, and other investments.[3] Target-date funds invest in riskier assets as the retirement date is farther out, and automatically rebalance to become more conservative as the retirement date approaches, a strategy that allows investors to "set it and forget it."  *See, e.g.*, *Anderson*, 579 F. Supp. 3d at 1140.

Plaintiffs are former ServiceNow employees and current or former Plan participants.   Am. Compl. ¶¶ 20-24.  The Amended Complaint alleges Plaintiff Rubke selected at different times the "In Retirement" vintage and the 2020 vintage of the American Century TDFs.  *Id.* ¶ 22.  Plaintiff Fugeres invested in the 2050 vintage.  *Id.* ¶ 24.

## B.        The American Century TDFs.

The American Century TDFs are a suite of target-date funds managed by American Century Investments.  Am. Compl. ¶ 5.  Like other target-date funds, the American Century TDFs cover a range of potential retirement dates, generally spaced in five-year increments (e.g., 2025, 2030, and so on).  Each vintage represents an anticipated retirement date, so a 2030 fund is for individuals retiring in or around 2030.  Ex. 1, U.S. Dep't. of Labor, *Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries*, Feb. 2012,  at 1.

A target-date fund's initial asset allocation—when the target retirement date is decades away—consists mostly of stocks or equity investments, which have greater potential for higher returns but can be more volatile and carry greater investment risk.  Ex. 1 at 1.  As the target retirement date approaches, the target-date fund "de-risks" to include a higher proportion of more conservative investments, such as bonds and cash instruments, which generally are less volatile and carry less investment risk than equities.  *Id.*  This shift in asset allocation is called the "glide path." Am. Compl. ¶ 51.

The Department of Labor ("DOL") emphasizes that "[i]t is important to know whether [the] glide path uses a 'to retirement' or a 'through retirement' approach."  Ex. 1 at 1.  A target-date fund with a "to retirement" approach reduces the fund's equity exposure over time so that the fund

---

[3] *Save the Date: Target-Date Funds Explained* (Apr. 21, 2022), https://www.finra.org/investors/ insights/save-date-target-date-funds-explained (last visited June 20, 2024).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                                                  -5-

reaches its most conservative point at the target retirement date.  *Id.; see also* Am. Compl. ¶ 57. Alternatively, a fund utilizing a "through retirement" approach reduces equity exposure through *and beyond* the target retirement date so that the fund does not reach its most conservative point until years after retirement.  Ex. 1 at 1; *see also* Am. Compl. ¶ 58.  Thus, a "through retirement" fund might "keep a sizeable investment in more volatile assets, like stocks, even as they pass their 'target' retirement dates," meaning that an employees' retirement savings "may continue to have some investment risk after they retire."  Ex. 1 at 2.  The American Century TDFs are "to retirement" funds, which means they reach their most conservative investment allocation by the date of retirement.  Ex. 8, Morningstar 2020 Target-Date Strategy Landscape, at 7.

Aside from glide path differences, target-date funds managed by different companies have different investment strategies and hold different types and percentages of equities, bonds, and other assets.  Ex. 1 at 1.  These differences "can significantly affect the way a TDF performs."  *Id.* According to Morningstar, the American Century TDFs have a "distinct" investment approach that "has led to attractive long-term risk-adjusted returns."  Ex. 2, Morningstar American Century One Choice Series Report, June 30, 2023, at 2.  Morningstar explains that "[o]ver the trailing 10 years ended December 2022, seven out of eight vintages produced top-quartile Sharpe ratios, and all eight outpaced their respective target-date Morningstar Category indexes."  *Id.*

The Amended Complaint relies heavily on two articles for Plaintiffs' substantive allegations about the American Century TDFs.  *See, e.g.*, Am. Compl. ¶¶ 69, 70, 75.  Both were written by John Rekenthaler, are entitled *Mutual Fund Strategies Don't Belong on Trial*, Nov. 30, 2023 (filed herewith as Ex. 3), and *The Target-Date Fund Problem That Indexing Can't Solve*, Dec. 14, 2023 (filed herewith as Ex. 4), and were published by Morningstar.  *Id.*  As the first Rekenthaler article explains, the American Century TDFs "have been very cautious" in their equity allocations, and "over the past 10 years, the company's 2040 fund has held its category's lowest equity weighting," meaning it exposed investors to less risk than other target-date suites.  Ex. 3 at 4.  "The equity allocation at the onset is 85% (roughly 8% lower than the peer average)" and "settles at 45% at retirement."  Ex. 2 at 2.  This "gentle decline to retirement has helped manage volatility and led to

1    solid risk-adjusted returns." *Id.*

2         Because the American Century TDFs target "less equity exposure than peers through most

3    of the glide path," they "held up better during volatile markets, such as early 2020 and late 2018,

4    when most vintages lost less than their category peers and indexes." *Id.*  On the other hand, they

5    did not perform as well as other target-date funds "during the past decade's extended bull market."

6    *Id.* at 7.  The American Century TDFs' "strategic biases have served this series well over the past

7    decade.  It maintains a more-pronounced tilt toward U.S. equities than many competing series.  This

8    makeup has provided a tailwind over the past decade as U.S. stocks have comfortably outperformed

9    their non-U.S. counterparts." *Id.*

10        Contrary to the allegations in the Amended Complaint, the Plan's fiduciaries were not

11   passive or idle—the Plan offered several different iterations of the American Century TDFs during

12   the putative class period (February 1, 2018, to the present).  In 2018, the Plan offered the "R6"

13   mutual fund version.  Ex. 5, 2018 Form 5500, Fin. Stmts., at 13.  In 2019, the Plan began offering

14   the American Century Trust I collective investment trust ("CIT") version.[4]  Ex. 6, 2019 Form 5500,

15   Fin. Stmts., at 13.  In 2021, the Plan switched to the Trust S CIT version.  Ex. 7, Fin. Stmts., at 15.

16   Each of these changes resulted in Plan participants paying a lower investment-management fee to

17   American Century, effectively resulting in greater investment returns.[5]  On December 1, 2023, the

18   Plan replaced the American Century TDFs with the Fidelity Freedom CIT S target-date funds

19   ("Fidelity CITs").  Am. Compl. ¶ 25.

20        **C.    Plaintiffs' Proposed Benchmarks.**

21        Plaintiffs compare the performance of the American Century TDFs to the performance of a

22   random selection of other target-date funds.  For instance, the Amended Complaint includes a chart

---

[4] CITs and mutual funds "follow similar investment strategies, but the former offer lower administrative fees" for investors.  *See Enos v. Adidas Am., Inc.*, 2021 WL 5622121, at *7 (D. Or. Aug. 26, 2021), *R. & R. adopted*, 2021 WL 5611481 (D. Or. Nov. 30, 2021).  CITs and mutual funds also have different disclosure requirements.  2021 WL 5622121, at *7.

[5] Investment-management fees "compensate a fund for designing and maintaining the fund's investment portfolio.  These fees are usually calculated as a percentage of the assets the plan participant chooses to invest in the fund, which is known as the expense ratio." *Hughes v. Nw. Univ.*, 595 U.S. 170, 173-74 (2022).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

showing that five different vintages of the American Century TDFs (2025, 2030, 2035, 2040 and 2045)—none of which Plaintiffs selected as investments—underperformed the Fidelity Freedom Target Date Funds ("Fidelity TDFs") over the trailing ten years through December 11, 2023. Am. Compl. ¶ 69. Plaintiffs include a second chart showing that the 2040 American Century TDF had total positive returns of around 3% over the past ten years, while twenty-two out of twenty-five other 2040 target-date funds (only six of which are identified by name in the Amended Complaint) had higher returns. *Id*. ¶ 70. The Amended Complaint includes a third chart showing various "investment performance metrics" comparing the 2045 vintage of the American Century TDF to several other target-date funds. *Id.* ¶ 84.

Plaintiffs allege that "[a]ll TDFs are directly comparable" no matter the differences between their investment strategies and asset allocations. Am. Compl. ¶ 60. Plaintiffs also claim that all the comparators in the Amended Complaint are "suitable replacement funds" for the American Century TDFs because each one is in "the same Morningstar Investment category as the challenged option it should have replaced[]"—namely, Morningstar's "Target Date Category."[6] *Id*. ¶¶ 64, 70, 82. Beyond the Morningstar category, the Amended Complaint generally alleges no facts about the investment strategies or asset allocations of any of the comparator funds. For instance, the Amended Complaint does not contain any information about whether any comparator utilizes a "to retirement" or "through retirement" glide-path strategy. *See generally* Am. Compl. Plaintiffs allege the American Century TDFs invest only in actively managed underlying funds, but they do not allege whether the comparator TDFs use actively or passively managed underlying funds.[7] *Id.* ¶¶ 5, 42-43, 48, 54.

---

[6] As of the Complaint's filing, there are hundreds of target-date funds in Morningstar's "Target Date Category." *See* Ex. 15, Morningstar Target-Date List.

[7] Plaintiffs allege that all target-date funds are actively managed, while conceding the underlying investments can be actively or passively managed. Am. Compl. ¶¶ 51-52. Passively managed funds "do not make any independent investment choices but simply track a designated portfolio such as the Standard & Poor's 500[] Index and have features that discourage turnover." *Loomis v. Exelon Corp.*, 658 F.3d 667, 669-70 (7th Cir. 2011). For actively managed ones, "the fund's investment advisers try to find and buy underpriced securities while selling ones that the advisers think are overvalued[] and to allow rapid turnover both in the funds' holdings and the participants' investments." *Id.* at 669-70.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                                                    -8-

The only information regarding asset allocation is a chart showing that between November 2013 and October 2023, the American Century 2040 TDF—again, a vintage neither Plaintiff alleges he or she selected—had "the most conservative equity allocation" compared to twenty-four other target-date suites, only five of which are identified.  Am. Compl. ¶ 75.  But this chart says nothing about specific allocations, does not identify any investment held by any fund, and contains no information about the numerous *other* vintages of American Century TDFs offered in the Plan.  *Id.*

Beyond the comparator Plaintiffs put forth in their original complaint, the Amended Complaint adds one new benchmark: the S&P Target Date Index.  Am. Compl. ¶¶ 100, 102.  The Amended Complaint says nothing about why the S&P Target Date Index might be a meaningful comparator for the American Century TDFs. *See generally* Am. Compl.  The S&P Index is a composite of various target-date funds available in the market.  Ex. 16, S&P Target Date Index Series Methodology ("Methodology") at 2.  The index comprises a separately calculated index for each target date, and each "measures the performance of sub-indices selected and weighted to represent a consensus of the opportunity set available in the U.S. universe of target date funds." *Id.*

### D. Procedural History and Plaintiffs' Claims.

In their original complaint, Plaintiffs alleged Defendants breached their fiduciary duty of prudence by offering the American Century TDFs because that suite of funds "underperformed" other target-date funds.  Dkt. 1 ¶¶ 58-75.  Defendants' motion to dismiss, Dkt. No. 22, explained that underperformance allegations alone cannot support a claim that the Plan's fiduciaries acted imprudently.  *Id.* at 10-17.  And Plaintiffs' allegations relying on a handful of undefined "standard" performance metrics did not show that the American Century TDFs underperformed at all; instead, the data showed just the opposite—over the three- and five-year periods listed in the complaint, the American Century TDFs outperformed most alternatives under every metric.  *Id.* at 16-17.  Finally, the original complaint offered no allegations plausibly showing the proposed alternative target-date funds were meaningful benchmarks for the American Century TDFs because Plaintiffs alleged nothing at all about the alternative funds' investment strategies or holdings, while publicly available information established that the American Century TDFs used a different glide path and different

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                          -9-

1    investment strategies than the alternative funds.  *Id*. at 17-22.

2          Plaintiffs' Amended Complaint again offers a single theory of wrongdoing—Defendants

3    could have picked a target-date suite that generated better returns for the Plan's participants—while

4    failing to add allegations identifying any other indicia of imprudence that might render Plaintiffs'

5    claim plausible.  Plaintiffs recycle the same charts and graphs from the original complaint, again

6    without identifying most of the comparator funds and offering no details regarding their glide paths,

7    investment strategies, or holdings.  The Amended Complaint *removes* the three-year "standard

8    investment performance metrics" data while keeping the five-year performance data showing the

9    American Century TDFs *outperformed* the alternative target-date funds Plaintiffs identify, *compare*

10   Compl. ¶ 71 and Am. Compl. ¶ 84, again without explaining why Plaintiffs believe such allegations

11   support their claims.

12         At most, the Amended Complaint makes three substantive additions.  First, Plaintiffs define

13   the "standard" performance metrics identified in Paragraph 84 (Paragraph 71 of the original

14   complaint).  Am. Compl. ¶ 88.  Second, Plaintiffs include a "composite score" of the four

15   "standard" metrics and then rank various vintages of the American Century TDFs and the American

16   Funds TDFs (the best performing target-date suite according to Plaintiffs) against between twenty-

17   nine and forty-one other *unidentified* target-date suites.  *Id.* ¶¶ 89-95.  Third, Plaintiffs add a new

18   benchmark for measuring performance, the S&P Target Date Index.  *Id.* ¶ 102.  In short, Plaintiffs

19   still rely only on the alleged underperformance of the American Century TDFs measured against a

20   handful of benchmarks with dissimilar (or unknown) investment strategies.

21   **IV.    ARGUMENT**

22         **A.    Standard Of Review.**

23         ERISA fiduciaries owe a duty of prudence to plan participants, which includes "a continuing

24   duty to monitor investments and remove imprudent ones."  *Tibble v. Edison Int'l*, 575 U.S. 523,

25   530 (2015).  ERISA's "test of prudence" asks whether the fiduciaries, "at the time they engaged in

26   the challenged [activity], employed the appropriate methods to investigate the merits of the

27   investment."  *White v. Chevron Corp*., 2017 WL 2352137, at *13 (N.D. Cal. May 31, 2017)

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                                    -10-

(Hamilton, J.) ("*White II*"), *aff'd*, *White III*, 752 F. App'x 453.  The question is *not* whether a better performing investment existed in the marketplace.  *White II*, 2017 WL 2352137, at *4 (prudence analysis focuses on conduct, not results).  Further, a fiduciary's actions are not judged "from the vantage point of hindsight."  *White v. Chevron Corp.*, 2016 WL 4502808, at *8 (N.D. Cal. Aug. 29, 2016) (Hamilton, J.) ("*White I*") (citation omitted).  To nudge a fiduciary breach claim from conceivable to plausible, a plaintiff must allege facts supporting an inference that the fiduciaries' decision-making process was unlawful.  *See White II*, 2017 WL 2352137, at *13; *see also Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482 (8th Cir. 2020) ("*Wash. U.*").

To satisfy this standard, an ERISA complaint must set forth either direct allegations that the fiduciary's management process was flawed or circumstantial allegations permitting the court to infer "more than the mere possibility of misconduct."  *Wehner*, 2021 WL 2417098, at *4.  When a complaint relies on circumstantial factual allegations, as Plaintiffs do here, "those allegations must give rise to a '*reasonable* inference' that the defendant committed the alleged misconduct, *i.e.*, the facts alleged must be suggestive of, rather than merely consistent with, a finding of misconduct."  *Bracalente I*, 2023 WL 5184138, at *3 (emphasis in original) (citation omitted).

The Supreme Court recognizes that ERISA fiduciaries often face "difficult tradeoffs," and courts "must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise."  *Hughes*, 142 S. Ct. at 742.  Ultimately, the court must conduct a "careful, context-sensitive scrutiny of a complaint's allegations" to "divide the plausible sheep from the meritless goats."  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

**B.**     **Plaintiffs' Allegations That Defendants Selected Underperforming Investments Do Not Support an Inference That the Fiduciary Process Was Flawed.**

**1.**     **The Court cannot infer imprudence based on allegations that the American Century TDFs "underperformed" other investments.**

The Amended Complaint rests on a single theory of fiduciary breach:  some vintages of the American Century TDFs—but not those vintages actually selected by Plaintiffs—had lower investment returns during the putative class period than some other target-date funds and the S&P

Index.  Courts have widely rejected this theory of liability.

Nothing in ERISA "requires a fiduciary to pick the best performing fund."  *Meiners*, 898 F.3d at 822-23; *accord CommonSpirit*, 37 F.4th at 1166; *Wash. U.*, 960 F.3d at 485.  This means an allegation of "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to" prudently select or monitor investments.  *White II*, 2017 WL 2352137, at *20.  As the Tenth Circuit recently held, "[i]t is uniformly recognized imprudence cannot be inferred based solely on allegations identifying the existence of . . . better performing alternative funds."  *Matney*, 80 F.4th at 1154, n.15 (collecting cases); *see also Forman v. TriHealth, Inc.*, 40 F.4th 443, 448-49 (6th Cir. 2022) ("a showing of imprudence cannot 'come down to simply pointing to a fund with better performance'") (citation omitted).  Therefore, allegations that some other funds performed better do not support an inference that the fiduciary process was flawed.  *See, e.g.*, *White III*, 752 F. App'x at 455; *Meiners*, 898 F.3d at 823 ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [challenged funds] were an imprudent choice at the outset.").  The Sixth Circuit elaborated on these principles in *Forman*:

> Disappointing performance in the near term . . . do not by themselves show deficient decision-making, especially when we account for competing explanations and other common sense aspects of long-term investments.  Different services, investment strategies, and investor preferences invariably lead to a spectrum of options—and in turn a spectrum of . . . performance outcomes.  As a result, side-by-side comparisons of how two funds performed in a narrow window of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option.

40 F.4th at 449 (citations omitted).

For these reasons, Judge Davila recently dismissed similar claims challenging a suite of target-date funds managed by BlackRock.  In *Bracalente I*, the plaintiffs alleged the BlackRock target-date funds were imprudent because they "underperformed significantly" during the putative class period compared to four purportedly prudent target-date funds, including some of the same comparators that Plaintiffs rely on here.  2023 WL 5184138, at *1.  The Court dismissed the complaint, explaining:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                               -12-

1

2
> To the extent the Complaint relies solely on the BlackRock TDFs'
> underperformance compared to other TDFs', the Court finds that these allegations
> are insufficient by themselves to support a reasonable inference that Cisco had
> acted imprudently by continuing to offer the BlackRock TDFs.  Although duty of
> prudence breaches may be based on circumstantial evidence and are evaluated on
> a case-by-case basis, federal courts have nonetheless widely and consistently
> rejected attempts to impose ERISA liability where the claims are based solely on a
> fund's underperformance.

3

4

5

6  *Id.* at *3.[8]  In reaching this conclusion, Judge Davila applied the Supreme Court's guidance from

7  *Hughes* that courts must "give due regard to the range of reasonable judgments a fiduciary may

8  make based on her experience and expertise."  *Id.*  Adopting an "underperformance-only" theory

9  of fiduciary liability would "flatten this nuanced prudence evaluation into a one-dimensional

10  comparison" that considers only performance data, an impermissible outcome.  *Id.*  Judge Davila

11  reiterated this holding in *Bracalente II* when he dismissed the amended complaint in that case,

12  explaining that "the Court again cannot reasonably infer from underperformance alone that the

13  BlackRock TDFs were imprudent investments and will follow the weight of authority finding

14  ERISA claims based solely on allegations of underperformance insufficient."  2024 WL 2274523,

15  at *11.  Judges Martínez-Olguín and Koh, respectively, reached similar conclusions in *Partida*,

16  2024 WL 1354432, at *7 ("allegations that a fund 'underperformed' are insufficient for a duty of

17  prudence claim"), and *Anderson*, 579 F. Supp. 3d at 1147 ("[p]oor performance, standing alone, is

18  not sufficient to create a reasonable inference that plan fiduciaries failed to conduct an adequate

19  investigation").  *See also Beldock*, 2023 WL 3058016, at *3 ("courts across the country have

20  rejected claims for breach of the fiduciary duty of prudence under ERISA where the plaintiffs allege

21  nothing more than underperformance").

22      Like the complaints in those cases, the only purported indicium of imprudence in Plaintiffs'

23  Amended Complaint is the alleged underperformance of several vintages of the American Century

24  TDFs.  Am. Compl. ¶ 11 (American Century TDFs "were imprudent based on common investment

25

26

27

28

---

[8] There is one other lawsuit challenging the American Century TDFs, *Langston. v. Cobham
Advanced Elec. Solutions, Inc.*, No. 5:23-03785-EJD (N.D. Cal.).  Judge Davila presides over that
case, and the defendants' motion to dismiss is fully briefed.  *Id.* at ECF 36, 42, 43.  Plaintiffs'
reliance on the Rekenthaler articles is curious, since those articles *criticize* the allegations in
*Langston* that the American Century TDFs were imprudent.  Ex. 3 at 6-8; Ex. 4 at 2-7.

1  performance metrics"), ¶ 47 (Defendants violated ERISA by maintaining "underperforming"

2  American Century TDFs).  But "the case law teaches that underperformance *alone* cannot

3  substantiate an ERISA imprudence claim." *Bracalente I*, 2023 WL 5184138, at *4 (emphasis in

4  original).  Because Plaintiffs point to nothing more, the Court should dismiss Count I.

5  　　　　　　　　**2.**　　　　**Plaintiffs' additional performance metrics cannot save their claims.**

6  　　　　The Amended Complaint introduces new allegations about "Sharpe ratios," "batting

7  averages," "Jensen's alphas," and "information ratios"[9] that Plaintiffs use to create "composite"

8  performance scores for the America Century TDFs.  Am. Compl. ¶ 88.  But by Plaintiffs' own

9  admission, these performance metrics and the resulting composite scores are merely alternative

10  ways to measure past performance of the American Century TDFs.  As Judge Davila noted, "simply

11  providing metrics or opinions further describing the [TDFs'] underperformance is not likely to cure

12  these deficiencies." *Bracalente I*, 2023 WL 5184138 at *5 (citing *Beldock*, 2023 WL 3058016, at

13  *3; *Hall v. Cap. One Fin. Corp.*, 2023 WL 2333304, at *5-6 (E.D. Va. Mar. 1, 2023)).

14  　　　　The decisions in two other cases in which plaintiffs challenged a target-date fund suite on

15  performance grounds are instructive.  In *Hall* and *Tullgren v. Hamilton*, the court dismissed the

16  initial complaints, and the plaintiffs amended their complaints to add similar allegations about the

17  challenged funds' Sharpe ratios.  *Hall*, 2023 WL 2333304, at *6; *Tullgren v. Hamilton*, 2023 WL

18  2307615, at *7 (E.D. Va. Mar. 1, 2023).  The court dismissed both amended complaints, in part

19  because the new details were "merely additional measurements of investment performance." *Id.*

20  The same holds true here.  Whether Plaintiffs' underperformance allegations describe absolute

21  investment returns or "composite" performance scores, at the end of the day they are just that—

22  underperformance allegations—which alone fail to state a plausible claim.

23

24

25  ─────────────────

26  [9] The Amended Complaint states that (i) "batting average" is "a commonly used return persistence
metric that quantifies performance consistency of a strategy relative to its benchmark" and
"attempts to measure luck verse skill of a portfolio manager"; (ii) Jensen's alpha measures "the

27  annualized excess return (alpha) relative to the benchmark: and (iii) an information ratio

28  "measure[s] a fund's risk-adjusted return relative to a benchmark index."  Am. Compl. ¶ 88.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Century City

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                                                    -14-

1         **3.**      **Allegations that the American Century TDFs were "too conservative"**

2         **cannot support an inference that the fiduciary process was flawed.**

3       Plaintiffs attempt to buttress their Amended Complaint by alleging the American Century

4 TDFs were imprudent because the equity allocations were "overly-invested in conservative

5 investments," resulting in lower returns, and the Plan should have offered a target-date suite that

6 took on greater risk and had the potential for greater returns because "the last ten years" have seen

7 the "largest bull markets in the history of the country." Am. Compl. ¶¶ 73-75. This claim fails at

8 the outset because it too is based on impermissible hindsight. The duty of prudence is not the duty

9 of prescience, and an ERISA fiduciary cannot know if a more conservative or more aggressive

10 equity allocation will provide participants with higher future returns, or predict "the largest bull

11 markets" in history. *See, e.g.*, *Fisher v. Secchitano*, 2020 WL 1068873, at *8 (D. Or. Feb. 3, 2020)

12 (dismissing claim because plaintiffs did not allege facts plausibly demonstrating "the Trustees knew

13 their [allocation] strategy was imprudent when implemented"), *R. & R. adopted,* 2020 WL 1068068

14 (D. Or. Mar. 5, 2020), *aff'd,* 833 F. App'x 141 (9th Cir. 2021); *Barchock v. CVS Health Corp.*, 2017

15 WL 9324762, at *5 (D.R.I. Jan. 31, 2017) ("Fiduciaries are not required to predict the future, and

16 cannot be held liable for deciding to avoid risks that, in hindsight, could have been tolerated."),

17 *aff'd* 886 F.3d 43 (1st Cir. 2018). Regardless, this claim cannot survive *Hughes'* instruction that

18 courts must "give due regard" to a fiduciary's investment decisions. *Hughes*, 142 S. Ct. at 742.

19       Here, Plaintiffs allege Defendants selected target-date funds that, according to Plaintiffs'

20 own sources (namely, the Rekenthaler articles), "have been among the industry's steadiest" since

21 2009 and "boasted the lowest standard deviation of returns of any fund in its Morningstar Category

22 over the past decade."[10] Ex. 4 at 3. Rekenthaler explains, "it's one thing to call a fund 'imprudent'

23 (to use the plaintiffs' term) if it invests speculatively, as with Oppenheimer's Transition 2010"

24 target-date fund, but "it's quite another if the putative imprudence consists of holding a

25

26

---

[10] Standard deviation is a widely used way to measure an investment's risk and "one of the most commonly used metrics to project potential returns or losses from an investment." https://www.nerdwallet.com/article/investing/standard-deviation (last visited June 20, 2024).

27

28

conservatively allocated conventional portfolio" like the American Century TDFs.  Ex. 3 at 5.[11]

This is common sense; but common sense aside, allegations that the Plan should have offered a riskier target-date fund in an effort to maximize returns cannot state a plausible fiduciary-breach claim as a matter of law.  Indeed, that argument is contrary to the well-established premise that ERISA does not require fiduciaries to select the best performing investments.

For instance, in *Barchock*, the plaintiffs asserted that the plan fiduciaries breached their duty of prudence because the investment strategy for the plan's stable value fund was too conservative and thus generated lower returns than alternative stable value products.  The First Circuit affirmed dismissal of this claim, reasoning that "[u]nless we are to say that ERISA plans may not offer very conservative investment options (such as money market funds or treasury bond funds), then we cannot say that plans may not offer different types of stable value funds, including those that are intentionally and openly designed to be conservative."  886 F.3d at 50.  Here, Plaintiffs do not contend that a plan may not offer "different types" of target-date funds, including those like the American Century TDFs that "are intentionally and openly designed to be conservative."  Instead, they simply complain that the American Century TDFs utilized an equity allocation that was too conservative, resulting in at-times lower returns.  Am. Compl. ¶¶ 73-75.  But "ERISA fiduciaries are not required to adopt a riskier strategy simply because that strategy may increase returns." *Anderson*, 579 F. Supp. 3d at 1154; *see also White II*, 2017 WL 2352137, at *10 ("A fiduciary may reasonably select an investment alternative in view of its different risks and features, even if that investment option turns out to yield less than some other option," and "a fiduciary may reasonably choose to avert those risks in favor of a safer alternative.") (cleaned up), *aff'd*, *White III*, 752 F. App'x at 455.  The Court should dismiss Count I for this reason as well.

### 4.     Plaintiffs' allegations do not support their contention that the American Century TDFs' performance rendered them imprudent.

Plaintiffs' own Amended Complaint belies their allegation that the American Century TDFs

---

[11] The Oppenheimer Transition 2010 fund "dropped a shocking 41% in 2008, courtesy of its junk bonds."  Ex. 3 at 4.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                              -16-

1    performance was so bad that the decision to offer them fell outside the range of reasonable

2    judgments a fiduciary may make.  *Hughes*, 142 S. Ct. at 742.  For example, the Amended Complaint

3    includes a chart that purports to show various "standard performance metrics" (*i.e.*, Sharpe ratios,

4    batting averages, Jensen's alphas, and information ratios) comparing the 2045 American Century

5    TDF to the 2045 vintages of twenty-two other TDFs.  Am. Compl. ¶ 84.  Plaintiffs then purport to

6    rank eight vintages of the American Century TDFs alongside an unidentified universe of

7    comparator funds in a second chart based on "composite scores" using the "standard performance

8    metrics" described in the first chart.  *Id.* ¶ 91.  Plaintiffs claim these charts show "the American

9    Century TDFs generally scored poorly relative to other possible suitable replacements[.]"  *Id.* ¶ 92.

10          But Plaintiffs' claim is not supported by the alleged data (and "scoring poorly" would not

11   suggest imprudence in any event).  In fact, the chart in Paragraph 84 shows the exact opposite—

12   the American Century TDFs *outperformed* most of Plaintiffs' comparators under every metric.  For

13   example, that chart shows the American Century 2045 TDF had total annual five-year returns of

14   7.02%, (TotalAnRtn5Years), ranking fifth out of twenty-three funds.  *Id*. ¶ 84.  Similarly, the 2045

15   American Century TDF had a five-year Sharpe ratio of 0.68, meaning it had the *second-best* risk-

16   adjusted returns out of the twenty-three target-date funds represented in the chart.  *Id.*  Further, that

17   vintage of American Century TDFs had a five-year "batting average" of 0.55, ranking sixth out of

18   twenty-three.  *Id.*  The results are the same when assessing Jensen's alpha and information ratio.

19   The 2045 American Century TDF's performance ranks second using Jensen's alpha and sixth using

20   information ratio.  *Id.*  This is not to say that the American Century TDFs are "better" than any of

21   those other investments, or that performance measurements alone establish the prudence of an

22   investment.  But to the extent the "standard performance metrics" in the Amended Complaint are

23   relevant to the Court's analysis, those metrics show *outperformance*, not underperformance.

24          The second chart at Paragraph 91 also does not support Plaintiffs' claim that "the American

25   Century TDFs generally scored poorly relative to other possible suitable replacements[.]"  *Id.* ¶ 92.

26   To start, that chart is a black box because Plaintiffs provide little information explaining its

27   meaning.  For example, they do not explain how they calculated the "composite scores" reflected

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT

in the chart and do not identify the specific "possible suitable replacements" against which they are comparing the American Century TDFs, except for the American Funds, which Plaintiffs contend were the best-performing target-date funds in the market. On its face, the chart appears to compare the 2020, 2025, 2030, 2035, 2040, 2045, 2050, and 2055 vintages of the American Century TDFs to an unidentified universe of comparators ranging in number from 29 to 41 comparators per vintage. In any event, the chart suggests the American Century TDFs ranked toward the middle of the unidentified comparator universe, with some vintages ranking above the median (for example, the 2050 and 2055 vintages) and some slightly below (the 2030 and 2040 vintages). *Id.* ¶ 91. But even if underperformance alone could plausibly suggest Defendants did not monitor Plan investments (it does not), Plaintiffs must allege something more than middle-of-the-pack performance. *See infra* at 17, n.13. In short, Plaintiffs' composite scores do not suggest the American Century TDFs fell outside the range of reasonable investments available to the Plan.[12]

At most, Plaintiffs allege the American Century TDFs produced lower Jensen's alphas in relation to the S&P Target Date Index when compared to a single comparator, the American Funds. Am. Compl. ¶ 102. But this meager allegation is not enough to suggest the American Century TDFs are imprudent investments. To start, Plaintiffs allege only that the American Century Funds "underperformed" a *single comparator* based on a *single performance metric* (*i.e.*, Jensen's alpha). Alleging that an investment is "second best" in one aspect of its performance cannot support an imprudence claim. Further, the Amended Complaint alleges the American Century TDFs trailed the American Funds by less than a single percentage point in terms of annualized Jensen's alphas. *Id.* Courts routinely refuse to infer imprudence from modest, short-term underperformance, such

---

[12] The Plan's fiduciaries made multiple changes to the target-date suite during the putative class period. In 2019, they replaced the mutual fund version of the American Century TDFs with a lower-cost CIT version. Ex. 6, Fin. Stmts., at 13 (fee reduced to 0.38%). In 2021, the Plan switched to an even lower-cost CIT. Ex. 7, Fin. Stmts., at 15 (fee reduced from 0.38% to 0.32%). And in late 2023, the fiduciaries replaced the American Century TDFs with the Fidelity CITs. Am. Compl. ¶ 25. These changes demonstrate the Plan fiduciaries were actively monitoring investments, further precluding any inference of a fiduciary breach. *White II*, 2017 WL 2352137, at *20 (removal of purportedly imprudent investment "sufficient to create a plausible inference that the Plan fiduciaries were attentively monitoring the Fund").

1    as Plaintiffs allege here.[13]

2        **C.    Plaintiffs Do Not Plausibly Allege Their Comparator Funds Are Meaningful**

3        **Benchmarks for Measuring Performance of the American Century TDFs.**

4        Plaintiffs premise their Amended Complaint on the contention that the American Century

5    TDFs underperformed certain cherry-picked comparator funds, apparently selected because some

6    of them had better performance for some part of the putative class period.  But there are no *factual*

7    allegations suggesting that the comparator funds are apt benchmarks for assessing performance of

8    the American Century TDFs, which provides an independent reason for dismissal.

9        A plaintiff alleging "a prudent fiduciary in like circumstances would have selected a

10   different fund based on the cost or performance of the selected fund" "must provide a sound basis

11   for comparison—a meaningful benchmark." *Meiners*, 898 F.3d at 833; *see also Matney*, 80 F.4th

12   at 1148; *CommonSpirit*, 37 F.4th at 1167; *Albert*, 47 F.4th at 582.  To constitute a meaningful

13   benchmark, the comparator must have "similar aims, risks, and potential rewards" as the challenged

14   fund.  *Anderson*, 579 F. Supp. 3d at 1148; *see also Wehner*, 2021 WL 2417098, at *8 (a complaint

15   must contain "factual allegations that compare the products' styles and strategies to support a

16   finding of 'meaningful benchmark'") (citations omitted).  After all, investments with different

17   strategies, holdings, and fees are expected to perform differently.  *See, e.g.*, *Meiners*, 898 F.3d at

18   823 (the "fact that one fund with a different investment strategy ultimately performed better does

19   not establish anything about whether the [challenged funds] were an imprudent choice").

20       Plaintiffs try to shirk their pleading obligations by asserting "[a]ll TDFs are directly

21   comparable."  Am. Compl. ¶ 60.  That is not what the Ninth Circuit—or any other circuit court to

22   address the question—has held.  *See Salesforce.com*, 2022 WL 1055557, at *2 n.1; *see also Matney*,

23   80 F.4th at 1148; *CommonSpirit Health*, 37 F.4th at 1166; *Meiners*, 898 F.3d at 822.  For example,

24   in *Anderson*, the plaintiffs challenged the decision to offer an "underperforming" target-date suite

---

26   [13] *See, e.g.*, *Evans v. Assoc. Banc-Corp.*, 2022 WL 4638092, at *7 (E.D. Wis. Sept. 30, 2022)
     (underperformance must be "of a character and degree sufficient" to infer imprudence, meaning

27   "substantial" over longer than three to five years); *Cho v. Prudential Ins. Co. of Am.*, 2021 WL
     4438186, at *9 (D.N.J. Sept. 27, 2021) (plaintiffs did not allege "sufficiently substantial"

28   underperformance where "five-year trailing performance" lagged by 0.07% to 3.71%).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                                    -19-

that invested in excessively risky underlying funds.  579 F. Supp. 3d at 1141.  The plaintiffs compared the plan's target-date funds to four other target-date suites, which they alleged were meaningful benchmarks because all target-date funds have "common goals and features."  *Id.* at 1150.  Judge Koh roundly rejected this conclusory allegation because the plaintiffs did not provide any information "regarding the investment strategies, glide paths, and fees" of any specific comparator and the plan's target-date funds, and "[t]he argument that all TDFs are meaningful benchmarks cannot survive a motion to dismiss."  *Id.*  Similarly, the *Wehner* plaintiffs compared a challenged target-date suite's performance to six other target-date suites that allegedly shared "the same overall purpose and strategy" because they were all target-date funds.  2021 WL 2417098 at *8.  Judge Orrick ruled those conclusory allegations did not suffice—a plaintiff must proffer allegations concerning the funds' "styles and strategies."  *Id.*  And just a few weeks ago, Judge Davila dismissed the amended complaint in *Bracalente II* because it did "not provide a sufficient basis to demonstrate why the comparators [were] meaningful benchmarks" for the challenged BlackRock target-date funds where plaintiffs merely alleged the comparators "represent an ideal group for comparison" because they are the "most likely alternatives to be selected were the BlackRock TDFs to be replaced."  2024 WL 2274523, at *8; *see also Tobias v. NVIDIA Corp.*, 2021 WL 4148706, at *13 (N.D. Cal. Sept. 13, 2021 ("simply labeling funds as 'comparable' or 'materially similar' is insufficient") (Koh, J.).

Here, Plaintiffs compare the performance of the American Century TDFs to the performance of a group of target-date funds they allege are "suitable replacement funds" because they belong to the same Morningstar "Target Date Category."  Am. Compl. ¶¶ 64, 70, 82.[14]  But

---

[14] Plaintiffs do not identify all the specific target-date funds they claim are "suitable replacements." For example, Plaintiffs allege the 2040 American Century TDF's ten-year returns trailed those of twenty-two other funds, but they identify only *six* of those comparators by name, leaving it up to Defendants and the Court to guess the identities of the others.  Am. Compl. ¶ 70.  Similarly, Plaintiffs identify none of the comparators used in their chart comparing the "composite scores" of American Century and American Funds TDFs to other funds.  *Id.* ¶ 91.  These anonymous target-date funds cannot be "meaningful benchmarks" because it is impossible to discern anything at all about their investment strategies, asset allocations, or anything else.  *See Wehner*, 2021 WL 2417098, at *8 (rejecting argument that one target-date suite must be comparable to another).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                    -20-

Morningstar assigns *all* target-date funds (hundreds) to that same category.[15]  By Plaintiffs' logic then, *every* target-date fund in the market would be a suitable comparator for the American Century TDFs simply because they are target-date funds, regardless of the myriad differences that might exist between them.  Adopting Plaintiffs' theory would eviscerate the requirement that Plaintiffs identify "meaningful" benchmarks because *any* target-date fund would suffice.  That, of course, is not the law, as recent decisions by judges in this District have confirmed.

Conspicuously absent from Plaintiffs' Amended Complaint are any specific allegations that the comparators Plaintiffs identify have "similar aims, risks, and potential rewards" or the same "styles and strategies."  *Anderson*, 579 F. Supp. 3d at 1148; *Wehner*, 2021 WL 2417098, at *8.  Specifically, Plaintiffs are "silent on whether the Comparator TDFs use 'through' or 'to' retirement glidepaths; whether the Comparator TDFs invest only in actively-managed or passively-managed funds; or how the Comparator TDFs' underlying equity and bond funds are allocated among the types and categories of possible equity and bond funds."  *Hall*, 2023 WL 2333304 at *6.  This critical information was available to the Plaintiffs, but they chose not to include it.  That is because it shows that the comparators are inapt benchmarks.

### 1. "Through" retirement target-date funds cannot be meaningful benchmarks for "to" retirement target-date funds like the American Century TDFs.

*First*, the American Century TDFs are "*to* retirement" funds.  Ex. 8, Morningstar 2020 Target-Date Strategy Landscape, at 7.  Plaintiffs do not allege which strategy the Comparator TDFs use, but publicly available information establishes that many are "*through* retirement" funds.  *Id.*  For example, Plaintiffs compare performance of the American Century TDFs to target-date funds managed by Fidelity, American Funds Investor Company, TIAA-CREF, T. Rowe Price, and Mutual of America.  Am. Compl. ¶¶ 69, 70, 84, 91, 102.  Each of those comparators utilizes a

---

[15] According to Morningstar, target-date funds are assigned to their category "based solely on the target date."  https://awgmain.morningstar.com/webhelp/glossary_definitions/categories/Target_Date_2036-2040_Category.htm (last visited June 20, 2024).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

3:24-cv-01050-TLT

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
-21-

"through retirement" glidepath strategy.[16]  This difference alone makes those comparators inapt benchmarks for the American Century TDFs because they have materially different investment strategies.  *See Bracalente II*, 2024 WL 2274523, at *8 (dismissing claims challenging BlackRock TDFs because some comparators "employ[ed] a 'through retirement' glide path strategy [in] contrast [to] the BlackRock TDFs, which employ[ed] a 'to retirement' glide path strategy");  *Matney*, 80 F.4th at 1154, n.14 (affirming dismissal for failure to allege meaningful benchmark when the plan's target-date funds employed a "to" retirement glide path and the comparator funds employed a "through" retirement glide path); *Hall*, 2023 WL 2333304 at *7 (dismissing claims involving BlackRock TDFs because plaintiffs did not allege whether the comparator funds used the same "'through' or 'to' retirement glidepaths" as the BlackRock TDFs); *Tullgren v. Hamilton*, 2023 WL 2307615, at *7 (E.D. Va. Mar. 1, 2023) (same); *Johnson v. Parker-Hannifin Corp.*, 2023 WL 8374525, at *1 (N.D. Ohio Dec. 4, 2023) (similar); *appeal pending*, No. 24-3014 (6th Cir.). Plaintiffs' conclusory assertion that there is "no economically meaningful difference between 'to-retirement' and 'through-retirement' TDFs" (Am. Compl. ¶ 59) simply ignores this well-settled law.  *See also* Ex. 1 at 1-2 (explaining that glide path differences are "important" and "can significantly affect the way a TDF performs").

## 2.   Target-date funds that invest in passively managed funds cannot be meaningful benchmarks for those that invest in actively managed funds.

*Second*, Plaintiffs allege the American Century TDFs invest in actively managed funds (Am. Compl. ¶¶ 5, 42-43, 48, 54), but some of the comparators—like the TIAA-CREF Lifecycle Index Fund—invest only in passively managed funds. Ex. 13, TIAA-CREF Lifecycle Index Fund Fact Sheet.  The Ninth Circuit affirmed dismissal of similar allegations in *Salesforce.com*.  There, the plaintiff alleged it was imprudent to offer JPMorgan target-date funds that held actively managed underlying funds instead of lower-cost, better-performing JPMorgan target-date funds that held passively managed underlying funds.  Even though the two suites had the same investment

---

[16] Ex. 8, Morningstar 2020 Target-Date Strategy Landscape, at 7; Ex. 14, Mutual of America 2045 Retirement Fund Summary Prospectus (May 1, 2021)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

3:24-cv-01050-TLT

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
-22-

manager, Judge Chesney dismissed that claim because while "the JPMorgan target date blend funds and JPMorgan SmartRetirement funds may have some similarities, the JPMorgan target date blend funds, which plaintiffs allege have '*some* passive funds underlying [them],' are not meaningful benchmarks for the actively managed JPMorgan SmartRetirement funds." *Davis v. Salesforce.com Inc.*, 2021 WL 1428259, at *5 (N.D. Cal. Apr. 15, 2021) (emphasis added) (citing *Meiners*, 898 F.3d at 823).  The Ninth Circuit affirmed in relevant part because "plaintiffs have not plausibly alleged that defendants breached the duty of prudence by failing to adequately consider passively managed mutual fund alternatives to the actively managed funds offered by the plan." *Salesforce.com*, 2022 WL 1055557, at *2 n.1.  In dismissing the amended complaint in *Bracalente II,* Judge Davila noted that "[c]ourts in this District have dismissed ERISA claims [because] passively managed funds generally cannot serve as meaningful benchmarks for actively managed funds."  *Bracalente II,* 2024 WL 2274523, at *8;  *see also Matney*, 80 F.4th at 1153-54 (passively managed investments are not meaningful benchmarks for actively managed ones); *Wash U.*, 960 F.3d at 485 (same); *Partida*, 2024 WL 1354432, at *8 (same); *Enos*, 2021 WL 5622121, at *7 (rejecting underperformance claims challenging target-date fund because plaintiffs had not "adequately articulated why passively managed funds serve as an appropriate benchmark for measuring the success of an actively managed fund").  The same is true here.

### 3. Plaintiffs cannot plead a meaningful benchmark by alleging only that the American Century TDFs and other target-date funds are "similar."

*Third*, Plaintiffs' unsupported conclusion that the American Century TDFs and the comparator funds are "similar" completely ignores that the American Century TDFs have a "distinct" investment strategy with an equity allocation that is "8% lower than the peer average" while maintaining "a more-pronounced tilt toward U.S. equities than many competing series." *Supra* at 5-7.  Indeed, the very basis of Plaintiffs' claims is that the American Century TDFs were "too conservative" compared to other target-date suites.  Despite acknowledging these differences (Am. Compl. ¶¶ 73-75), Plaintiffs offer no allegations supporting the inference that any of their comparators use a similarly "conservative" strategy.  To the contrary, the Amended Complaint

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                                                    -23-

1   acknowledges there is significant variation in equity allocation between the American Century

2   TDFs and the Amended Complaint's comparators.  *Id.*

3       A cursory review of additional publicly available information provided by Morningstar

4   confirms that Plaintiffs' comparisons are inapt on an equity-allocation basis.  For example, the

5   American Century 2045 TDF is allocated to approximately 60% in U.S. and non-U.S. equities,

6   compared to approximately 82% for the American Funds 2045 vintage, 90% for the Fidelity

7   Freedom Funds 2045 Fund, 85% for the T. Rowe Price Retirement 2045 Fund, and 86% for the

8   TIAA-CREF Lifecycle Index 2045 Fund.[17]   These differences in equity allocation and overall

9   strategy are sufficient to warrant dismissal.  *See Johnson*, 2023 WL 8374525, at *8 (dismissing

10   claim where plaintiffs ignored that the challenged TDF suite "had a uniquely conservative

11   investment strategy and asset allocation" compared to the alleged comparator funds).

12              **4.      The S&P Target Date Index is not a meaningful benchmark.**

13       That leaves Plaintiffs' one new benchmark for the American Century TDFs, the S&P Target

14   Date Index.  But the Amended Complaint offers no allegations as to why the newly added index is

15   a meaningful benchmark.  Indeed, the plaintiffs in *Wehner* tried this same approach with their failed

16   target-date challenge in that case.  2021 WL 2417098, at * 8.  After the court dismissed the original

17   claim for failure to allege a meaningful benchmark, the plaintiffs added performance comparisons

18   against the same S&P Target Date Index that Plaintiffs point to here.  Judge Orrick rejected that

19   tactic.  *See id*. at *8.  As with their original comparators, the court reasoned, plaintiffs had not

20   shown that the S&P Index shared the same "styles and strategies to support a finding of 'meaningful

21   benchmark' to the challenged TDFs."  *Id*.  The same is true here.

22       Moreover, the S&P Target Date Index suffers from the same problems that render the other

23   comparator target-date funds inapt benchmarks—it does not differentiate between target-date funds

24   with different investment attributes, including as to "passive" versus "active" underlying

25

26   [17] Ex. 9, American Funds 2045 Target Date Retirement Fund Morningstar Report (May 2024); Ex.
    10, Fidelity Freedom Funds 2045 Fund Morningstar Report (May 2024); Ex. 11, T. Rowe Price
27   Retirement 2045 Fund Morningstar Report (May 2024); and Ex. 12, TIAA-CREF Lifecycle Index
    2045 Fund Morningstar Report (May 2024).
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                                  -24-

investments, "to retirement" versus "through retirement" glidepaths, varying equity and bond allocations, and more.  To the contrary, the S&P Target Date Index is "a composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs." *Hall*, 2023 WL 2333304, at *7.  Each composite index thus represents "an amalgamation of the different characteristics of TDF strategies: TDFs with actively and passively managed underlying funds, TDFs with different risk profiles, and . . . those with different asset allocations[.]" *Id*.  And "[b]ecause funds with distinct goals and distinct strategies are inapt comparators, there is no sound basis on which the Court can compare the [American Century] TDFs with the S&P Index."[18] *Id.*

### D.   Plaintiffs' Derivative Monitoring Claim Fails as a Matter of Law.

The Court should dismiss Plaintiffs' "failure to monitor" claim against ServiceNow and the Board because it is derivative of their primary fiduciary breach claim in Count I.  Because the primary claim is legally deficient, so is the secondary claim.  *Bracalente I*, 2023 WL 5184138, at *6 (dismissal of fiduciary-breach claim requires dismissal of monitoring claim); *Beldock*, 2023 WL 3058016, at *4; *Anderson*, 579 F. Supp. 3d at 1162 (dismissing monitoring claims because "Plaintiffs have failed to state an underlying ERISA violation").

## V.   CONCLUSION

Plaintiffs again do not plausibly allege that offering the American Century TDFs was outside the range of reasonable judgments that a fiduciary can make, and therefore fail once more to state a claim under ERISA.  The Court should dismiss the Amended Complaint with prejudice.

---

[18] Courts around the country have rejected similar attempts to use industry averages and medians for these very reasons—they amalgamate a wide range of funds without differentiating between different types of investment styles and strategies. *See, e.g., Parmer v. Land O'Lakes*, 518 F. Supp. 3d 1293, 1303-04 (D. Minn. 2021) (rejecting use of similar "ICI Study" medians and averages because they "fail[ed] to differentiate between passively and actively managed funds"); *Rosenkranz v. Altru Health Sys.*, 2021 WL 5868960, at *10 (D.N.D. Dec. 10, 2021) ("Plaintiff failed to allege that the ICI Median Report, which contains both actively and passively managed funds, is a meaningful benchmark."); *Davis v. Salesforce*, 2020 WL 5893405, at *3 n.9 (N.D. Cal. Oct. 5, 2020) (similar), *aff'd in rel. part*, 2022 WL 1055557 (9th Cir. Apr. 8, 2022); *cf. e.g., Kendall v. Pharm. Prod. Develop., LLC*, 2021 WL 1231415, at *7 (E.D.N.C. Mar. 31, 2021) (rejecting reliance on broad category medians because they failed to "compare sufficiently similar funds," including in terms of investment style, strategy, and the like).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CENTURY CITY

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT
3:24-cv-01050-TLT                                              -25-

1  Dated:  June 21, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS & BOCKIUS LLP

By */s/ Deborah S. Davidson*
Deborah S. Davidson (*pro hac vice*)
110 N. Wacker Drive
Chicago, IL 60606-1511
Telephone: +312.324.1159
Facsimile: +312.324.1001
deborah.davidson@morganlewis.com

Sean K. McMahan (*pro hac vice*)
1717 Main Street, Suite 3200
Dallas, TX 75201
Telephone:  +1.214.466.4000
Facsimile:   +1.214.466.4001
sean.mcmahan@morganlewis.com

Mark A. Feller, Bar No. 319789
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel: +1.415.442.1000
Fax: +1.415.442.1001
mark.feller@morganlewis.com

Jared R. Killeen (*pro hac vice*)
2222 Market Street
Philadelphia, PA 19103
Tel:  +1.215.963.5000
Fax:  +1.215.963.5001
jared.killeen@morganlewis.com

*Attorneys for Defendants*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
AMENDED CLASS ACTION COMPLAINT