Pages 1 - 41

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE TRINA L. THOMPSON

PAUL S. RUBKE,                      )
                                    )
                                    )
            Plaintiff,              )
                                    )
  vs.                               ) No. C 24-1050 TLT
                                    )
SERVICENOW, INC.,                   )
                                    )  San Francisco, California
            Defendant.             )  Tuesday
                                    )  August 20, 2024
_____ )    2:00 p.m.


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          WALCHESKE LUZI, LLC
                            235 N. Executive Drive
                            Suite 240
                            Brookfield, Wisconsin 53005
                        BY: **PAUL SECUNDA, ESQ.**


**For Defendant:**          MORGAN LEWIS & BOCKIUS, LLP
                            1717 Main Street
                            Suite 3200
                            Dallas, Texas 75201
                        BY: **SEAN MCMAHAN, ESQ.**


*Reported By:*    *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                     *Official Reporter - US District Court*
                     *Computerized Transcription By Eclipse*

*Debra L. Pas, CSR, RPR, RMR, CRR*
*Official Reporter - U.S. District Court - San Francisco, California*

**Tuesday - August 20, 2024**                                     **2:01 p.m.**

**P R O C E E D I N G S**

**---000---**

**THE CLERK:**  Now calling 24-CV-01050, Rubke, et al versus ServiceNow, Incorporated, et al.

Counsel, please approach the podiums and state your appearances beginning with the plaintiffs.

**MR. SECUNDA:**  Good afternoon, Your Honor.  Paul Secunda for the plaintiff from Walcheske and Luzi.

**THE COURT:**  Thank you.  Good afternoon.

**MR. McMAHAN:**  Good afternoon, Your Honor.  Sean McMahan from Morgan Lewis for the defendants.

**THE COURT:**  Good afternoon.

**MR. FELLER:**  Mark Feller, Morgan Lewis, on behalf of the defendants.

**THE COURT:**  Good afternoon.

And will this be a situation where we will have two attorneys presenting this afternoon or one is -- the look of fear.

**MR. McMAHAN:**  Just one, Your Honor.

**THE COURT:**  All right.  Thank you.

All right, counsel.  I've already provided some questions that I have.  I know that you've probably already prepared your presentation for this afternoon, but please be sure in your presentation that you cover those questions.  Each of you will

have 30 minutes, and keep in mind that includes any replies, so use your time wisely.

A couple of questions I do have, and I always ask that the parties first start off by telling me where you agree, where there are some concessions or that there's no dispute.

The next thing I would like to note is the dates in which the named plaintiffs were enrolled in the plan and whether they withdrew from the plan and participated in a rollover.  What were the dates, the beginning date and end date of their plans, and/or if they are still in the plan.

My understanding is the first named plaintiff may have ended his plan and rolled over in June of 2023.  I wasn't sure about the second named plaintiff, so I wanted to make sure I asked that up front as well.

All right.  With that having been said, I'm going to try not to interrupt you; but if I do, it's because there's a question I have that's bearing on my ultimate decision.

Counsel for the defendant, it's your motion and you may begin.

**MR. McMAHAN:**  Thank you, Your Honor.

**THE COURT:**  Thank you.

**MR. McMAHAN:**  So good afternoon, Your Honor.  I think, as the Court knows, the Complaint in this case alleges that the defendants breached their fiduciary duty of prudence under the Employment Retirement Income Security Act by offering the

American Century Target Date Funds, which is a suite of target date funds, as investments in the ServiceNow 401(k) plan.

Plaintiffs allege that was an imprudent fiduciary decision and support their claim by alleging that the absolute and risk adjusted returns of the American Century Target Date Funds lag the returns of other target date suites during the putative class period which begins in February of 2018.

Defendants move to dismiss this Complaint, or the Complaint on two grounds.

First, the defendants argued the Court cannot infer that defendants breached the duty of prudence based on the allegations that the plan fiduciaries could have selected a better performing target date fund, and that is all the Complaint alleges.

The second basis for dismissal is that the Complaint does not identify meaningful benchmarks for analyzing the performance of the American Century Target Date Funds, and without a meaningful benchmark plaintiff's do not plausibly allege that a prudent fiduciary would have offered a different target date suite; and that is because comparing apples to oranges, as many opinions have characterized it, is not a way to show that one investment is better than another investment.

I just want to briefly touch on a couple of --

**THE COURT:**  Let's go back.  We're talking about the meaningful benchmarks, and you said we're comparing apples to

oranges and that the suites may not be that different.

Is it part of the duty to take a look at the performance of different instruments, different suites, to see whether you're going to advise your clients or whether you're going to make some changes in terms of their plan?

**MR. McMAHAN:**  Sure, Your Honor.  There is an obligation on the part of the fiduciary to monitor the performance of the investments in the plan.  That includes the target date suites and all the other investments offered in the plan.

And in this instance the plan fiduciaries have an investment consultant that advises them on the investments and assists with analyzing and evaluating the performance and prudence of the funds in the plan.

But the -- sort of the standard for pleading a fiduciary breach claim and alleging that the funds underperformed requires plaintiffs to identify a benchmark fund that has a similar investment strategy, a similar risk profile and similar asset allocations.

We cited a number of opinions in our Motion to Dismiss briefing that addressed that, including opinions from Judge Davila, Judge Koh and Judge Chesney in the Northern District of California and several appellate court opinions as well.  And to do that plaintiffs have to have well-pled factual allegations relating to the comparative funds and the

challenged target date funds and explaining why those funds have similar investment strategies and similar risk profiles.

And that doesn't exist in the current iteration of the Complaint. What you have in the Complaint are, I would say, two allegations with respect to the meaningful benchmarks.

The first is that plaintiffs have alleged that these funds are all target date funds and that makes them comparable. But that exact argument has been rejected by judges in this district, by the Sixth Circuit, the Eighth Circuit and the Tenth Circuit, and in the *Davis versus Sales Force* case, that's an unpublished opinion from the Ninth Circuit.

The Ninth Circuit also affirmed dismissal of claims that alleged the plan offered an imprudent target date fund because the plaintiffs in that case failed to plausibly allege a meaningful benchmark. In that case they were comparing a T. Rowe Price suite of target date funds to a different T. Rowe Price suite of target date funds, but the Court nonetheless concluded those were not meaningful benchmarks because they had different investment.

And I think what you see in the Complaint here are allegations that all target date suites are the same and, therefore, they can be compared, but nothing more than that.

And those are the same sorts of allegations that have been found wanting in numerous other cases, as discussed in our Motion to Dismiss briefing.

And then the second point I think that plaintiffs make on the meaningful benchmark issue is that they point to an investment performance metric that is called Jensen's Alpha, which measures risk adjusted performance.  And they argue that the -- sort of the use of Jensen's Alpha negates the need to plead facts that support a meaningful benchmark because the Jensen's Alpha sort of normalizes the equity allocation differences that you see across various funds and means that any one target date suite can be compared to another target date suite.  They don't cite any support for that argument. That's just sort of a bald allegation in the Complaint.

And plaintiffs have made similar arguments in other instances in efforts to avoid the meaningful benchmark requirement.  So for instance, in *Hall versus Capital One* and *Tullgren versus Hamilton*, both of which are cited in the defendant's Motion to Dismiss, and our cases from the Eastern District of Virginia, the plaintiffs argued that the -- an investment metric called Sharpe Ratio does the same thing that plaintiffs argue here.  They say it normalizes any differences, enables the comparison of target date suites with disparate equity allocations and different glide paths, and you can compare those in a meaningful way.

The Court rejected that argument because like Alpha, that plaintiffs rely on here, the Sharpe Ratio is just a way to measure the suggested returns, but it cannot make target date

funds with distinct strategies and distinct investment styles comparable in the first place.  And, again, plaintiffs cite no case law supporting their argument that that would be the case.

So did that answer your question, Your Honor?

**THE COURT:**  It does.  It does.

I'm contemplating just thinking about plaintiff's argument about when there was a change, and I believe that was on -- somewhere in December that there was a change and kind of, I guess, reverse engineering.

**MR. McMAHAN:**  Correct, Your Honor.  There was a change in, I believe, December of 2023.  The American Century Target Date Funds were removed from the plan, replaced with the Fidelity Freedom funds, which is sort of a completely different set of target date funds.

And I would point out that in *Chevron versus White*, which is another decision from the Northern District of California --

**THE COURT:**  *White versus Chevron*?

**MR. McMAHAN:**  Yes.  Thank you, Your Honor.  From 2017. The Court in that case noted that the fact that defendant fiduciary removed the allegedly imprudent fund from the plan and replaced it with a different fund was not evidence of imprudence, but was actually evidence of a sound fiduciary process because it showed that the committee was paying attention to the investments in the plan and exercising their fiduciary duties in a prudent manner.

So, Your Honor, one -- one of the questions you had for the hearing is, notwithstanding underperformance, which facts support an allegation of process failure.

So with respect to the underperformance issue, the parties agree, I think, that allegations of underperformance alone are not enough.

What plaintiffs argue in their opposition brief is that they have additional fiduciary process violation allegations, and the allegation that they point to is that the American Century Target Date Funds utilize an overly conservative equity allocation strategy compared to the target date suites that they proffer as prudent investments in their Complaint.

Plaintiffs argue that these allegations distinguish their Complaint from Complaints asserting similar claims involving target date funds that were dismissed by Judge Chesney, Judge Davila, Judge Koh and other judges in this district.

But plaintiffs cannot save their underperformance claims simply by alleging that the American Century Target Date Funds were too conservative or adopted a traditionally conservative investment strategy.

There is nothing imprudent about offering a target date suite, or any other investment for that matter, that is intentionally conservative, and plaintiffs have not identified any authority suggesting that doing so would be a fiduciary breach.

Moreover, plaintiffs did not make any effort to distinguish the authority that was identified in defendant's Motion to Dismiss that rejected that precise argument.

For instance, in *Anderson versus Intel*, which was decided a couple of years ago by Judge Koh, the plaintiffs argued that defendants breached their fiduciary duty because they should have offered a target date suite with a riskier asset allocation strategy that involved greater exposure to equity investments and that might have resulted in greater returns. And that's the exact argument that plaintiffs make here with respect to the American Century Target Date Funds.

Judge Koh rejected that argument in her opinion. She reasoned it was unsupported by the law and that ERISA fiduciaries are not required to adopt a riskier strategy in an effort to maximize returns. And she also noted that the Anderson plaintiffs did not cite a single case that supported their theory that offering a conservative investment can be deemed imprudent as a matter of law.

And then the other opinion that is notable is Judge Davila's recent opinion in the *Phillips versus Cobham* matter, which was issued several weeks ago. In that case the plaintiffs challenged the same American Century Target Date Funds that are at issue in this case. The American Century Target Date Funds were offered in a different 401(k) plan there. The plaintiffs filed a lawsuit and alleged that those

funds were imprudent.

The sort of -- one of the arguments in that case is that the American Century Target Date Funds were imprudent because they adopted a conservative investment strategy that involved lower equity allocations and other target date suites, resulted in lower investment returns.  Judge Davila rejected that -- those allegations and dismissed that Complaint.  That case is still pending before Judge Davila.  There was an Amended Complaint filed recently and the parties are currently briefing a Motion to Dismiss that Amended Complaint.

**THE COURT:**  In speaking of *Anderson versus Intel*, in a footnote in the plaintiff's opposition when they are looking at your exhibits for judicial notice, I -- Exhibits 3 through 7 seem to be unopposed.  So the Court is prepared to take judicial notice of those exhibits.

However, as to the remaining Exhibits 1 through 2, 9 through 12 and 8, seem to be highlight disputed.  The court can take judicial notice that they exist, but not the content therein.  What is your position?

**MR. McMAHAN:**  So I would say a couple things, Your Honor.

First, I would say those are sort of two categories of documents.  There are -- there's a Department of Labor publication that plaintiffs suggest the Court should not take judicial notice of.  And then there's a number of MorningStar

reports that address the -- the investment strategies of the American Century Target Date Funds and the comparator target date funds that plaintiffs offer in the Complaint.

With respect to the Department of Labor publication, that document provides meaningful -- you know, helpful background on target date funds and the fiduciary obligations for assessing the prudence of target date funds.  And Judge Davila admitted that document in *Phillips* and Judge Koh admitted it in *Intel*, that same document.

And then with respect to the MorningStar reports, plaintiffs Complaint is sort of replete with reliance on MorningStar, and we think it's proper to take judicial notice of those as well.

And I would note that plaintiff's say that those -- the facts in those documents are disputed, but they don't say which facts are disputed.  Those are documents that are sort of cited to in various places in the Motion to Dismiss, and we think would be proper to take judicial notice of those.

But even if the Court denies the Request for Judicial Notice with respect to those documents, they merely provide additional background and information on the comparator funds in the American Century Target Date Fund.  They do not sort of go to the root pleading deficiencies that are in the Complaint.

And the Court could deny the motion -- or the Request for Judicial Notice on those documents and still grant the Motion

to Dismiss.

THE COURT:  All right.  Thank you.

I am prepared to take judicial notice of the indicated Exhibits 3 through 7.  As to the others, the Court acknowledges that they exist.  However, the content therein under 201(b), I'm not prepared -- Federal Rules of Evidence 201(b), I'm not prepared to take judicial notice of those other items, particularly since they are in dispute.

MR. McMAHAN:  Understood, Your Honor.

And I think sort of in that vein it's worth pointing out that in the Motion to Dismiss sort of the -- the primary pleading failure with respect to the meaningful benchmarks, for instance, is that plaintiffs just offer no well-pled factual allegations about the investment strategies, for instance, whether those are to or through glide path target date suites or whether they are actively or passively managed.

The documents that you're mentioning here, I would say those are documents that provide that additional information, but, again, the Court can grant the Motion to Dismiss simply because the plaintiffs did not offer the necessary allegations to establish that they have proffered meaningful benchmarks.

THE COURT:  All right.  Thank you.

MR. McMAHAN:  Thank you, Your Honor.

THE COURT:  And then in an effort to preserve some time for your reply once the plaintiffs address the questions

that the Court has and some of the questions I've peppered you with, if the Court were to grant your Motion to Dismiss, is it your position that amendment would be futile?  If so, why?

MR. McMAHAN:  I would say that it is our position that the amendment would be futile, Your Honor.  The plaintiffs have had one bite at the Apple.

This is -- this is an Amended Complaint that we're addressing now, so they have corrected what they thought were the pleading deficiencies in their original Complaint.  So we do not think they should be granted the chance to file another Amended Complaint.

And frankly, Your Honor, since we haven't seen an Amended Complaint, a proposed Amended Complaint, and they haven't asked for leave to file an Amended Complaint, we're not sure what it would look like.

THE COURT:  All right.  And then, finally, ECF 39, your request that discovery should be stayed until the Court renders its finding decision with regards to the pending Motion to Dismiss on the First Amended Complaint.

MR. McMAHAN:  Thank you, Your Honor.

We filed that motion, I think, last Monday.  The response was due Friday.  It was not filed.  So we believe that motion is unopposed.

The parties have reached agreement prior to the case management conference that discovery should be stayed.  So we

believe the motion should be granted as unopposed and then should be granted for the reasons explained in the motion itself, primarily that the Motion to Dismiss will dispose of the Complaint in its entirety.

THE COURT:  All right.  And if the Court were to grant the Motion to Dismiss without leave to amend, then 39 would be moot; is that correct?

MR. McMAHAN:  That would be correct, Your Honor.

THE COURT:  Thank you.

Counsel.

MR. McMAHAN:  Thank you, Your Honor.

THE COURT:  Thank you.

So you'll have about, oh, a little over eight minutes for your reply.

MR. McMAHAN:  Thank you, Your Honor.

THE COURT:  Counsel, you may proceed.

MR. SECUNDA:  Thank you, Your Honor.

I do want to start with some of the things that you asked us to answer up front.

With regard to the participation of the plaintiffs, the paragraphs that are in question are Paragraph 22 with regard to Plaintiff Rubke.  He rolled out of the plan in June of 2023.

And with regard to plaintiff Du Lac de Fugeres, Paragraph 24 points out she is a current participant in the plan.

The important investments that they have had, are Plaintiff Rubke was in the American Century One Choice 2020 Trust S Fund, and plaintiff Du Lac de Fugeres was in the American Century One Choice 2015 -- 2050, excuse me, Trust S.

You also asked, Your Honor, what we agree on here.  And I think what we can agree on is Judge Davila's analysis.  But I'm not going to limit my agreement with Judge Davila to *Phillips versus CAES,* but I'm also going to refer you to a previous Judge Davila decision in *In Re LinkedIn ERISA Litigation*, which he decided in 2021.

So let me start with *Phillips*, if you don't mind.  One thing that we don't disagree with, and my brother was completely right about this, is the comment that Judge Davila made that federal courts have widely and consistently rejected attempts to impose ERISA liability where the claims are based solely on the funds's underperformance.  We agree with that.

And as your first question makes clear, we do not believe that our Complaint is only on the basis of under -- underperformance.  Instead, focusing on your first question in your questions for the hearing, we believe that we have facts that support an allegation of process failure.

In Paragraphs No. 74 to 78 of the Amended Complaint, Your Honor, Paragraph 74 starts by pointing out, based on an article that was in MorningStar, that there has been the same conservative equity allocation over the last ten years with

regard to the American Century funds.

And we actually provided a factual chart.  You asked for what facts do we have, so this also goes to Paragraph 3 of your questions.  And that chart makes very clear that with regard to the 2040 target date funds, over a ten-year period, from November of 2013 to October of 2023, ranked from highest to lowest, the American Century One Choice 2040 was the absolute lowest as far as a conservative equity allegation -- allocation, excuse me.

Now, we're not arguing that you can't ever have a conservative target date fund series or you can't have certain risk preferences.  Instead what we're saying -- and this is in footnote nine of -- let's see.  It is Page 21 of our opposition, which is ECF No. 32.  We point out that:

"If the American Century TDFs were more conservative than other TDFs in their equity allocations, then while they may have lower absolute returns, their risk adjusted returns could have been higher or lower than those of more aggressive TDF series.  However, as we demonstrate in our Amended Complaint, even on a risk adjusted basis, looking at Sharpe Ratios, information ratios, batting averages, Alpha Jensen's -- Jensen's Alpha, excuse me, the American Century TDFs underperform both at the beginning of the class period and over the entire

class period."

So I guess what we're saying is it's not just that it's conservative, but given the risk adjusted returns by looking at other econometrics that are used by fiduciaries, this fund should have never been selected by the fiduciaries.

And as we point out in Paragraph 76, we say:

"Given the investment objective and purpose of TDFs to grow requirement accounts over the life of the participant's career, it was imprudent to invest in a TDF family that placed all" -- "all" is in italics -- "employees in overly conservative target date funds like the challenged investments."

And in Paragraph 77:

"Defendants either did not consider the conservative equity allegation and the poor performance of the American Century One Choice funds in real time, where if they did, they did not prudently take into account the investment objectives of those who are not in retirement or close to retirement and would desire growth for their retirement accounts as opposed to maintenance of the principle."

THE COURT:  And that was the equity allocation; correct?

MR. SECUNDA:  Correct.  And we believe that is a

process failure, Your Honor.

So I would like to go back to Judge Davila in *Phillips versus CAES*, his decision from June 28th. And what he said was -- if you look at what they alleged in that case they focused on beta; right? Beta was their performance metric. And he defined beta in his decision to mean that there is a focus on raw returns, both alone and risk adjusted.

And he said:

"Essentially beta by itself is no more than a performance metric. It doesn't add anything as far as allegations of process failures."

In fact he says:

"Plaintiffs do not point to any process failure allegations and the sole allegation in *Phillips*" -- to which the plaintiffs there pointed to -- "was their statement that they neglected to act on information available to them at the time of the underperformance."

Clearly, we have much more than that, and we have the equity allocation allegations that I've just read to you in Paragraphs 74 to 78.

Your Honor, in *In Re LinkedIn ERISA Litigation* -- and let me give you a cite for that. That's 2021 WL5331448. Again, Judge Davila. This time November 16th, 2021. Looking at a different target date fund, interestingly enough, the Fidelity

Fidelity Freedom Funds, which were the replacements here in December of 2023 that replaced the American Century Funds, but Judge Davila denied the Motion to Dismiss in this case.  And I think it's important for us to examine why he felt that there was enough as far as plausibility with regard to selecting and retaining the freedom fund active suite in *In Re LinkedIn ERISA Litigation*.

Here he said, and I quote:

"The parties have submitted multiple statements of recent decisions, including decisions from other district courts across the country concerning the Fidelity Freedom suite.  The Court observes that most of these recent decisions have denied Motions to Dismiss based on similar grounds as LinkedIn's motion, whereas only one has granted the motion."

In particular, Judge Davila focused on *In Re Prime Healthcare ERISA Litigation*, which was decided in the Central District of California from July 16th, 2021, and he says, quote:

"Of particular persuasive value here is the Central District of California's decision in *In Re Prime Healthcare ERISA Litigation* which concerts substantively identical allegations about the active and index suites as the ones now before the Court."

There there had been a comparison between the Freedom Fund

Active Suite and the Freedom Fund Index Suite.  But like our Complaint, in addition to performance allegations, there were other allegations in the *LinkedIn* Complaint.

For instance, they had allegations that the Active Suite underwent a strategy overhaul in 2013 and 2014 that granted its managers discretion to deviate from the glide path allegations, to tie market shifts in order to locate underpriced securities. They cited to various reports questioning whether investors had lost confidence in the Active Suite.  They talked about the fact that there were outflows, revenue outflows from the Active Suite.

We would contend, Your Honor, that the types of allegations we've made here with regard to equity allocations and using a conservative equity allocation uniformly for all participants, whether they are trying to maintain principle or whether they are trying to grow their retirement income, was imprudent.  And the facts behind that are, of course, the charts that show it had the most equity, conservative equity allocation.

Your Honor, the other thing that we think is interesting is that the second question with regard to meaningful benchmarks.  It is really hard to understand how my brother could argue that we haven't pled meaningful benchmarks when one of the meaningful benchmarks that we pled was actually accepted by the plan as the replacement for the American Century Fund as

of December 1st, 2023.

You could say it's conceded that the Fidelity Freedom Fund is a meaningful benchmark since that's what the fiduciaries ended up replacing the American Century funds with.

**THE COURT:** Take a look at my second question.

**MR. SECUNDA:** Yeah.

**THE COURT:** What in your Complaint, the four corners of your Complaint, addresses fiduciary misconduct?

**MR. SECUNDA:** Well, Your Honor, I would, with all due respect, tell you that fiduciary misconduct is not the standard. The standard is imprudence. Misconduct, to me, suggests intent or some meaning to do bad or do wrong.

As a number of cases have held in the ERISA context, you know, empty heart, good motives are not important to an ERISA breach of fiduciary claim.

So what's important here is that we have provided a number of different metrics that show that over time no prudent fiduciary, based on the metrics that people use, would ever have selected the American Century target date fund, let alone retained it for 11 years, from at least 2012 to 2023.

In response, I would say -- there are two things that I would point out here, maybe three. This Complaint is not about performance and isolation. It is about the American Century Target Date Funds scoring poorly using some of the most commonly used investment criteria that almost every investment

policy statement contains and that are used in some shape or form by every competent investment professional.

So the issue are two-fold therefore. One, an equity allocation in a Target Date Fund can be so conservative that it becomes imprudent and retirees are unable to accumulate sufficient wealth until their requirement.

And, two, regardless of the equity allocation and the allocation to other asset classes, the risk adjusted return of a Target Date Fund must be competitive.

We have shown through our various metrics. In particular, I will have you look at Paragraph 91, where we do a vintage-by-vintage comparison between the American Century funds and the American Funds and we show how poorly rated over those common metrics the American Century fund is. Those metrics were available on the first day of the class period here, on February 28th, 2018.

It's also interesting that Mr. McMahan mentioned numerous times that what we should really look for is, you know, investments, comparators, that have similar risk profiles, similar equity allocations and so forth, but that doesn't make any sense. What we're trying to say is the current equity allocation of the Target Date Fund is not good. So why would we want to find another Target Date Fund with the same equity allocation so that this fund could be in an equally bad situation?

What we're saying is if you look at Paragraph 59, I believe -- let me just double check to make sure I have cited that correctly -- whether you're looking at "to" or "through" target date funds, recall, Your Honor, that "to" means you should have what you need for retirement once you, you know, arrive at age 65 or whatever date that is.  "Through" means that you have to continue to have money through your retirement.  So you need extra money.

What we point out is, not that we ignore it, as Mr. McMahan says, but we point out that the difference is really not important because what we're doing is we're considering different vintages, and by looking at different vintages you can essentially make a to target date fund comparable to a through target date fund or vice versa, a through target date fund comparable to a to target date fund.

And we say in Paragraph 59 of the Amended Complaint: There is no economically meaningful difference between to retirement and through retirement TDFs.  In almost all instances one type of TDF can be replicated using the other type through proper vintage selection; that is, a "to" can replicate a "through" and vice versa.

We believe this is an economic fact and has nothing to do with the so-called hand waving that defendants alleged in their reply brief.

**THE COURT:**  And you don't believe that this is

hindsight is 20/20?

**MR. SECUNDA:** Not at all, Your Honor. We believe that what we have done is we've gone to the first day of the class period, February 28th, 2018, and we asked: What information did the fiduciaries of the plan have on that day? And we looked at the exact information that we provided, for instance, in Paragraphs 90 and 91. And if they had merely done a comparison between, let's say, the American Funds and the American Century funds, we show that; or if they had done a comparison between the Fidelity Freedom Funds and the American Century Funds, they would have picked those other meaningful benchmarks.

And, in fact, Your Honor, five years later, almost six years later, they did. In fact, when they actually -- you know, we don't have the fiduciary process in front of us, of course. We are, as plaintiffs at the pleading stage, somewhat limited in what we know. We can only know what's publicly available and what we find on our own through our clients.

But what we can surmise, what we can infer, is that this information that led them to change their target date funds in December of 2023, that same information in the form of the common metrics that we discussed. For instance, with regard to Jensen's Alpha, which we spent a lot of time explaining to the Court in our Amended Complaint, started on paragraphs 101.

We say:

"The Jensen's Alpha effectively accounts for asset allocation differences between investment strategies and measures, whether the strategy added value or not after the risk has been taken to account."

We then, in Paragraph 102, do a thorough Alpha Jensen's analysis both for the American Century, all vintage, of their target date funds.  We do the same for all the vintages of the American Funds.  And what we say is that in Paragraph 104:

"Even with an equity allocation difference removed, the American Century TDFs underperformed the comparator series."

105:

"In contrast, almost all the American Funds' Jensen alphas are positive, indicated they outperformed the comparison series."

This information, Your Honor, was available in realtime on February 28th, 2018.  There is nothing hindsight whatsoever about our allegations in this Complaint.

We are looking at it from the standpoint of what fiduciaries knew, what they could have used, and how they could have come to their decisions on February 28th, 2018.  They decided to maintain what was already there, which was the American Century Target Date Funds.

We believe that, in essence -- let me see if I have my

notes here.  I have a statement here.

We say that we know that the fiduciary process -- and, again, we don't know its particulars because we don't have discovery yet.  Whatever -- whatever its nature was lacking, because a TDF, a target date suite, was selected that no prudent fiduciary process would have selected at the beginning of the class period.  The fact that the American Century Target Date Fund scored so poorly relative to many other target date suites along commonly used metrics would have been an exclusion criterion in any prudent fiduciary process.

So those are the -- those are the facts that we believe are responsive to Question No. 3 that you asked us to consider.

With regard to Question 4, Your Honor, the duty to monitor is derivative of the duty of prudence.  So Courts have held uniformly around the country that if you find that the duty of prudence has been stated plausibly, then it also goes that the duty to monitor derivatively has also been shown.

It is not necessarily related to how much time elapsed before the investments were evaluated or reevaluated, which, again, to be fair, we have no -- we have no knowledge of that because, as we pointed out in our opposition brief, and this is on page -- let's see.  Page 15 of Document No. 32 we point out that:

"ERISA plaintiffs generally do not have inside information regarding the fiduciary's process and an

ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access as long as the facts alleged tell a plausible story."

Indeed, the Ninth Circuit itself, Your Honor, has recognized that, quote, circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage because plaintiff may not be in a position to describe with particularity the events constituting the alleged misconduct.  That's *Alas*, A-L-A-S, *versus AT&T*, from the Central District of California, 2018.  It's quoting *Concha versus London*, which was from the Ninth Circuit in 1995.

Your Honor, I do want to end, because I know my time is running short, by going back to a number of things that I think your good friend Judge Davila said --

**THE COURT:**  Somebody keeps doing research on who I hang out with.

**MR. SECUNDA:**  You told us you were friends with him.  Yeah.  Okay.  But we -- we think he's right, so it's all good.

He said, you know -- this is a quote in *In Re LinkedIn ERISA Litigation*.  He says:

"The Court recognizes that other Courts in this district have granted Motions to Dismiss holding that passively managed funds generally cannot serve as meaningful benchmarks for actively managed funds

*Debra L. Pas, CSR, RPR, RMR, CRR*
*Official Reporter - U.S. District Court - San Francisco, California*

because the two types of funds, quote, have different aims, different risks and different potential rewards that cater to different investors."

And he cites to *Davis versus Sales Force* and *Wehner versus Genentech*, and I don't know if *Intel versus Anderson* had been decided at that point, but he would have cited to *Intel versus Anderson*.

But what he also says is:

"The Court is unaware of any Ninth Circuit decision endorsing the blanket rule LinkedIn suggests the Court apply here.  *Wehner* and *Sales Force* acknowledge the possibility that passively managed funds might in some situations serve as meaningful benchmarks for actively managed funds.  Furthermore, those cases concern Complaints that lack sufficient factual allegations from which it could be inferred that the passively managed funds at issue could serve as meaningful benchmarks."

And we believe that just like in *LinkedIn*, we have provided additional allegations beyond underperformance with regard to equity allocation which Courts have found sufficient to infer a plausible claim has been stated.

To quote Judge Davila again from *In Re LinkedIn ERISA Litigation*, quote:

"These allegations are sufficient at the pleading

stage to create the inference that the index suite could serve as a suitable comparator for the active suite.  We believe that the allegations here are sufficient at the pleading stage to create the inference that the Fidelity Freedom suite, as well as the American Fund suite, can serve as a suitable comparator for the American Century suite."

So in conclusion, we believe we had two things to try to convince you about today, Your Honor.  The first was to show you that our Complaint was not just about performance; that we had other metrics -- risk, value, benefit, equity allocation -- that went beyond performance and was exactly what Judge Davila wanted in *Phillips* that was missing there, but exists here.  We have those process failures alleged.

And number two, we believe through the metrics that we have presented in our Complaint that we have set up the meaningful benchmarks that are necessary and that, indeed, plaintiffs by themselves adopting one of our meaningful benchmarks on December 1st, 2023 kind of makes the point about us.

The last thing I'll say, Your Honor, is this, which is I would be very curious to know in defendant's mind how in the world they would think any of these cases would ever survive given their heightened pleading standard on a Motion to Dismiss.  I don't think they have an answer to that.

In fact, if defendants are right, that if everything that we have put in our Complaint is merely a performance factor, I would argue that this would lead to an insurmountable pleading burden because plaintiffs simply don't have the necessary fiduciary process information during the pleading stage.

And so I think because we must rely on inference and because we must rely on publicly available information, the equity allocation allegations, as well as the common metrics that we've cited to set up meaningful benchmarks, means that we have stated a claim and that this Motion to Dismiss should be denied in its entirety.

Thank you, Your Honor.

THE COURT: All right. Quick question. I'm going to summarize a couple of things and then I'm going to end with the last question, this Question 5.

We're looking at the period of 2018 to 2023. The defense position is that this Complaint, although amended, only really addresses underperformance and that everything else is just underperformance stated differently.

It's your position that Paragraphs 74 through 78, Pages 13 through 14 of your First Amended Complaint filed on May 27th, 2024 shows that there is process failures and that a prudent fiduciary would not have stayed in the plan as long as they did, and this was reflected by them sending an alternative plan in December 2023 based upon metrics that you believe should

have been -- that the fiduciary should have been aware of prior to, and that they maintained and retained an underperforming selection for ten years, and that the derivative of the duty of prudence is also established therein and further discussed on Page 15 of your opposition, and that your brief does not have inside information regarding the process.

Further, that the inferences are based on those things that are made publicly available and the relying paragraphs that the Court should take close notice to are Paragraphs 90 through 91, 59, and 101 to 102.

Now, you heard me have a discussion with the defendant regarding judicial notice.  I shared which documents I am prepared to take judicial notice of.

Are there any other documents that you are in agreement with the defendant that the Court should take into consideration that I did not acknowledge; namely, three through seven.

**MR. SECUNDA:**  Three through seven, Your Honor, I think are fine because they are something that are either incorporated by reference or have been judicially noticed by other courts in similar cases.

The one to two or eight through twelve, I believe, involve MorningStar, Department of Labor, and other documents that are, as you pointed out, judicially notable in the sense that they exist, but they are filled with statements that are subject to

various interpretations and in which, of course, the parties agree upon.

And I think Ninth Circuit has been pretty clear and, in fact, I hate to -- well, don't hate to, but Judge Davila himself in *In Re LinkedIn* made this exact point, which is one should not judicially notice facts which are subject to judicial dispute.  The cite, by the way, Your Honor, for that, from the Ninth Circuit -- sorry, if I can find it here -- is *Khoja*, K-H-O-J-A, which is a Ninth Circuit case, I believe, from 2018 or 2019.  I don't have the date in front of me, but it's a fairly recent case.  It's a securities case.  But I think its reasoning applies with equal force to the ERISA context, Your Honor.

**THE COURT:**  All right.  And then final question.  If I were to respectfully disagree with my colleague and his analysis in *In Re LinkedIn* and found that this Complaint restated in different ways underperformance, as the defendant would like to persuade the Court, in your opinion would amendment be futile?  And if not, why not?

**MR. SECUNDA:**  Your Honor, I would do everything in my power to continue to try to find additional facts which would show the imprudence of maintaining the American Century fund in this plan from 2018 forward.

As you know, I believe, we have those facts already in the charts that we have in our -- our Complaint, all the various

MorningStar charts, in addition to all the allegations which we've explained with regard to this equity allocation.

So obviously I believe that what we have is sufficient. Would amendment be futile?  No.  I would like the opportunity, if the Court could point out, if you do end up there, why you believe that these are nothing more but performance standards for us to find other evidence that we believe would certainly not be performance standards.

Your Honor, I would like to say one other thing about that, because I do believe essentially that's where this case comes down to.  You know, are defendants correct that everything that we cited to -- equity allocation, these various metrics, Sharpe Ratios, Jensen's Alpha information ratios -- are they all nothing but performance?  We would say that what defendants are improperly doing is they are looking at returns in isolation.  Returns, of course, in isolation are performance.  Risk in isolation, which we would argue is not performance.  And then really what the case is about is a return risk trade-off.

That is modern portfolio theory in a nutshell.  You are looking to take as much risk as you can while at the same time optimizing your return.

We believe that our metrics are not basic -- are not based on only performance, but instead are based on factors such as allocation, value, benefit, risk, and allocation that are

separate and apart from performance.

So to sum that up, underperformance simply means that one investment had a lower return than another.  Examining total risk adjusted returns, relative risk adjusted returns, batting averages, et cetera, is a much deeper analysis.

Moreover, one investment might have had lower returns than another investment, but it still might have provided a much better return risk trade-off, which, again, highlights a difference between performance and the factors that we've looked at in our Complaint.

**THE COURT:**  Thank you.

Regrettably you've run out of time.

**MR. SECUNDA:**  Okay.  Thank you, Your Honor.

**THE COURT:**  But I can let you know that where I will be hovering as I review *LinkedIn* again -- and I'm going to give the defense an opportunity to address the Court once more -- is that I'm looking very closely as to whether there are sufficient facts showing that the methods employed by the fiduciaries or the investigations the fiduciaries conducted were prudent -- were imprudent at the time that they were made and whether the process failure allegations, as the Court's attention has been brought to Paragraphs 74 through 78, whether they fell outside the range of reasonable judgments a fiduciary would have made based on his or her experience and expertise at the time the decision was made.

So those are the areas that I am really taking a close look at so you know exactly where the rub is.

Counsel for the defendant?

**MR. McMAHAN:**  Thank you, Your Honor.

**THE COURT:**  Oh, last thing.  Thirty-nine, you agree that discovery should be stayed?

**MR. SECUNDA:**  Yes, Your Honor, which is why we didn't respond.

**THE COURT:**  Thank you.  Just wanted to make sure my record was clear.

**MR. SECUNDA:**  Yes, of course.

**MR. McMAHAN:**  Thank you, Your Honor.

I just wanted to address a couple points.  I wanted to start with the *LinkedIn* case that Judge Davila decided three years ago or so.  I don't believe that was cited in plaintiff's opposition brief, but if you look at that opinion, Judge Davila sort of did two things in denying the Motion to Dismiss.

First, he found that the plaintiffs there had pled and alleged a meaningful benchmark.  And he did that because he said that the allegations regarding the comparators in that case were sufficient where the Complaint pled the comparators shared the same management firm, shared nearly identical glide paths, and that the TDFs as -- and both TDF families were inherently actively managed, and the difference appeared to be the degree to which they are active managed.

There are no such allegations here.  We don't know if any of plaintiff's comparators are actively managed because plaintiff hasn't alleged that.  And we don't know if they are passively managed because plaintiff hasn't alleged that.  So Judge Davila found that the plaintiffs there had pled a meaningful comparator.

And then Judge Davila went on to note that the plaintiffs there had alleged there was publicly available information in the form of articles that criticized the management of those target date funds.  The investors were fleeing the funds to the tune of something like $4 billion in outflows in a single year, and the investments had excessive fees.  And there are no allegations regarding the American Century Target Date Funds like that here.  So that's a distinction between the allegations in the *LinkedIn* matter and this case.

And the other thing I would point out is so Judge Davila said in *LinkedIn* that actively versus passively managed funds can sometimes be meaningful benchmarks, and that was one of the reasons he denied the Motion to Dismiss there.

But then if you look at his opinion in *Bracalente* from just earlier this year, he says:

"Two comparators are composed of actively managed funds and the other is to employ through retirement glide path strategy, which while the challenged funds employs a to retirement glide path strategy."

And Judge Davila concluded in that case that plaintiffs did not plausibly allege that the actively managed funds were meaningful benchmarks for the passively managed funds or that the to versus through funds could be meaningful benchmarks for each other.

So that's -- Judge Davila did deny the Motion to Dismiss in *LinkedIn*, reached a different conclusion in *Bracalente* based on different allegations.

And then I think the other issue I wanted to point to Your Honor, plaintiffs argue that in 2018 the various performance metrics that are contained in their Complaint show that the American Century Target Date Funds underperformed all of the other target date funds in the market, but that's simply not consistent with the allegations in their own Complaint.

So if you look at Paragraph 84, Your Honor, Paragraph 84 is the chart that shows the performance of the American Century target date 2045 fund versus 23 other 2045 target date suites. And that chart, using plaintiff's metrics, shows that the American Century TDF had a five-year Sharpe ratio of 0.68, which ranked second best out of 23 funds on the basis of risk adjusted returns.

The American Century TDF had a batting average of .55 which tied for six out of 23 funds. American Century TDF had a five-year Jensen's Alpha of 1.05, which ranked second out of 23 funds. And the American Century TDF had an information ratio

of .354, ranking sixth out of 23 funds.

So all of these performance metrics that plaintiffs include in their Complaint and argue show underperformance, in fact, show that the American Century TDF in 2018 at the beginning of the class period, which plaintiffs say should not have been in the plan, was one of the top six performing funds under every metric that plaintiffs proffer.

Then plaintiffs pointed to -- they didn't -- plaintiffs didn't identify that paragraph in the Complaint, but they did point you to Paragraph 91.  If you look at Paragraph 91, what that chart shows is that the American Century TDFs, according to the plaintiffs, had sort of middle-of-the-road performance; right?  There are something between 38 and 41 comparator funds listed in that chart.  And the American Century TDF performed either in the top half, you know, roughly the top half or slightly below the top half.

So, again, plaintiffs haven't pointed to any authority that suggests -- it's called middle-of-the-road performance is enough to indicate that a fund had imprudent performance.

Finally, Your Honor, plaintiff's counsel argued that sort of the standard that the defendants are -- arguing for would create an insurmountable pleading burden for plaintiffs. That's simply not true.  *LinkedIn* applied the same standard, denied the Motion to Dismiss.

And then sort of plaintiffs make that argument routinely

in these sorts of cases, including in the Sixth Circuit.  In the *Common Spirit* case, the Sixth Circuit addressed that, said that's not the case.  It is not an insurmountable pleading standard.

THE COURT:  And you would say the Sixth Circuit is persuasive, not binding.

MR. SECUNDA:  Persuasive, not binding, yes, Your Honor.

And, again, this is the pleading standard that Judge Davila, Judge Koh, Judge Chesney and other judges in this district have applied to similar Complaints challenging either the same target date fund or different target date funds.

So, Your Honor, unless you have any further questions that's all I have.

THE COURT:  Thank you.  Thank you for a very well argued motion on both sides of the aisle.

With regards to ECF 39, it is granted, but will be lifted if the Court denies the Motion to Dismiss or 60 days after a Second Amended Complaint, if the Court gives leave therein.

ECF 29, the Request for Judicial Notice, as the Court has already indicated, three through seven is hereby granted.

I will be revisiting *In Re LinkedIn*, since both side have invited the Court to revisit that case and its holding as well as its content.

And I've already indicated the paragraphs of the Complaint

that I will give close attention to and adding Paragraph 84.

This matter will be taken under submission.  A written order shall follow and we're hopeful that we'll have a written order to you within 7 to 14 days of today's date.

Thank you.

**MR. SECUNDA:**  Thank you, Your Honor.

**MR. McMAHAN:**  Thank you, Your Honor.

(Proceedings adjourned.)

**CERTIFICATE OF OFFICIAL REPORTER**


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Monday, October 7, 2024