UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PAUL S. RUBKE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SERVICENOW, INC., et al.,<br><br>    Defendants. | Case No. 24-cv-01050-TLT   (PHK)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STAY DISCOVERY, GRANTING-IN-PART PLAINTIFFS' MOTION TO COMPEL, AND ISSUING A PROTECTIVE ORDER**<br><br>Re: Dkt. 60 |

Now before the Court is a discovery dispute between class action Plaintiffs and Defendants, ServiceNow, Inc., and the Board of Directors of ServiceNow, Inc. (collectively "Defendants"). [Dkt. 60]. Defendants seek to stay discovery and Plaintiffs seek to compel Defendants to produce limited discovery. After carefully considering all the briefing, the undersigned finds this matter suitable for resolution without oral argument pursuant to Civil L.R. 7-1(b). As discussed herein, the undersigned **DENIES** Defendants' request to stay discovery, **GRANTS-IN-PART** Plaintiffs' request to compel Defendants to produce limited discovery, and **ISSUES** a Protective Order (filed concurrently herewith).

## BACKGROUND

On February 21, 2024, Plaintiffs filed a class action complaint against Defendants for claims under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(2). [Dkt. 1]. On June 21, 2024, the Defendants filed a motion to dismiss. [Dkt. 28]. On August 12, 2024, Defendants filed an administrative motion to stay discovery pending the resolution of the motion to dismiss. [Dkt. 39]. The presiding District Judge granted the administrative motion to stay discovery. [Dkt. 40].

On September 18, 2024, the presiding District Judge issued an Order granting the motion to dismiss with leave for Plaintiffs to amend the complaint. [Dkt. 41]. On September 26, 2024, Plaintiffs moved the Court to lift the stay on discovery, which the presiding District Judge granted. *See* Dkt. 42 (administrative motion to lift the stay on discovery); Dkt. 51 (Order lifting the stay on discovery). In the Order lifting the stay on discovery, that Order clarified that: "[t]he stay [on discovery] was [] lifted on September 18, 2024, when the Court granted the Motion to Dismiss[.]" [Dkt. 51].

On September 30, 2024, the instant dispute was referred to the undersigned for all discovery purposes. [Dkt. 50]. On October 9, 2024, the Defendants moved the Court to reconsider its Order lifting the stay, or, in the alternative, certify the Order for an interlocutory appeal. [Dkt. 56]. The presiding District Judge denied that reconsideration motion. [Dkt. 59]. On October 16, 2024, the Parties submitted the instant dispute in a joint discovery letter brief to the undersigned, detailing certain disagreements on the scope of permissible discovery. [Dkt. 60].

## LEGAL STANDARD

At this stage of this case, the scope of permissible discovery is defined by the Court's Order lifting the stay on discovery. [Dkt. 51]. As stated in that Order, "[t]he stay was therefore lifted on September 18, 2024, when the Court granted the Motion to Dismiss without prejudice. ECF 41. Yet the scope of permissible discovery upon the stay being lifted was only intended for Plaintiffs to cure pleading defects as to process failure allegations. . . . The discovery stay is therefore lifted for the limited purposes of allowing Plaintiffs to gather facts they believe will cure the pleading defects that the Court pointed out in its Order granting Defendants' Motion to Dismiss. *See* ECF 41. Therefore, the discovery is limited to process failure allegations . . . . **The discovery is therefore limited to production that relates to the fiduciaries' conduct or methods employed in determining how to invest the plan's assets.**" *Id.* at 1–2 (emphasis in original).

The Order lifting the stay further specified that "Regarding the scope of discovery, the Court **DENIES-IN-PART without prejudice** Plaintiffs' Motion regarding the documents that Defendants must produce. The parties are ORDERED to meet and confer regarding which documents Defendants will produce to Plaintiffs according to the Court's Order, ECF 41. Any

2

1   future discovery disputes shall be addressed by the Magistrate Judge." *Id.* at 2-3 (emphasis in
2   original).
3         The presiding District Judge also issued a Text Order on October 2, 2024 which further
4   clarified the scope of discovery at this stage of the proceedings. [Dkt. 52]. That Text Order of
5   October 2 states "For clarity, the Court finds that discovery is therefore limited to production that
6   relates to the fiduciaries conduct or methods employed in determining how to invest the plans
7   assets." *Id.*
8         The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar.
9   Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude
10  in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of
11  discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent
12  discretion and authority, the Court has broad discretion in determining relevancy for discovery
13  purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett
14  v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to crafting discovery
15  orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523
16  U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and
17  to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery
18  method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can
19  be obtained from some other source that is more convenient, less burdensome, or less expensive."
20  Fed. R. Civ. P. 26(b)(2)(C)(i). Additionally, the Court can institute protective orders and certain
21  discovery completion deadlines. *Jones v. Sunbelt Rentals, Inc.*, No. 22CV05954AMOPHK, 2023
22  WL 6215295 (N.D. Cal. Sept. 22, 2023) (issuing a protective order); *Valentine v. Crocs, Inc.*, No.
23  22CV07463TLTPHK, 2023 WL 7461852 (N.D. Cal. Nov. 10, 2023) (creating certain discovery
24  deadlines to speed up discovery).
25        In general, and subject to the specific limitations on discovery set forth for this stage of the
26  case, Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery
27  regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional
28  to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy,

for purposes of discovery, is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted); *In re Soc. Media Adolescent Addiction/personal Inj. Prod. Liab. Litig.*, No. 22-MD-03047-YGR (PHK), 2024 WL 3225909, at *1–2 (N.D. Cal. June 28, 2024).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "[t]he objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment; *see also* FREDRIC BELLAMY, ANNOTATED MANUAL FOR COMPLEX LITIGATION FOURTH § 11.41, at 69 (Federal Judicial Center 2023) (Rule 26(b)(1)'s "underlying principle of proportionality means that even in complex litigation, discovery does not require leaving no stone unturned"). In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285

F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

## DISCUSSION

As a preliminary matter, Defendants devote a significant portion of their discovery letter brief to re-arguing why the Order lifting the stay on discovery should be reconsidered. [Dkt. 60 at 2–3]. Perhaps this occurred because the Order Denying Reconsideration was issued on the same day as the Joint Discovery Letter Brief at issue here. *Compare* Dkt. 60 *with* Dkt. 61 (both filed on October 16, 2024). To the extent Defendants urge re-imposing the stay of discovery, this amounts to procedurally improper attempt to further reconsider the Order lifting the discovery stay, dkt. 51, and an impermissible attempt to circumvent the presiding District Judge's Order Denying Reconsideration. This Court is not authorized to decide (or allow re-litigation of) such overall case management issues properly brought before the presiding District Judge, and this Court will not reconsider issues that have already been decided. The Court's October 2 Order lifting the stay on discovery is clear on its face: "[t]he stay [on discovery] was [] lifted on September 18, 2024, when the Court granted the Motion to Dismiss[.]" [Dkt. 51]. The Order denying leave to file a motion for reconsideration of the lifting of the stay is unequivocal on its face, as well. [Dkt. 59].

Similarly, Defendants dedicate another portion of their discovery letter brief to arguing that the undersigned should stay discovery pending the presiding District Judge's ruling on Defendants' request for leave to file an interlocutory appeal of the lifting of the stay. *See* Dkt. 59 at 2–3 ("Judge Thompson has not yet ruled on Defendants' alternative request for leave to seek interlocutory appeal . . . . If Judge Thompson denies Defendants' request for leave to seek interlocutory appeal, then the parties can proceed accordingly.").

The Defendants cite no law supporting a stay of discovery pending a request for leave to seek an interlocutory appeal. "'A district court has inherent power to control the disposition of the

5

causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972) (citations omitted).

Here, the competing interests mitigate against imposing a stay of discovery pending the request to seek an interlocutory appeal. First, the Order lifting the stay was unequivocal and expressly stated that the purpose of limited discovery at this stage was to address the pleadings anticipated for the upcoming Second Amended Complaint, due on November 8, 2024. *See* Dkt. 51 at 2 ("The discovery stay is therefore lifted for the limited purposes of allowing Plaintiffs to gather facts they believe will cure the pleading defects that the Court pointed out in its Order granting Defendants' Motion to Dismiss."). Imposing a stay on discovery pending the request for an interlocutory appeal would harm Plaintiffs' ability to amend the Complaint and impair their ability to address the Court's Order granting the Motion to Dismiss. A stay pending a request for interlocutory appeal will not simplify the issues, but rather would complicate the procedure established by the presiding District Judge for this case.

Second, this Court recognizes that the stay on discovery has been lifted, and the motion for reconsideration has been denied. Defendants' request to stay discovery, under the guise that such a stay pending its request for interlocutory appeal is warranted, amounts to a transparent attempt to avoid the Order lifting the stay, avoid the Order denying reconsideration, avoid the October 2 Text Order clarifying the scope of discovery now, and relitigate an issue Defendants have now lost multiple times. In light of the clear directives in the Orders of the presiding District Judge as currently operative in this case, discovery is not stayed and will proceed in accordance with the defined limited scope of discovery set forth in the various Orders detailed above. Defendants'

attempt to utilize an alternative procedural tactic to avoid discovery which was expressly ordered smacks of gamesmanship and runs counter to the spirit of the Order lifting the stay on discovery.

Turning to the merits of the discovery dispute, the Court notes that Defendants devote much less effort in their arguments as to the actual merits of the discovery sought to be compelled. As noted, under prevailing legal standards, because Defendants are the party resisting discovery, Defendants have the burden to specifically explain the reasons why the requested discovery at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *La. Pac. Corp.*, 285 F.R.D. at 485; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied."). Here, Defendants' objections to the requested, limited discovery at issue amount to boilerplate, conclusory, or speculative arguments which are denied as facially unpersuasive. First, Defendants devote one paragraph to arguing that the requested discovery is improper because Plaintiffs seek "confidential, non-public information." [Dkt. 60 at 3]. Second, Defendants devote a second paragraph to arguing that the requested discovery is "burdensome, time-consuming, and costly." By contrast, Defendants devote five paragraphs to arguing why a stay of discovery is justified. Under prevailing legal standards, the boilerplate nature of Defendants' objections (confidentiality and burden) to this discovery warrants denial of their motion.

Giving Defendants the benefit of the doubt that they are seriously concerned about confidentiality issues despite the short shrift devoted to this issue in Defendants' briefing, the Court notes that the confidentiality concerns here are not substantiated with evidence or details sufficient to refuse discovery completely. Defendants argue that the discovery "Plaintiffs seek [is] confidential, non-public information concerning the fiduciary process used to administer the Plan over a more than six-year period for 'purposes of allowing Plaintiffs to gather facts they believe will cure the pleading defects that the Court pointed out in its Order granting Defendants' Motion to Dismiss.'" Dkt. 59 at 3 (citing Dkt. 51 at 2). There is no evidence as to what this confidential information consists of, how many people have had access to such information (or how widely it has been disseminated), how vital it is to Defendants' operations, or how harmed Defendants would

1   be by even an inadvertent public disclosure of such information.

2   In order to address the confidentiality concerns and resolve this dispute, the Court hereby
3   **ENTERS** the Northern District of California's Model Protective Order for Standard Litigation as
4   the governing Protective Order in this matter. This is a procedure that the Court would have
5   expected the lawyers in this case to have followed as a matter of routine discovery procedure.
6   Apparently, the Parties have been unable to reach an agreement despite allegedly extensive meet-
7   and-confer efforts. The undersigned is disappointed that sophisticated attorneys are not able to come
8   to an agreement that could mitigate any potential concerns associated with confidential, non-public
9   information. The undersigned is especially disappointed because the Northern District of
10  California's very own Model Protective Order addresses issues related to the inadvertent production
11  of privileged or protected material. Specifically, when a Producing Party notifies the Receiving
12  Parties that certain materials were inadvertently produced and are subject to a claim of privilege or
13  other protection, the Receiving Parties are required to adhere to the obligations outlined in Federal
14  Rule of Civil Procedure 26(b)(5)(B). The Court's Model Protective Order explicitly addresses the
15  confidentiality concerns raised by Defendants.

16  Accordingly, the Court is separately issuing a Protective Order in this case, based on the
17  Model Protective Order. As discovery proceeds, should the Parties agree on any modifications to
18  the Protective Order due to the unique issues in this case, they remain free to submit a jointly
19  proposed Stipulation and Amended Protective Order in future as appropriate for the Court's
20  consideration. The Court hereby **ORDERS** the Parties to comply with the terms of the Protective
21  Order when producing documents, including applying appropriate confidentiality designations
22  where reasonably warranted. Defendant's objections to producing the documents sought now on the
23  basis of confidentiality are hereby **OVERRULED** as moot.

24  Next, as noted, Defendants' second argument takes issue with the scope of discovery and
25  argues that the limited discovery sought here is burdensome. Dkt. 59 at 3. Specifically, Defendants
26  state that "Plaintiffs seek, among other things, voluminous meeting materials for the committee that
27  administered the Plan for the last six-plus years. These documents must be reviewed for
28  responsiveness and privilege, and redacted, if necessary, prior to production." *Id.*

Other than these boilerplate, conclusory, and speculative arguments, Defendants have offered no valid reason to suggest that a six-year time frame should not apply to this discovery, and they have submitted no declarations to substantiate the bald attorney argument that such a production period would be unduly burdensome. The Court is presented with no information on the volume or number of documents involved. Experienced counsel for Defendants surely has access to ESI and discovery services vendors (and discovery staff within their law firm) skilled at collecting, processing, and producing documents in discovery on relatively short deadlines. Without supporting evidence, Defendants' claim of burden remains unsubstantiated and ultimately unpersuasive.

Moreover, the argument that reviewing and processing documents for production is somehow alone a basis to justify denial of discovery borders on the risible. In the modern litigation era, collecting, reviewing, and processing documents has been a routine part of discovery well known to law firms, litigants, and the Courts. While producing documents in discovery may require effort on the part of Defendants, that effort alone is not by itself a legally cognizable basis to deny all discovery (otherwise, every party would argue it should be exempt from discovery); rather the issue is whether the discovery sought is unduly burdensome or non-proportional. And, as noted, the burden is on the resisting party to establish that the discovery sought is not merely a conceptual burden, but an undue burden.

Here, the Court finds Defendants' arguments substantively without merit. Defendants cite out of circuit case law that "[t]his [discovery] process is burdensome, time-consuming, and costly, and the burden falls entirely on Defendants." Dkt. 60 at 3 (citing *Pension Ben. Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 719–20 (2d Cir. 2013)). However, the *Pension Benefit* opinion is inapposite: there, the Second Circuit was analyzing the *prospect* of general discovery in that case and not analyzing limited discovery such as in the instant dispute. *Pension Ben. Guar. Corp.*, 712 F.3d at 719. Unlike the concerns about overbroad discovery and the *in terrorem* effect of potentially wide-ranging, burdensome discovery leading to settlement extortion in *Pension Benefit*, here the scope of discovery is clearly much more limited by the Order lifting the stay of discovery: "discovery is limited to process failure allegations. Specifically, in addressing the

9

fiduciaries' conduct or methods employed in arriving at an investment decision[.]" Dkt. 51 at 2.

This Court is cognizant of the relatively short time frame for even the limited discovery at issue here. And this Court appreciates Defendants' asserted concerns about the time and burden it may allegedly take to review the documents at issue and prepare them for production. Accordingly, for purposes of this limited discovery for the documents at issue, the Court **ORDERS** the implementation of two discovery procedures which will expedite Defendant's review and production of documents as follows:

First, in order to either minimize or obviate the need for delay caused by privilege reviews (and disputes over privilege issues), the Court hereby **ORDERS** the Parties to employ the following Privilege and Clawback procedures:

If, after production of any discovery for the purposes of this dispute, any produced materials are subsequently alleged by any Party to be subject to an applicable privilege (or if any Party reasonably contends that production of any specified materials could constitute a waiver of any applicable privileges), then such produced documents shall be deemed to have been inadvertently produced and should not have been produced in the first instance, and no waiver shall be found. Accordingly, for any such materials, Defendants shall promptly serve a "Clawback Notice" which shall include: (i) the Bates range of the documents or materials at issue, (ii) a privilege log listing the document(s) or item(s) produced, and (iii) a new copy of the document(s) or material(s) (utilizing the same Bates number as the originally produced document(s) or material(s)) with the privileged or protected material redacted (if the Parties agree that only a portion of the document contains privileged or otherwise protected material). If Defendants contend that the entire document at issue is privileged or otherwise protected, then Defendants shall provide a slip sheet noting that the entire document is being withheld to replace the clawed back document.

Upon receipt of a Clawback Notice, all such documents or other materials or information identified therein, and all copies thereof (including images, OCR's, transcriptions, notes, or other documents of any kind which extract, memorialize, or copy information from any such clawed back documents), shall be promptly collected by Plaintiffs and their counsel and experts (and those under their control), and those copies shall be promptly sequestered and either (at Plaintiffs' option)

1    returned to Defendants or destroyed by Plaintiffs' counsel, who shall serve promptly thereafter a

2    certificate of destruction signed under oath by counsel for Plaintiffs. No Party shall use such clawed

3    back document, material, or information therein for any purpose, until further Order of the Court.

4    Plaintiffs shall attempt, in good faith, to retrieve, sequester, and either return or destroy all copies

5    of the clawed back documents in electronic format promptly after receiving a Clawback Notice.

6          Plaintiffs may challenge an assertion of privilege with respect to documents listed on

7    Defendants' privilege log. The Parties shall follow the Court's Standing Order for Discovery and

8    the dispute resolution procedures therein for raising any such challenges with the Court, if the Parties

9    are unable to resolve any such disputes through negotiation. The Parties are encouraged to cooperate

10   reasonably in resolving any such disputes through the meet and confer process.

11         Second, in order to expedite Defendants' production and either minimize or obviate the need

12   for delay caused by individualized confidentiality designations under the Protective Order, the Court

13   further **ORDERS** that for the documents produced as part of the limited discovery at issue currently,

14   Defendants may designate such documents at the highest level of confidentiality under the

15   Protective Order as a default. After substantial completion of production, Defendants shall take

16   reasonably prompt steps to re-designate the documents at the appropriate level of confidentiality

17   under the Protective Order, and Plaintiffs may bring to Defendants' attention reasonable requests

18   for re-designation of specified documents. The Parties are encouraged to cooperate reasonably on

19   re-designating confidentiality levels of the documents, particularly where the face of a document

20   demonstrates that a particular document deserves either lower confidential designation or no

21   confidential designation at all.

22         Furthermore, the Parties shall follow the Court's Standing Order for Discovery and the

23   dispute resolution procedures therein for raising disputes over confidentiality re-designations with

24   the Court, if the Parties are unable to resolve any such disputes through negotiation. The Parties are

25   encouraged to cooperate reasonably in resolving any such disputes through the meet and confer

26   process.

27         With regard to the relief that Plaintiffs request, Plaintiffs seek an Order compelling

28   Defendants to produce "from February 2018 to present: "(1) Plan investment policy statements; (2)

Plan fee disclosures provided to Plan participants; (3) Plan Committee meeting minutes and materials related to the monitoring and replacement of the American Century TDFs; and (4) any investment monitoring reports utilized by the Plan Committee concerning TDFs." The first, second, and fourth categories of documents are sufficiently defined and limited such that they are consistent with the Order lifting the discovery stay. [Dkt. 51]. The request for Plan Committee meeting minutes is also definite and limited, consistent with the Order lifting the discovery stay. *Id.* However, the phrase "materials related to the monitoring and replacement of the American Century TDFs" is broadly phrased in such a way as to potentially risk and invite further dispute as to scope and whether it calls for documents outside the scope of the Order lifting the discovery stay. Accordingly, the Court **DENIES** Plaintiffs' request for an Order compelling production of such materials. The Court exercises its authority, as set forth below, to modify this portion of Plaintiffs' request, to more squarely fall within the scope of discovery set by the Order lifting the stay. *See* Dkt. 52 ("discovery is therefore limited to production that relates to the fiduciaries conduct or methods employed in determining how to invest the plans assets.").

Accordingly, Defendants are **ORDERED** to produce the following: from February 2018 to the present (1) Plan investment policy statements; (2) Plan fee disclosures provided to Plan participants; (3) Plan Committee meeting minutes and Plan Committee documents which expressly discuss, mention, or memorialize monitoring and replacement of the American Century TDFs; and (4) investment monitoring reports utilized by the Plan Committee concerning TDFs. Such production shall be made on a rolling basis starting promptly and as soon as reasonably possible, in accordance with the Protective Order and this Order, and Defendants are **ORDERED** to substantially complete production by November 4, 2024, in view of the fact that the Amended Complaint is due on November 8, 2024.

The Parties are further **ORDERED** to submit weekly joint status reports to the undersigned, in letter format, no longer than two pages and evenly divided between the Parties, detailing the progress of discovery leading up to the November 8, 2024, deadline. The joint status reports shall be filed on each of October 24, October 30, and November 7, 2024.

## CONCLUSION

Accordingly, for the foregoing reasons, the undersigned **DENIES** Defendants' request to stay discovery, **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiffs' request to compel Defendants to produce limited documents as set forth herein, and **ISSUES** a Protective Order which is filed concurrently herewith.  This Order resolves Dkt. 60.

**IT IS SO ORDERED.**

Dated: October 18, 2024

PETER H. KANG
United States Magistrate Judge