**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAUL S. RUBKE and SHERIDA DU LAC DE FUGERES, individually and as representatives of a Class of Participants and Beneficiaries of the ServiceNow, Inc. 401(k) Plan,<br><br>Plaintiffs,<br><br>v.<br><br>SERVICENOW, INC. and BOARD OF DIRECTORS OF SERVICENOW, INC.,<br><br>Defendants. | Case No. 3:24-cv-01050-TLT (PHK) |

**CLASS ACTION SETTLEMENT AGREEMENT**

This Class Action Settlement Agreement (the "Settlement Agreement") is entered into between and among the Class Representatives (i.e., "Named Plaintiffs"), all Class Members, and the Defendants, as defined herein.

NOW, THEREFORE, without any admission or concession on the part of the Class Representatives of any lack of merit of the Class Action, and without any admission or concession on the part of Defendants as to the merits of the allegations or claims asserted in the Class Action, it is hereby STIPULATED AND AGREED, by and among the Settling Parties to this Settlement Agreement, through their respective attorneys, subject to approval of the Court pursuant to Federal Rule of Civil Procedure 23(e), in consideration of the benefits flowing to the Settling Parties hereto from the Settlement Agreement, that all Released Claims as against the Released Parties shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions:

1. **ARTICLE 1 – RECITALS**

    1.1. On November 8, 2024, the Class Representatives filed a Second Amended Complaint in the United States District Court for the Northern District of California, asserting claims against Defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., in relation to the management of the ServiceNow, Inc., 401(k) Plan (the "Plan").

    1.2. Following discovery, which included the production of essential documents related to the Plan, the Settling Parties engaged in discussions attempting to reach an early resolution of this Action.

    1.3. On May 27, 2025, the Class Representatives and Defendants reached an agreement in principle to resolve this Action. The entire terms of the settlement are memorialized in this Settlement Agreement.

1

1.4.   The Class Representatives and Class Counsel consider it desirable and in the Class Members' best interests that the claims against Defendants be settled on the terms set forth below, and they have concluded that such terms are fair, reasonable, and adequate, and that this settlement will result in significant benefits to the Class Members as defined herein.

1.5.   Defendants deny all liability to the Class Representatives, deny all of the Claims made in the Action, deny all allegations of wrongdoing made in the Complaint in this Action, and deny that the Class Representatives, the Plan, or any of the Plan's Current or Former Participants, Class Members, or Beneficiaries suffered any losses. Defendants further maintain that they acted prudently and loyally at all times when acting in any fiduciary capacity with respect to the Plan. This Settlement Agreement, and the discussions between the Settling Parties preceding it, shall in no event be construed as, or be deemed to be evidence of, an admission or concession on Defendants' part (or the part of any officers, directors, or employees of Defendants with responsibility for the Plan) of any fault or liability whatsoever.

1.6.   To avoid the risks and uncertainty of further litigation, and after consulting with their respective counsel and considering the facts and applicable law, the Settling Parties wish to fully and finally resolve this Action upon the terms and conditions set forth in this Settlement Agreement.

1.7.   Therefore, the Settling Parties, in consideration of the promises, covenants, and agreements herein described, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree to the terms of this Settlement Agreement.

## 2.  ARTICLE 2 – DEFINITIONS

As used in this Settlement Agreement and the Exhibits hereto, unless otherwise defined, the following terms have the meanings specified below:

2.1.   "Action" or "Class Action" means *Rubke et al. v. ServiceNow, Inc., et al.*, Case No. 3:24-cv-01050-TLT (PHK), in the United States District Court for the Northern District of California.

2.2.   "Active Account" means an individual investment account in the Plan with a balance greater than $0 as of the time of calculation of the Final Entitlement Amount defined in the Plan of Allocation.

2.3.   "Administrative Expenses" means expenses incurred in the administration of this Settlement Agreement, including (a) all fees, expenses, and costs associated with providing the Settlement Notice to the Class Members, including but not limited to the fees of the Plan's Recordkeeper to identify the names and mailing addresses of Class Members; (b) related tax expenses (including taxes and tax expenses as described in Section 5.3); (c) all expenses and costs associated with the distribution of funds under the Plan of Allocation, including but not limited to the fees of the Plan's Recordkeeper associated with implementing this Settlement Agreement,

facilitating the distribution of funds under the Plan of Allocation, gathering the data necessary to prepare the Plan of Allocation, and performing the calculations pursuant to the Plan of Allocation; (d) all fees and expenses of the Settlement Administrator and Escrow Agent; (e) all fees and expenses of the Independent Fiduciary; and (f) all fees, expenses, and costs associated with providing CAFA Notices.  Excluded from Administrative Expenses are the Settling Parties' respective legal fees and expenses.  Administrative Expenses shall be paid from the Gross Settlement Amount.

2.4.    "Alternate Payee" means a Person other than a participant or Beneficiary in the Plan who is entitled to a benefit under the Plan as a result of a QDRO.

2.5.    "Attorneys' Fees and Costs" means the amount awarded by the Court as compensation for the services provided by Class Counsel.  The amount of attorneys' fees for Class Counsel shall not exceed 25% of the Gross Settlement Amount (a maximum amount of $231,250.00), which shall be recovered from the Gross Settlement Amount.  Class Counsel also will seek reimbursement for all litigation costs and expenses advanced and carried by Class Counsel for the duration of this Class Action, including the pre-litigation investigation period, not to exceed $120,000.00, which also shall be recovered from the Gross Settlement Amount.

2.6.    "Authorized Administrator" means any entity, other than the Recordkeeper, with appropriate administrative authority under the Plan.

2.7.    "Beneficiary" means any individual, trust, estate, or other recipient entitled to receive death benefits payable under the Plan, on either a primary or contingent basis, other than an Alternate Payee.

2.8.    "Business Days" refers to the days between Monday and Friday of each week, inclusive, and excludes the "Legal Holidays" specified in Federal Rule of Civil Procedure 6(a)(6).

2.9.    "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715.

2.10.    "CAFA Notice" means notice of this Settlement to the appropriate federal and state officials pursuant to CAFA, substantially in the form set forth in Exhibit F hereto.

2.11.    "Case Contribution Award" means the monetary amount awarded by the Court to the Class Representatives in recognition of the Class Representatives' assistance in the prosecution of this Class Action, for which Class Counsel may seek an amount not exceeding $5,000.00 for each Class Representative payable from the Gross Settlement Amount.  Any such Case Contribution Award shall be subject to the approval of the Court.

2.12.    "Claims" means the claims asserted in the Action.

2.13.    "Class Counsel" means Walcheske & Luzi, LLC and Creitz & Serebin LLP.

3

2.14.    "Class Members" means all individuals in the Settlement Class, including the Class Representative.

2.15.    "Class Period" means the period from February 21, 2018, through the date the Court enters the Preliminary Approval Order.

2.16.    "Class Representatives" means Paul S. Rubke and Sherida du Lac de Fugeres. The Class Representatives may also be referred to as the "Named Plaintiffs."

2.17.    "Complaint" means the Second Amended Class Action Complaint filed in this Class Action on November 8, 2024.

2.18.    "Court" means the United States District Court for the Northern District of California.

2.19.    "Current Participant" means a member of the Settlement Class who has an Active Account in the Plan as of the date of entry of the Preliminary Approval Order.

2.20.    "Defendants" means ServiceNow, Inc., and the Board of Directors of ServiceNow, Inc.

2.21.    "Defense Counsel" means Morgan, Lewis & Bockius LLP.

2.22.    "Escrow Agent" means Analytics Consulting, Inc., or another entity agreed to by the Settling Parties.

2.23.    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*.

2.24.    "Fairness Hearing" means the hearing scheduled by the Court to consider (a) any objections by Class Members to the Settlement; (b) Class Counsel's petition for Attorneys' Fees and Costs and Class Representatives' Case Contribution Awards; and (c) whether to finally approve the Settlement under Fed. R. Civ. P. 23(e).  The Parties agree that the Fairness Hearing may be conducted telephonically or via videoconferencing.

2.25.    "Final" means, with respect to any judicial ruling, order, or judgment, that the period for any motions for reconsideration, motions for rehearing, appeals, petitions for certiorari, or the like ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that it has been fully and finally resolved, either by court action or by voluntary action of any party, without any possibility of a reversal, vacatur, or modification of any judicial ruling, order, or judgment, including the exhaustion of all proceedings in any remand or subsequent appeal and remand.  The Settling Parties agree that absent an appeal or other attempted Review Proceeding, the period after which the Final Order becomes Final is thirty-five (35) calendar days after its entry by the Court.

2.26.    "Final Order" means the entry of the order and final judgment approving the Settlement Agreement, implementing the terms of this Settlement Agreement, and dismissing the Class Action with prejudice, to be proposed by the Settling Parties for approval by the Court, in substantially the form attached as Exhibit E hereto.

2.27.    "Former Participant" means a member of the Settlement Class who does not have an Active Account as of the date of entry of the Preliminary Approval Order..

2.28.    "Gross Settlement Amount" means the sum of nine-hundred-twenty-five-thousand dollars ($925,000.00), contributed by or on behalf of Defendants to the Qualified Settlement Fund in accordance with Article 5.  The Gross Settlement Amount shall be the full and sole monetary payment to the Settlement Class, Plaintiffs, and Class Counsel made by or on behalf of Defendants in connection with the Settlement effectuated through this Settlement Agreement.  Neither Defendants nor their insurer will make any additional payment in connection with the Settlement of the Class Action.

2.29.    "Independent Fiduciary" means an independent fiduciary who will serve as a fiduciary to the Plan to approve and authorize the settlement of Released Claims on behalf of the Plan in accordance with Section 3.1 that has no relationship or interest in any of the Settling Parties.  Defendants will select the Independent Fiduciary, subject to the approval of Class Counsel.

2.30.    "Net Settlement Amount" means the Gross Settlement Amount minus (a) all Attorneys' Fees and Costs paid to Class Counsel as authorized by the Court; (b) any Case Contribution Awards as authorized by the Court; (c) all Administrative Expenses; and (d) a contingency reserve not to exceed an amount mutually agreed upon by the Settling Parties that is set aside by the Settlement Administrator for (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated to be incurred after the Settlement Effective Date, and (3) an amount estimated for adjustments of data or calculation errors.

2.31.    "Person" means an individual, partnership, corporation, governmental entity, or any other form of entity or organization.

2.32.    "Plaintiffs" means the Class Representatives and each member of the Settlement Class.

2.33.    "Plan" means the ServiceNow, Inc., 401(k) Plan.

2.34.    "Plan of Allocation" means the method of allocating settlement funds to Class Members.  A proposed form of the Plan of Allocation is attached hereto as Exhibit C.

2.35.    "Preliminary Approval Order" means the order of the Court in substantially the form attached hereto as Exhibit D, whereby the Court preliminarily approves this Settlement.

2.36.  "QDRO" means a Qualified Domestic Relations Order within the meaning of 26 U.S.C. § 414(p).

2.37.  "Qualified Settlement Fund" means the interest-bearing settlement fund account to be established and maintained by the Escrow Agent in accordance with Articles 5 and 6 herein and referred to as the Qualified Settlement Fund (within the meaning of Treas. Reg. § 1.468B-1).

2.38.  "Recordkeeper" means the entity that maintains electronic records of the Plan's participants and their individual accounts.

2.39.  "Released Claims" means any and all actual or potential claims (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement, litigation costs, injunction, declaration, contribution, indemnification, or any other type or nature of legal or equitable relief), actions, demands, rights, obligations, liabilities, expenses, costs, and causes of action, whether arising under federal, state, or local law, whether by statute, contract, or equity, whether brought in an individual or representative capacity, whether accrued or not, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, against any of the Released Parties and Defense Counsel based in whole or in part on acts or failures to act through the end of the Class Period:

2.39.1.  That were asserted in the Class Action, or that arise out of, relate to, or are based on, or have any connection with any of the allegations, acts, omissions, facts, events, matters, transactions, or occurrences that were alleged, or could have been alleged or asserted in the Class Action or could have been alleged or asserted based on the same factual predicate, whether or not pleaded in the Complaint; and/or

2.39.2.  That arise out of, relate in any way to, are based on, or have any connection with (a) the selection, oversight, retention, monitoring, compensation, fees, or performance of the Plan's investment options; (b) the fees, costs, or expenses charged to, paid, or reimbursed by the Plan or the Class Members; (c) disclosures or failures to disclose information regarding the Plan's investment options, fees, or service providers; (d) the compensation received by the Plan's service providers; (e) the services provided to the Plan or the costs of those services; (f) the management, oversight or administration of the Plan or its fiduciaries; (g) alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions under ERISA; and/or (h) any assertions with respect to any fiduciaries of the Plan (or the selection or monitoring of those fiduciaries) in connection with the foregoing; or

2.39.3.  That would be barred by *res judicata* based on entry of the Final Order; or

2.39.4.  That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the

Plan or any Class Member in accordance with the Plan of Allocation or to any action taken or not taken by the Settlement Administrator in the course of administering the Settlement; or

2.39.5.  That relate to the approval by the Independent Fiduciary of the Settlement, unless brought against the Independent Fiduciary alone.

2.39.6.  The Class Representatives, Class Members, and the Plan expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides that a "general release does not extend to claims that the creditor or the releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party," and any similar state, federal or other law, rule or regulation or principle of common law of any domestic governmental entity.

2.39.7.  "Released Claims" excludes claims for individual denial of benefits under the Plan that the Class Representatives or Class Members may have regarding the value of their respective vested account balances under the terms of the Plan.

2.40.  "Released Parties" means (a) each Defendant; (b) Defendants' insurers, co-insurers, and reinsurers; (c) Defendants' direct and indirect past, present, and future affiliates, parents, subsidiaries, divisions, joint ventures, predecessors, successors, Successors-In-Interest, assigns, boards of trustees, boards of directors, officers, trustees, directors, partners, agents, managers, members, employees, and heirs (including any individuals who serve or served in any of the foregoing capacities, such as members of the boards of trustees or boards of directors that are associated with any of Defendants' past, present, and future affiliates), and each Person that controls, is controlled by, or is under common control with them; (d) the Plan and the Plan's current and past fiduciaries (with the exception of the Independent Fiduciary), administrators, plan administrators, recordkeepers, service providers, consultants, attorneys, agents, trustees, advisors, insurers, and parties-in-interest; and (e) Defendants' independent contractors, representatives, attorneys, administrators, insurers, fiduciaries, accountants, auditors, advisors, consultants, personal representatives, spouses, heirs, executors, administrators, associates, employee benefit plan fiduciaries (with the exception of the Independent Fiduciary), employee benefit plan administrators, service providers to the Plan (including their owners and employees), members of their immediate families, consultants, subcontractors, and all persons acting under, by, through, or in concert with any of them.

2.41.  "Representatives" shall mean representatives, attorneys, agents, directors, officers, or employees.

2.42.  "Review Proceeding" shall have the meaning set forth in Section 2.24.

2.43.  "ServiceNow" means ServiceNow, Inc., and all of its past, present, and future parent, subsidiary and affiliated corporations, organizations and entities, and all of their respective past, present and future affiliates, partners, joint ventures, stockholders, predecessors, successors, assigns, insurers, officers, directors, employees, agents, representatives, attorneys, administrators, adjustors and independent contractors of all such released individuals, corporations, organizations and entities, as well as their employee benefit plans, and the trustees, administrators, fiduciaries and insurers of such plans.

2.44.  "Settlement" means the settlement to be consummated under this Settlement Agreement and its exhibits, including any modifications or amendments adopted pursuant to Section 16.12.

2.45.  "Settlement Administrator" means Analytics Consulting, LLC, the entity selected and retained by Class Counsel and subject to approval by Defense Counsel.  The Settlement Administrator shall be responsible for administering the Settlement and Plan of Allocation, including preparing and disseminating the CAFA Notices, sending the Settlement Notices to the Class Members, and establishing the Settlement Website and telephone support line.

2.46.  "Settlement Agreement" means this agreement embodying the terms of the Settlement, including any modifications or amendments hereto.

2.47.  "Settlement Agreement Execution Date" means the date on which the final signature is affixed to this Settlement Agreement.

2.48.  "Settlement Class" means all participants of Plan who invested in any of the American Century Target Date Funds during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.  Excluded from the Settlement Class are Defendants or any participant or Beneficiary who is a fiduciary to the Plan).

2.49.  "Settlement Effective Date" means the date on which the Final Order is Final, provided that by such date the Settlement has not been terminated in accordance with Article 14.

2.50.  "Settlement Notice" means the Notice of Class Action Settlement and Fairness Hearing to be sent to Class Members identified by the Settlement Administrator following the Court's issuance of the Preliminary Approval Order, in substantially the form attached hereto as Exhibit D.  The Settlement Notice shall inform Class Members of a Fairness Hearing to be held with the Court, on a date to be determined by the Court, at which any Class Member satisfying the conditions set forth in the Preliminary Approval Order and the Settlement Notice may be heard regarding (a) the terms of the Settlement Agreement; (b) the petition of Class Counsel for award

of Attorneys' Fees and Costs; (c) payment of and reserve for Administrative Expenses; and (d) Class Representative's Case Contribution Award.

2.51.   "Settlement Website" means the internet website established in accordance with Section 3.3.1.

2.52.   "Settling Parties" or "Parties" means the Defendants and the Class Representatives, on behalf of herself, the Plan, and each of the Class Members.

2.53.   "Successor-In-Interest" shall mean a Person or Party's estate, legal representatives, heirs, successors or assigns, including successors or assigns that result from corporate mergers or other structural changes.

2.54.   "Transferor" means ServiceNow, Inc., as the "transferor" within the meaning of Treas. Reg. § 1.468B-1(d)(1).

## 3.   ARTICLE 3 – REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY, PRELIMINARY SETTLEMENT APPROVAL, AND NOTICE TO THE CLASS

3.1.   <u>Independent Fiduciary</u>.  The Independent Fiduciary, retained by Defendants on behalf of the Plan, shall have the following responsibilities, including whether to approve and authorize the settlement of Released Claims on behalf of the Plan.

3.1.1.   The Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination.

3.1.2.   The Independent Fiduciary shall notify Defendants directly of its determination, in writing (with copies to Class Counsel and Defense Counsel), which notification shall be delivered no later than thirty-five (35) calendar days before the Fairness Hearing.

3.1.3.   All fees and expenses associated with the Independent Fiduciary's retention and determination will constitute Administrative Expenses to be deducted from the Gross Settlement Amount.

3.1.4.   Defendants, Defense Counsel, and Class Counsel shall respond to reasonable requests by the Independent Fiduciary for information so that the Independent Fiduciary can review and evaluate the Settlement Agreement.

3.1.5.   If Defendants conclude that the Independent Fiduciary's determination does not comply with PTE 2003-39 or is otherwise deficient, Defendants shall so inform the Independent Fiduciary within ten (10) calendar days of receipt of the determination.

3.1.6.   Class Counsel may file a copy of the Independent Fiduciary's determination with the Court in support of Final approval of the Settlement.

3.2.   <u>Preliminary Approval</u>.  As soon as reasonably possible and subject to any relevant Court Order, upon the full execution of this Settlement Agreement by the Settling Parties, the Class Representatives, through Class Counsel, shall file with the Court motions seeking preliminary approval of this Settlement Agreement and for entry of the Preliminary Approval Order in substantially the form attached hereto as Exhibit D.  Defendants will not object to these motions, provided that Class Counsel provides drafts to Defendants' Counsel at least three (3) business days in advance of the filing date for their review and approval.  The Preliminary Approval Order to be presented to the Court shall, among other things:

3.2.1.   Certify the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(b)(1);

3.2.2.   Approve the text of the Settlement Notice for mailing to Class Members;

3.2.3.   Determine that under Fed. R. Civ. P. 23(c)(2), the Settlement Notice constitutes the best notice practicable under the circumstances, provides due and sufficient notice of the Fairness Hearing and of the rights of all Class Members, and complies fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable law;

3.2.4.   Cause the Settlement Administrator to send by first-class mail the Settlement Notice to each Class Member identified by the Settlement Administrator based upon the data provided by the Plan's Recordkeeper;

3.2.5.   Provide that, pending final determination of whether the Settlement Agreement should be approved, no Class Member may directly, through Representatives, or in any other capacity, commence any action or proceeding in any court or tribunal asserting any of the Released Claims against Defendants, the Released Parties, and/or the Plan;

3.2.6.   Set the Fairness Hearing for no sooner than one hundred twenty (120) calendar days after the date on which the Preliminary Approval Order is issued, in order to determine whether (a) the Court should approve the Settlement as fair, reasonable, and adequate; (b) the Court should enter the Final Order; and (c) the Court should approve the application for Attorneys' Fees and Costs, Class Representatives' Case Contribution Awards, Administrative Expenses incurred to date, and a reserve for anticipated future Administrative Expenses;

3.2.7.   Provide that any objections to any aspect of the Settlement Agreement shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been filed validly with the Clerk of the Court and copies provided to Class Counsel

and Defense Counsel.  To be filed validly, the objection and any notice of intent to participate or supporting documents must be filed at least twenty-one (21) calendar days prior to the scheduled Fairness Hearing.  Any Person wishing to speak at the Fairness Hearing shall file and serve a notice of intent to participate within the time limitation set forth above;

3.2.8.  Provide that any party may file a response to an objection by a Class Member at least seven (7) calendar days before the Fairness Hearing;

3.2.9.  Provide that the Fairness Hearing may, without further direct notice to the Class Members, other than by notice to Class Counsel, be adjourned or continued by order of the Court; and

3.2.10.  Approve the form of the CAFA Notice attached as Exhibit F and order that upon mailing of the CAFA Notices, Defendants shall have fulfilled their obligations under CAFA.

3.3.  <u>Settlement Administrator</u>.  Defendants and Defense Counsel shall use reasonable efforts to respond timely to written requests, including by e-mail, from the Settlement Administrator for readily accessible data that is reasonably necessary to determine the feasibility of administering the Plan of Allocation or to implement the Plan of Allocation.  The actual and reasonable expenses of any third party, including the Plan's Recordkeeper, that are necessary to perform such work shall be Administrative Expenses to be deducted from the Gross Settlement Amount. The Settlement Administrator shall, within ten (10) calendar days of Class Representative's filing of the Settlement Agreement and proposed Preliminary Approval Order, have prepared and provided CAFA notices to the Attorney General of the United States and the Attorneys General of all states in which Class Members reside, as specified by 28 U.S.C. § 1715.  The Settlement Administrator shall provide the Settling Parties with notice in writing upon completion of the provision of CAFA notices to the above-referenced persons.

3.3.1.  The Settlement Administrator may establish a Settlement Website on which it will post the following documents, or links to the following documents, on or following the date of the Preliminary Order:  the Complaint, the Settlement Agreement and its Exhibits, Class Notice, Motion for Attorneys' Fees and Costs and Case Contribution Awards, any Court orders related to the Settlement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Settling Parties.  No other information or documents will be posted on the Settlement Website unless agreed to in advance by the Settling Parties in writing, and Class Counsel will not include any commentary about the Settlement on the website.  The Settlement Administrator will take down the Settlement Website nine months after the Settlement Effective Date.

3.3.2.  The Settlement Administrator shall be bound any confidentiality, non-

disclosure, or security protocol required by the Settling Parties.

3.3.3. The Settlement Administrator shall use the data provided by Defendants and the Plan's Recordkeeper solely for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.

3.3.4. At the request of the Settling Parties, the Settlement Administrator shall provide a written protocol addressing how the Settlement Administrator will maintain and store information provided to it in order to ensure that reasonable and necessary precautions are taken to safeguard the privacy and security of such information.

3.4. <u>Settlement Notice</u>. By the date and in the manner set by the Court in the Preliminary Approval Order, and unless otherwise set forth below, the Settlement Administrator shall cause to be sent to each Class Member identified by the Settlement Administrator a Settlement Notice in the form and manner to be approved by the Court, which shall be in substantially the form attached hereto as Exhibits A and B or a form subsequently agreed to by the Settling Parties and approved by the Court. The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Settlement Notice is returned and re-send such documents one additional time.

## 4.    ARTICLE 4 – FINAL SETTLEMENT APPROVAL

4.1. No later than fourteen (14) calendar days before the Fairness Hearing, Class Counsel shall submit to the Court a motion for entry of the Final Order (Exhibit E) in the form approved by Class Counsel and Defense Counsel. The Final Order shall request approval by the Court of the terms of this Settlement Agreement and entry of the Final Order in accordance with this Settlement Agreement. The Final Order as proposed by the Settling Parties shall provide for the following, among other things, as is necessary to carry out the Settlement consistent with applicable law and governing Plan documents:

4.1.1. Approval of the Settlement and the release of the Released Claims covered by this Settlement Agreement, adjudging the terms of the Settlement Agreement to be fair, reasonable, and adequate to the Plan and the Class Members, and directing the Settling Parties to take the necessary steps to effectuate the terms of the Settlement Agreement;

4.1.2. A determination under Fed. R. Civ. P. 23(c)(2) that the Settlement Notice constitutes the best notice practicable under the circumstances and that due and sufficient notice of the Fairness Hearing and the rights of all Class Members has been provided and the requirements of due process have been met;

4.1.3. Dismissal with prejudice of the Class Action and all Released Claims asserted therein whether asserted by the Class Representatives on their own behalf or on behalf of the Class Members, or derivatively to secure relief

on behalf of the Plan, without costs to any of the Settling Parties other than as provided for in this Settlement Agreement;

4.1.4.  That the Plan and each Class Member (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be (a) conclusively deemed to have, and by operation of the Final Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged the Released Parties from all Released Claims; and (b) barred and enjoined from suing the Released Parties in any action or proceeding alleging any of the Released Claims;

4.1.5.  That the Class Representatives and each Class Member shall release the Released Parties, Defense Counsel, the Plan, and Class Counsel for any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses;

4.1.6.  That the Class Representatives and each Class Member and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns, shall be (a) conclusively deemed to have, and by operation of the Final Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged Defendants, the Plan, and the Released Parties from all Released Claims, and (b) barred and enjoined from suing Defendants, the Plan, or the Released Parties in any action or proceeding alleging any of the Released Claims;

4.1.7.  That the provisions of Sections 4.1.4 through 4.1.6 shall apply even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Class Action and the Released Claims, whether or not such Class Members receive a monetary benefit from the Settlement, whether or not such Class Members actually received the Settlement Notice, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed;

4.1.8.  That all applicable CAFA requirements have been satisfied;

4.1.9.  That the Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Class Member in accordance with the Plan of Allocation approved by the Court;

4.1.10. That, with respect to any matters that arise concerning the implementation

of distributions to Class Members who are current participants in the Plan (after allocation decisions have been made by the Settlement Administrator in its sole discretion pursuant to the Plan of Allocation), all questions not resolved by the Settlement Agreement shall be resolved by the Plan administrator or other fiduciaries of the Plan, in accordance with applicable law and the governing terms of the Plan; and

4.1.11. That within twenty-one (21) calendar days following the issuance of all settlement payments to Class Members as provided by the Plan of Allocation approved by the Court, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel a list of each Person who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of such payment or contribution.

4.2. The Final Order and judgment entered by the Court approving the Settlement Agreement shall provide that upon its entry, all Settling Parties, the Settlement Class and the Plan shall be bound by the Settlement Agreement and the Final Order.

## 5. ARTICLE 5 – ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND

5.1. No later than ten (10) calendar days after the Preliminary Approval Order is issued, the Settlement Administrator shall establish the Qualified Settlement Fund with the Escrow Agent. The Settling Parties agree that the Qualified Settlement Fund is intended to be, and will be, an interest-bearing "qualified settlement fund" within the meaning of Section 468B of the Code and Treas. Reg. § 1.468B-1. In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Section 5.1. If applicable, the Settlement Administrator (as the "administrator" pursuant to Section 5.2) and the Transferor shall fully cooperate in filing the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)) to treat the Qualified Settlement Fund as coming into existence as a "qualified settlement fund" within the meaning of Section 468B of the Code and Treas. Reg. § 1.468B-1 as of the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to be timely made.

5.2. The "administrator" within the meaning of Treas. Reg. § 1.468B-2(k)(3) shall be the Settlement Administrator. The Settlement Administrator shall timely and properly cause to be filed on behalf of the Qualified Settlement Fund all informational and other tax returns required to be filed in accordance with Treas. Reg. §§ 1.468B-2(k) and -2(l) with respect to the Gross Settlement Amount (including without limitation applying for a taxpayer identification number for the Qualified Settlement Fund pursuant to Internal Revenue Service Form SS-4 and in accordance with Treas. Reg. § 1.468B-2(k)(4)). Such returns as well as any election

described in Section 5.1 shall be consistent with this Article 5 and, in all events, shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Qualified Settlement Fund shall be deducted and paid from the Gross Settlement Amount as provided in Section 5.3.

5.3.     Taxes and tax expenses are Administrative Expenses to be deducted and paid from the Gross Settlement Amount, including but not limited to: (a) all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Qualified Settlement Fund, including any taxes or tax detriments that may be imposed upon Defendants or Defense Counsel with respect to any income earned by the Qualified Settlement Fund for any period during which the Qualified Settlement Fund does not qualify as a "qualified settlement fund" within the meaning of Section 468B of the Code and Treas. Reg. § 1.468B-1; and (b) all tax expenses and costs incurred in connection with the operation and implementation of this Article 5 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Article 5).  Such taxes and tax expenses shall be Administrative Expenses and shall be paid timely by the Settlement Administrator out of the Gross Settlement Amount without prior order from the Court.  The Settlement Administrator shall ensure compliance with withholding and reporting requirements in accordance with Treas. Reg. § 1.468B-2(l) and shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Class Member any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses; neither the Released Parties, Defense Counsel, nor Class Counsel are responsible nor shall they have any liability therefor.  The Settling Parties agree to cooperate with the Settlement Administrator, Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Article 5.

5.4.     Within twenty-one (21) calendar days after the later of (a) the date the Preliminary Approval Order is entered, or (b) the date the Qualified Settlement Fund is established and the Settlement Administrator (or Class Counsel) has furnished to Defendants and/or Defense Counsel in writing the Qualified Settlement Fund name, IRS W-9 Form, and all necessary wiring instructions, then the Transferor shall deposit one-hundred-thousand dollars ($100,000.00) into the Qualified Settlement Fund as the first installment of the Gross Settlement Amount.

5.5.     Within thirty (30) calendar days after the Settlement Effective Date, the Transferor shall deposit the remainder of the Gross Settlement Amount, which is eight-hundred-twenty-five-thousand dollars ($825,000.00), into the Qualified Settlement Fund.

5.6.     The Settlement Administrator shall, at the written direction of Class Counsel, cause the Escrow Agent to invest the Qualified Settlement Fund in short-term United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the United States Government or an agency thereof, or fully insured

by the United States Government or an agency thereof, and shall cause the Escrow Agent to reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

5.7.    The Settlement Administrator shall not disburse the Gross Settlement Amount or any portion thereof from the Qualified Settlement Fund except as provided in this Settlement Agreement, in an order of the Court, or in a subsequent written stipulation between Class Counsel and Defense Counsel.  Subject to the orders of the Court, the Settlement Administrator is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

5.8.    The Settlement Administrator shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund, and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it. The Released Parties, Defense Counsel, and Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

5.9.    No later than February 15 of the year following the calendar year in which Transferor makes any transfer of the Gross Settlement Amount, or any other amount, to the Qualified Settlement Fund on behalf of the Transferor pursuant to the terms of this Article 5, the Transferor shall timely furnish a statement to the Settlement Administrator that complies with Treas. Reg. § 1.468B-3(e)(2), which may be a combined statement under Treas. Reg. § 1.468B-3(e)(2)(ii), and shall attach a copy of the statement to its federal income tax return filed for the taxable year in which Defendants make a transfer on its behalf to the Qualified Settlement Fund.

**6.    ARTICLE 6 – PAYMENTS FROM THE QUALIFIED SETTLEMENT FUND**

6.1.    <u>Disbursements from Qualified Settlement Fund prior to Settlement Effective Date</u>. Class Counsel, subject to the approval of Defendants, which approval shall not be unreasonably withheld, shall direct the Escrow Agent to disburse money from the Qualified Settlement Fund as follows:

6.1.1.    After entry of the Preliminary Approval Order, the Escrow Agent shall be directed in writing to disburse from the Qualified Settlement Fund an amount sufficient for the payment of costs of the Settlement Notice.  Class Counsel will select a Settlement Administrator to assist with Class Notice and administration of the Settlement, subject to the agreement of Defendants, which agreement shall not unreasonably be withheld.  The Settlement Administrator shall enter into a confidentiality agreement and information security agreement to adequately protect information provided to the Settlement Administrator relating to the Settlement.  Any costs, expenses, or fees incurred in connection with the administration of this Settlement shall be paid out of the Qualified Settlement Fund.  Neither

16

Defendants nor Defense Counsel are responsible for the Settlement Administrator's work, nor may they be held liable for any act or omission by the Settlement Administrator.

6.1.2.   For taxes and expenses of the Qualified Settlement Fund as provided in Section 5.3.

6.1.3.   For fees and expenses of the Independent Fiduciary. The Escrow Agent shall be directed to disburse money from the Qualified Settlement Fund to pay the reasonable fees and expenses of the Independent Fiduciary (which shall include any attorneys' fees of the Independent Fiduciary) retained pursuant to Article 3. To the extent Defendants and/or their insurer pay any costs, fees or expenses to the Independent Fiduciary before proceeds from the Qualified Settlement Fund are available for distribution, the Escrow Agent shall be directed to reimburse Defendants and/or their insurer for such amounts.

6.1.4.   For costs and expenses of the Settlement Administrator in implementing the Plan of Allocation and otherwise administering the Settlement.

6.1.5.   For costs and expenses incurred by the Recordkeeper (or Authorized Administrator) in implementing this Settlement. To the extent Defendants are responsible for paying these costs, they will have the right to recover any sums paid from the Qualified Settlement Fund.

6.2.   Following the payment of the second installment of the Gross Settlement Amount as set forth in Section 5.5, Class Counsel shall direct the Escrow Agent to disburse money from the Qualified Settlement Fund as follows:

6.2.1.   For Attorneys' Fees and Costs, as approved by the Court notwithstanding the existence of any appeal therefrom, and no later than fifteen (15) business days following the Settlement Effective Date. The Court's failure to approve in part any application for Attorneys' Fees and Costs sought by Class Counsel shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement. In the event that the Settlement Agreement does not become effective, or the judgment or the order making the fee and cost award is reversed or modified, or the Settlement Agreement is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and not subject to review, and in the event that the fee and cost award has been paid to any extent, then Class Counsel with respect to the entire fee and cost award shall within thirty (30) business days from receiving notice from the Defendants' counsel or from a court of appropriate jurisdiction, refund to the Qualified Settlement Fund such fees and expenses previously paid to it from the Qualified Settlement Fund plus interest thereon at the same rate as earned on the Qualified Settlement Fund in an amount consistent with such reversal or modification. Class Counsel,

17

as a condition of receiving such fees and costs, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this Section.

6.2.2. For the Class Representatives' Case Contribution Awards, as approved by the Court, and no later than fifteen (15) business days following the Settlement Effective Date.

6.2.3. For costs and expenses of the Settlement Administrator in implementing the Plan of Allocation and otherwise administering the Settlement that were not previously paid.

6.2.4. For costs and expenses incurred by the Recordkeeper (or Authorized Administrator) in implementing this Settlement that were not previously paid.  To the extent that Defendants or their insurer are responsible for paying these costs, they will have the right to recover any sums paid from the Qualified Settlement Fund.

6.2.5. The Net Settlement Amount will be distributed in accordance with the Plan of Allocation.  Pending final distribution of the Net Settlement Amount in accordance with the Plan of Allocation, the Escrow Agent will maintain the Qualified Settlement Fund.

## 7.    ARTICLE 7 – PLAN OF ALLOCATION

7.1.    After the Settlement Effective Date, the Settlement Administrator shall cause the Net Settlement Amount to be allocated and distributed to the Former Participants as set forth in Section 7.9 below, and to the Plan for distribution to the accounts of Current Participants as set forth in Section 7.8 below.

7.2.    To be eligible for a distribution from the Net Settlement Amount, a person must be a Current Participant or a Former Participant, or a Beneficiary or Alternate Payee of such a person. Current Participants shall receive their settlement payments as contributions to their account in the Plan, as provided for in Section 7.8 below, unless, as of the date of their settlement payments, they no longer have an Active Account in the Plan, in which case they shall be treated as Former Participants. Former Participants shall receive their settlement payments in the form of checks as provided in Section 7.9 below.

7.3.    Beneficiaries will receive settlement payments as described in this Article 7 in amounts corresponding to their entitlement as beneficiaries of the Current Participant or of the Former Participant with respect to which the payment is made. This includes settlement payments to Beneficiaries determined by the participant's Plan accounts during the Class Period and/or by the Beneficiary's own Plan accounts during the Class Period if an account was created in the Plan for the Participant's Beneficiary. Alternate Payees will receive settlement payments if and to the extent they are entitled to receive a portion of a Current Participant's or

Former Participant's allocation under this Article 7 pursuant to the terms of the applicable Qualified Domestic Relations Order. Beneficiaries and Alternate Payees with Active Accounts as of the date of the Motion for Preliminary Approval will receive payments by the method described in this Article 7 for Current Participants, subject to Section 7.8.6 below. Beneficiaries and Alternate Payees who do not have Active Accounts as of the date of the Motion for Preliminary Approval will receive payments by the method described in this Article 7 for Former Participants. The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to Beneficiaries and Alternate Payees in accordance with the Plan of Allocation set forth in this Article 7 and as ordered by the Court.

7.4.    Class Counsel shall propose to the Court a Plan of Allocation, in substantial conformity to the one attached hereto as Exhibit C, which shall provide for the calculation, allocation, and distribution of the Net Settlement Amount. The Settlement Administrator shall be exclusively responsible and liable for calculating the amounts payable to the Class Members pursuant to the Plan of Allocation. Upon the Settlement Effective Date, and after the amounts payable pursuant to Sections 6.1 and 6.2.1 through 6.2.4 have been disbursed, or, in the case of future estimated expenses set aside and withheld, Class Counsel shall direct the Escrow Agent to disburse the Net Settlement Amount as provided by this Settlement Agreement and the Plan of Allocation. The Recordkeeper shall allocate to the Plan accounts of Class Members who are not Former Participants any Net Settlement Amount as calculated by the Settlement Administrator according to the Plan of Allocation, documentation of which Class Counsel shall direct the Settlement Administrator to provide to the Authorized Administrator pursuant to the Plan of Allocation no later than the distribution of the Net Settlement Amount. The Settlement Administrator shall promptly notify Class Counsel as to the date(s) and amounts(s) of said allocation(s) made to Class Members who are not Former Participants. The Settlement Administrator shall be responsible for distributing the Net Settlement Amount allocated to the Former Participants as provided by the Plan of Allocation, as well as complying with all tax laws, rules, and regulations and withholding obligations with respect to Former Participants. Defendants shall have no liability related to the structure or taxability of such payments. Nothing herein shall constitute approval or disapproval of the Plan of Allocation by Defendants or the Released Parties, and Defendants and the Released Parties shall have no responsibility or liability for the Plan of Allocation and shall take no position for or against the Plan of Allocation.

7.5.    The Net Settlement Amount distributed to the Plan's trust pursuant to the Plan of Allocation shall constitute "restorative payments" within the meaning of Revenue Ruling 2002-45 for all purposes.

7.6.    Prior to the disbursement of the Net Settlement Amount to the Plan, the Settlement Administrator shall provide to Defense Counsel and Class Counsel a final list of Class Members, in electronic format, to whom the Net Settlement Amount will be distributed in accordance with the Plan of Allocation. Such list shall be final, and only persons on the list or their Beneficiaries or Alternate Payees shall be eligible

to receive any recovery from this Settlement.

7.7.   After the distribution of the Net Settlement Amount to the Plan's trust and allocation of the Net Settlement Amount pursuant to the Plan of Allocation, amounts allocable to Class Members who cannot be located or otherwise cannot receive their Settlement payment shall revert to the Qualified Settlement Fund. Any Net Settlement Amount remaining in the Qualified Settlement Fund after distributions, including costs, taxes and interest-earned on the Qualified Settlement Fund, shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan that would otherwise be charged to the Plan's participants.

7.8.   <u>Payments to Current Participants</u>

7.8.1.   Current Participants will automatically receive a settlement payment to their accounts in the Plan.

7.8.2.   Within five (5) Business Days after the Settlement Administrator has completed all payment calculations for all Current Participants, the Settlement Administrator will provide Defendants or their designee (i.e.., the Plan's Recordkeeper), in a format and via a delivery method mutually agreed upon by the Settlement Administrator and Defendants, with an Excel spreadsheet (or other format acceptable to the Plan's Recordkeeper) containing the name, the amount of the settlement payment for each of the Current Participants, and any other information requested by Defendants or the Plan's Recordkeeper as necessary to effectuate this provision.

7.8.3.   Thereafter, upon giving ten (10) Business Days' written notice to Defendants (or their designee), the Settlement Administrator shall effect a transfer from the Qualified Settlement Fund to the Plan of the aggregate amount of all settlement payments payable to Current Participants, as reflected in a spreadsheet provided by the Settlement Administrator. The Plan's Recordkeeper shall thereafter credit the individual Active Account of each Current Participant in an amount equal to that stated on the spreadsheet provided by the Settlement Administrator in relation to such Current Participant.

7.8.4.   The settlement payment for each Current Participant will be invested in accordance with and proportionate to such Current Participant's investment elections then on file for new contributions. If the Current Participant does not have an investment election on file, then such Current Participant shall be deemed to have directed such payment to be invested in the Plan's "Qualified Default Investment Alternative," as defined in 29 C.F.R. § 2550.404c-5.

7.8.5.   The Plan's Recordkeeper shall process all Current Participant transactions as soon as practicable, and not later than within forty-five (45) calendar days of receiving direction, including the completed settlement

calculations for Current Participants and the transfer from the Qualified Settlement Fund to the Plan of the aggregate amount of all settlement payments payable to Current Participants, from the Settlement Administrator for any Current Participant.

7.8.6. The Plan may be amended, to the extent necessary, to reflect the settlement allocation to Current Participants' Active Account in accordance with this Article 7.

7.8.7. If, as of the date when distributions pursuant to this Settlement Agreement are made, a Current Participant no longer has an Active Account, they will receive their payment from the Settlement Administrator in the form of a check.

7.9. <u>Payments to Former Participants</u>. Upon completing the calculation of each Class Member's pro-rata share of the Net Settlement Amount and no later than sixty (60) calendar days following the Settlement Effective Date, the Settlement Administrator shall issue a check from the Qualified Settlement Fund to each Former Participant in the amount equaling his or her pro-rata share of the Net Settlement Amount.

7.9.1. The Settlement Administrator will issue a check from the Qualified Settlement Fund to the Former Participant and mail the check to the address of such Former Participant or, in the case of ambiguity or uncertainty, to the address of such person as determined by the Settlement Administrator using commercially reasonable means.

7.9.2. For each check issued, the Settlement Administrator shall (1) calculate and withhold any applicable taxes associated with the payments allocable to the Former Participant; (2) report such payments and remit such tax withholdings to the Internal Revenue Service and applicable state and local revenue agents; and (3) issue appropriate tax forms to the Former Participants.

7.9.3. Neither the Defendant, Defendant's Counsel, Class Counsel, the Class Representatives, nor the Released Parties shall have any responsibility for or liability whatsoever with respect to any tax advice given to the Former Participants or the Current Participants.

7.9.4. Class Members who receive a check from the Settlement Administrator must deposit or cash their checks within one-hundred-and-eighty (180) calendar days of issuance. If they do not do so, the checks will be void, and the Settlement Administrator shall be instructed to return any such funds to the Settlement Fund. This limitation shall be printed on the face of each check. Notwithstanding these requirements, the Settlement Administrator shall have the authority to reissue checks to Class Members where it determines there is good cause to do so, provided that doing so will not

compromise the Settlement Administrator's ability to implement the Plan of Allocation. The voidance of checks shall have no effect on the Class Members' release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

## 8.    ARTICLE 8 – ATTORNEYS' FEES AND COSTS

8.1.    <u>Application for Attorneys' Fees and Costs and Class Representative's Case Contribution Award</u>. Class Counsel intends to seek to recover their attorneys' fees not to exceed $231,250.00, and litigation costs and expenses advanced and carried by Class Counsel for the duration of the Class Action, not to exceed $120,000.00, which shall be recovered from the Gross Settlement Amount. Class Counsel also intends to seek the Class Representatives' Case Contribution Awards, in an amount not to exceed $5,000.00 for each Class Representative, which shall be recovered from the Gross Settlement Amount.

8.2.    Class Counsel will file a motion for an award of Attorneys' Fees and Costs at least twenty-eight (28) calendar days before the Fairness Hearing, which may be supplemented thereafter. Class Counsel will provide a draft to Defense Counsel three (3) business days in advance of the filing deadline.

## 9.    ARTICLE 9 – RELEASE AND COVENANT NOT TO SUE

9.1.    As of the issuance of the Final Order, the Plan (subject to Independent Fiduciary approval as required by Section 3.1) and all Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns), on their own behalf and on behalf of the Plan, shall be deemed to have fully, finally, and forever settled, released, relinquished, waived, and discharged all Released Parties from the Released Claims, whether or not such Class Members have received or will receive a monetary benefit from the Settlement, whether or not such Class Members have actually received the Settlement Notice or read the Settlement Notice, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed.

9.2.    As of the issuance of the Final Order, the Class Representatives, the Class Members, and the Plan (subject to Independent Fiduciary approval as required by Section 3.1), acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to an IRS determination letter proceeding, a Department of Labor proceeding, an arbitration, or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim adverse to the Released Parties on the basis of, connected with, or arising out of any of the Released Claims. Nothing herein shall preclude any action to enforce the terms of this Settlement Agreement in accordance with the procedures set forth

in this Settlement Agreement. Nothing herein shall preclude any Class Member or the Plan from cooperating with or participating in any investigation, inquiry or proceeding conducted by any federal, state, or local governmental entity or subdivision.

9.3.    Class Counsel, the Class Representatives, the Class Members, or the Plan may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, if known by them, might have affected the decision to settle with the Defendants or the Released Parties, or the decision to release, relinquish, waive, and discharge the Released Claims, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, each Class Member and the Plan shall expressly, upon the entry of the Final Order, be deemed to have, and, by operation of the Final Order, shall have fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims. The Class Representatives, all Class Members, and the Plan acknowledge and shall be deemed by operation of the Final Order to have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part.

9.4.    Upon the entry of the Final Order, the Class Representatives, all Class Members, and the Plan shall be conclusively deemed to, and by operation of the Final Order shall, settle, release, relinquish, waive, and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims pertaining specifically to Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Also, the Class Representatives and Class Members shall, upon entry of the Final Order, waive any and all provisions, rights and benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance to Section 1542 of the California Civil Code.

9.5.    <u>Dismissal With Prejudice</u>. The Class Action and all Released Claims shall be dismissed with prejudice.

9.6.    <u>No Impact on Prior Releases</u>. The Released Claims in the Class Action shall not invalidate or impair any prior release of claims by any Class Members against any of the Released Parties.

**10.    ARTICLE 10 – Covenants**

The Settling Parties covenant and agree as follows:

23

10.1. <u>Cooperation</u>. Defendants shall cooperate with Class Counsel by using reasonable efforts to provide, to the extent reasonably accessible, information to identify Class Members and to implement the Plan of Allocation.

10.1.1. Defendants or Defense Counsel shall work with the Recordkeeper to provide to the Settlement Administrator and/or Class Counsel within ten (10) business days of entry of the Preliminary Approval Order: (1) the names and last known addresses of members of the Settlement Class, as compiled from reasonably accessible electronic records maintained by the Recordkeeper and (2) the social security numbers of Settlement Class members in order for the Settlement Administrator to perform a National Change of Address search to update out-of-date addresses.

10.1.2. Defendants or Defense Counsel shall work with the Recordkeeper to provide to the Settlement Administrator and/or Class Counsel at least thirty (30) business days before the Fairness Hearing Plan participant data necessary to perform calculations pursuant to the Plan of Allocation.

10.1.3. With respect to the Plan of Allocation data provided in Sections 10.1.1 and 10.1.2, the Plan's Recordkeeper shall take commercially reasonable steps to ensure the data provided is complete as it exists in the Recordkeeper's systems. Neither Plaintiffs, Class Counsel, Defendants, or Defense Counsel will be responsible or liable in any way for ensuring the completeness or accuracy of the information provided by the Recordkeeper pursuant to this Section.

10.1.4. Class Counsel and their agents will use any information provided by Defendants, Defense Counsel, and/or the Recordkeeper pursuant to Sections 10.1 and 10.2 solely for the purpose of providing notice and administering this Settlement and for no other purpose, and will take all reasonable and necessary steps as required by law to maintain the security and confidentiality of this information.

10.2. The Settling Parties shall reasonably cooperate with each other to effectuate this Settlement, including with respect to the Plan of Allocation, and shall not do anything or take any position inconsistent with obtaining a prompt Final Order approving the Settlement unless expressly permitted by this Settlement Agreement. The Settling Parties shall suspend any and all efforts to prosecute and to defend the Class Action pending entry of the Final Order or, if earlier, termination of the Settlement Agreement.

## 11. ARTICLE 11 – REPRESENTATIONS AND WARRANTIES

11.1. <u>Settling Parties' Representations and Warranties</u>. The Settling Parties, and each of them, represent and warrant as follows, and each Settling Party acknowledges that each other Settling Party is relying on these representations and warranties in entering into this Settlement Agreement:

11.1.1. That they have diligently prepared the case pursuant to the Court's orders; that they are voluntarily entering into this Settlement Agreement as a result of arm's length negotiations under the auspices of the Mediator; that in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements, or omissions pertaining to any of the foregoing matters by any Settling Party or by any Person representing any Settling Party to this Settlement Agreement. Each Settling Party assumes the risk of mistake as to facts or law. Each Settling Party further recognizes that additional evidence may have come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement.

11.1.2. That they have carefully read the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each Person executing this Settlement Agreement on behalf of each of the Settling Parties. The Settling Parties, and each of them, further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the Settlement, this Settlement Agreement, and all of the matters pertaining thereto, as he, she, or it deems necessary.

11.2. Signatories' Representations and Warranties. Each Person executing this Settlement Agreement on behalf of any other Person does hereby personally represent and warrant to the other Settling Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

## 12. ARTICLE 12 – NO ADMISSION OF LIABILITY

12.1. The Class Representatives, Class Counsel, and the Class Members agree that this Settlement Agreement, whether or not consummated, and any related negotiations or proceedings, are not, and shall not be construed as, deemed to be, or offered or received as evidence of an admission by or on the part of Defendants or Released Parties of any wrongdoing, fault, or liability whatsoever by any of Defendants or Released Parties, or give rise to any inference of any wrongdoing, fault, or liability or admission of any wrongdoing, fault, or liability in the Action or any other proceeding, and Defendants and Released Parties admit no wrongdoing or liability with respect to any of the allegations or claims in the Action. The Class Representatives, Class Counsel, and the Class Members agree that this Settlement Agreement, whether or not consummated, and any related negotiations or proceedings, shall not constitute admissions of any liability of any kind, whether legal or factual.

25

12.2.  The Class Representatives, while believing that the claims brought in the Class Action have merit, have concluded that the terms of this Settlement Agreement are fair, reasonable, and adequate to the Plan, themselves and members of the Settlement Class given, among other things, the inherent risks, difficulties, and delays in complex ERISA litigation such as the Class Action.  Neither the fact nor the terms of this Settlement Agreement shall be used or offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Settlement Agreement or arising out of or relating to the Final Order.

## 13.  ARTICLE 13 – CONDITIONS OF FINALITY OF SETTLEMENT

This Settlement shall be contingent upon each of the following conditions in this Article 13 being satisfied.  The Settling Parties agree that if any of these conditions is not satisfied, then this Settlement Agreement is terminated (subject to Defendants' right to waive the condition set forth in Section 13.4) and the Class Action will, for all purposes with respect to the Settling Parties, revert to its status as of the Settlement Agreement Execution Date.  In such event, Defendants will not be deemed to have consented to the class certification order referenced in Section 13.1, the agreements and stipulations in this Settlement Agreement concerning class definition or class certification shall not be used as evidence or argument to support a motion for class certification, and Defendants will retain all rights with respect to challenging class certification.

13.1.  <u>Court Approval and Class Certification for Settlement Purposes</u>.  The Court shall have certified the Settlement Class for settlement purposes only (and Defendants will not object to this certification for settlement purposes only), the Settlement shall have been approved by the Court, the Court shall have entered the Final Order substantially in the form attached as Exhibit E hereto, and the Settlement Effective Date shall have occurred.

13.2.  <u>Finality of Settlement</u>.  The Settlement shall have become Final.

13.3.  <u>Resolution of CAFA Objections (If Any)</u>.  In the event that any of the government officials who received a CAFA Notice object to and request modifications to the Settlement, the Class Representative and Class Counsel agree to cooperate and work with Defendants and Defense Counsel to overcome such objection(s) and requested modifications.  In the event such objection(s) or requested modifications are not overcome, Defendants shall have the right to terminate the Settlement Agreement pursuant to Article 14.

13.4.  <u>Settlement Authorized by Independent Fiduciary</u>.  If the Independent Fiduciary disapproves or otherwise does not authorize the Settlement or refuses to execute the release on behalf of the Plan, then the Settling Parties may mutually agree to modify the terms of this Settlement Agreement as necessary to facilitate an approval by the Independent Fiduciary and/or the Independent Fiduciary's release on behalf of the Plan.  Otherwise, Defendants shall have the option to waive this condition, in which case such option is to be exercised in writing within ten (10) business days after the Settling Parties' receipt of the Independent Fiduciary's

written determination, unless otherwise agreed by the Settling Parties.

14. **ARTICLE 14 – TERMINATION, CONDITIONS OF SETTLEMENT, AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION**

14.1.    The Settlement Agreement shall automatically terminate, and thereby become null and void with no further force or effect if:

14.1.1.    Under Section 3.1, (a) either the Independent Fiduciary does not approve the Settlement Agreement or disapproves the Settlement Agreement for any reason whatsoever, or Defendants reasonably conclude that the Independent Fiduciary's approval does not include the determinations required by the PTE 2003-39; and (b) the Settling Parties do not mutually agree to modify the terms of this Settlement Agreement to facilitate an approval by the Independent Fiduciary or the Independent Fiduciary's determinations required by PTE 2003-39; and (c) Defendants do not exercise their option to waive this condition as provided in Section 13.4;

14.1.2.    The Preliminary Approval Order or the Final Order is not entered by the Court in substantially the form submitted by the Settling Parties or in a form which is otherwise agreed to by the Settling Parties;

14.1.3.    The Settlement Class is not certified as defined herein or in a form which is otherwise agreed to by the Settling Parties;

14.1.4.    This Settlement Agreement is disapproved by the Court or fails to become effective for any reason whatsoever and the Settling Parties do not mutually agree to modify the Settlement Agreement in order to obtain the Court's approval or otherwise effectuate the Settlement; or

14.1.5.    The Preliminary Order or Final Order is finally reversed on appeal, or is modified on appeal, and the Settling Parties do not mutually agree to any such modifications.

14.2.    If the Settlement Agreement is terminated, deemed null and void, or has no further force or effect, the Class Action and the Released Claims asserted by the Class Representatives shall for all purposes with respect to the Settling Parties revert to their status as though the Settling Parties never executed the Settlement Agreement. All funds deposited in the Qualified Settlement Fund, and any interest earned thereon, shall be returned to Defendants within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void.

14.3.    It shall not be deemed a failure to approve the Settlement Agreement if the Court denies, in whole or in part, Class Counsel's request for Attorneys' Fees and Costs and/or Class Representative's Case Contribution Award and/or modifies any of the proposed orders relating to Attorneys' Fees and Costs and/or Class Representative's Case Contribution Award.

15.    **ARTICLE 15 – CONFIDENTIALITY OF THE SETTLEMENT NEGOTIATIONS AND PERMITTED SETTLEMENT-RELATED COMMUNICATIONS**

15.1.    Except as set forth explicitly below, the Settling Parties, Class Counsel, and Defense Counsel agree to keep confidential all positions, assertions, and offers made during settlement negotiations relating to the Class Action and the Settlement Agreement, except that they may discuss the negotiations with the Class Members, the Independent Fiduciary, and the Settling Parties' auditors, tax, legal, and regulatory advisors, provided in each case that they (a) secure written agreements with such persons or entities that such information shall not be further disclosed to the extent such persons are not already bound by confidentiality obligations at least as restrictive as those in this Article 15 and which would otherwise cover the Settlement Agreement; and (b) comply with this Article 15 in all other respects.

15.2.    Defendants, Class Representatives, Class Counsel, and Defense Counsel agree that they will not at any time make (or encourage or induce others to make) any public statement regarding the Class Action or the Settlement that disparages any Released Party; provided, however, that this prohibition does not preclude Class Counsel from restating the allegations made in the Complaint for purposes of the motion for preliminary approval of the Settlement, motion for final approval of the Settlement, or the request for Attorneys' Fees and Costs, Administrative Expenses, and Case Contribution Awards.  This prohibition does not prohibit any Settling Party from making any statements pursuant to a valid legal process, a request by a regulatory agency, or as required by law.

15.3.    Defendants, Class Representatives, Class Counsel, and Defense Counsel agree that they will not issue any press release regarding the Settlement, advertise the Settlement, affirmatively contact any media sources regarding the Settlement or, if contacted by any media sources regarding the settlement, provide any comment other than that the matter has been resolved to the satisfaction of the parties.

15.4.    Defendants, Class Representatives, Class Counsel, and Defense Counsel agree that they will not publicly disclose the terms of the Settlement until after the motion for preliminary approval of the Settlement has been filed with the Court, other than as necessary to administer the Settlement, or unless such disclosure is pursuant to a valid legal process, a request by a regulatory agency, or as otherwise required by law, government regulations including corporate reporting obligations, or order of the Court.

16.    **ARTICLE 16 – GENERAL PROVISIONS**

16.1.    The Settling Parties agree to cooperate fully with each other in seeking Court approvals of the Preliminary Approval Order and the Final Order, and to do all things as may reasonably be required to effectuate preliminary and final approval and the implementation of this Settlement Agreement according to its terms.  The Settling Parties agree to provide each other with copies of any filings necessary to effectuate this Settlement reasonably in advance of filing.

16.2.   This Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder are not, and shall not be construed as, deemed to be, or offered or received as evidence of an admission by or on the part of any Released Party of any wrongdoing, fault, or liability whatsoever by any Released Party, or give rise to any inference of any wrongdoing, fault, or liability or admission of any wrongdoing, fault, or liability in the Class Action or any other proceeding.

16.3.   Defendants deny all allegations of wrongdoing.  Defendants believe that the Plan has been managed, operated, and administered at all relevant times reasonably and prudently, in the best interest of the Plan's participants, and in accordance with ERISA, including the fiduciary-duty and prohibited-transaction provisions of ERISA.

16.4.   Neither the Settling Parties, Class Counsel, the Released Parties, nor Defense Counsel shall have any responsibility for or liability whatsoever with respect to (a) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Gross Settlement Amount or otherwise; (b) the determination of the Independent Fiduciary; (c) the management, investment, or distribution of the Qualified Settlement Fund; (d) the Plan of Allocation as approved by the Court; (e) the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund; (f) any losses suffered by, or fluctuations in the value of, the Qualified Settlement Fund; or (g) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Qualified Settlement Fund or tax reporting, or the filing of any returns.  Further, neither Defendants nor Defense Counsel shall have any responsibility for, or liability whatsoever with respect to, any act, omission, or determination of Class Counsel in connection with the administration of the Gross Settlement Amount or otherwise.

16.5.   The Released Parties shall not have any responsibility for or liability whatsoever with respect to the Plan of Allocation, including, but not limited to, the determination of the Plan of Allocation or the reasonableness of the Plan of Allocation.

16.6.   The Settling Parties acknowledge that any payments to Class Members or their attorneys may be subject to applicable tax laws.  Defendants, the Released Parties, Defense Counsel, Class Counsel, and the Class Representatives will provide no tax advice to the Class Members and make no representation regarding the tax consequences of any of the settlement payments described in the Settlement Agreement.  To the extent that any portion of any settlement payment is subject to income or other tax, the recipient of the payment shall be responsible for payment of such tax.  Deductions will be made, and reporting will be performed by the Settlement Administrator, as required by law in respect of all payments made under the Settlement Agreement.  Payments from the Qualified Settlement Fund shall not be treated as wages by the Settling Parties.

16.7.   Each Class Member who receives a payment under this Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state, or local taxes resulting from or attributable to the payment received by such person. Each such Class Member shall hold the Released Parties, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from any tax liability, including penalties and interest, related in any way to payments under the Settlement Agreement, and shall hold the Released Parties, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from the costs (including, for example, attorneys' fees and disbursements) of any proceedings (including, for example, investigation and suit), related to such tax liability.

16.8.   Only Class Counsel shall have standing to seek enforcement of this Settlement Agreement on behalf of Plaintiffs and Class Members. Any individual concerned about Defendants' compliance with this Settlement Agreement may so notify Class Counsel and direct any requests for enforcement to them. Class Counsel shall have the full and sole discretion to take whatever action they deem appropriate, or to refrain from taking any action, in response to such request. Any action by Class Counsel to monitor or enforce the Settlement Agreement shall be done without additional fee or reimbursement of expenses beyond the Attorneys' Fees and Costs determined by the Court.

16.9.   This Settlement Agreement shall be interpreted, construed, and enforced in accordance with applicable federal law and, to the extent that federal law does not govern, California state law.

16.10.  The Settling Parties agree that the Court has personal jurisdiction over the Settlement Class and Defendants and shall maintain personal and subject-matter jurisdiction for purposes of resolving any disputes between the Settling Parties concerning compliance with this Settlement Agreement. Any motion or action to enforce this Settlement Agreement—including by way of injunction—may be filed in the U.S. District Court for the Northern District of California, or asserted by way of an affirmative defense or counterclaim in response to any action asserting a violation of the Settlement Agreement.

16.11.  Each party to this Settlement Agreement hereby acknowledges that he, she, or it has consulted with and obtained the advice of counsel prior to executing this Settlement Agreement and that this Settlement Agreement has been explained to that party by his, her, or its counsel.

16.12.  Before entry of the Preliminary Approval Order and approval of the Independent Fiduciary, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Settling Parties. Following approval by the Independent Fiduciary, this Settlement Agreement may be modified or amended only if such modification or amendment is set forth in a written agreement signed by or on behalf of all Settling Parties and only if the Independent Fiduciary approves such modification or amendment in writing. Following entry of the Preliminary Approval Order, this Settlement Agreement may be modified or

amended only by written agreement signed on behalf of all Settling Parties, and only if the modification or amendment is approved by the Independent Fiduciary in writing and approved by the Court.

16.13.  The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party and specifically waiving such provisions. The waiver of any breach of this Settlement Agreement by any party shall not be deemed to be or construed as a waiver of any other breach or waiver by any other party, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

16.14.  Each of the Settling Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that it will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter of this Settlement Agreement.

16.15.  All of the exhibits attached hereto are incorporated by reference as though fully set forth herein.  The exhibits shall be: Exhibit A – Notice of Class Action Settlement and Fairness Hearing; Exhibit B – Short Form Post Card; Exhibit C - Plan of Allocation; Exhibit D – Preliminary Approval Order; Exhibit E – Final Approval Order; Exhibit F – Form of CAFA Notice.

16.16.  No provision of the Settlement Agreement or of the exhibits attached hereto shall be construed against or interpreted to the disadvantage of any party to the Settlement Agreement because that party is deemed to have prepared, structured, drafted, or requested the provision.

16.17.  Principles of Interpretation.  The following principles of interpretation apply to this Settlement Agreement:

   16.17.1.  Headings.  Any headings included in this Settlement Agreement are for convenience only and do not in any way limit, alter, or affect the matters contained in this Settlement Agreement or the Articles or Sections they caption.

   16.17.2.  Singular and Plural.  Definitions apply to the singular and plural forms of each term defined.

   16.17.3.  Gender.  Definitions apply to the masculine, feminine, and neuter genders of each term defined.

   16.17.4.  References to a Person.  References to a Person are also to the Person's permitted successors and assigns, except as otherwise provided herein.

   16.17.5.  Terms of Inclusion.  Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

16.18. <u>Survival</u>.  All of the covenants, representations, and warranties, express or implied, oral or written, concerning the subject matter of this Settlement Agreement are contained in this Settlement Agreement.  No Party is relying on any oral representations or oral agreements.  All such covenants, representations, and warranties set forth in this Settlement Agreement shall be deemed continuing and shall survive the Settlement Effective Date.

16.19. <u>Notices</u>.  Any notice, demand, or other communication under this Settlement Agreement (other than the Settlement Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier or via e-mail:

IF TO CLASS REPRESENTATIVE:

> Paul Secunda
> WALCHESKE & LUZI, LLC
> 235 Executive Dr., Suite 240
> Brookfield, Wisconsin 53005
> Tel.: 262.780.1953
> psecunda@walcheskeluzi.com

IF TO DEFENDANTS:

> Deborah S. Davidson
> MORGAN, LEWIS & BOCKIUS, LLP
> 110 N. Wacker Drive
> Chicago, IL 60601
> Tel: 312.324.1000
> Fax: 312.324.1001
> deborah.davidson@morganlewis.com

Any Settling Party may change the address at which it is to receive notice by written notice delivered to the other Settling Parties in the manner described above.

16.20. <u>Entire Agreement</u>.  This Settlement Agreement and the exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any party concerning the Settlement other than those contained in this Settlement Agreement and the exhibits thereto. It specifically supersedes any settlement terms or settlement agreements relating to the Defendants that were previously agreed upon orally or in writing by any of the Settling Parties.

16.21. <u>Counterparts</u>.  The Settlement Agreement may be executed by exchange of executed signature pages, and any signature transmitted by facsimile or e-mail attachment of scanned signature pages for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement.  The Settlement Agreement may be executed in any number of

counterparts, and each of such counterparts shall for all purposes be deemed an original, and all such counterparts shall together constitute the same instrument.

16.22. <u>Binding Effect</u>.  This Settlement Agreement binds and inures to the benefit of the Settling Parties hereto, their assigns, heirs, administrators, executors, and successors.

16.23. <u>Destruction/Return of Confidential Information</u>.  All originals, copies, and summaries of documents, presentations, and data provided to Class Counsel by Defendants in connection with the mediation or other settlement negotiations in this matter, including e-mail attachments containing such materials, may be used only with respect to this Settlement and no other purpose, and may not be used in any way that violates any existing contractual agreement, statute, or rule. Further, the Settling Parties agree that the preliminary and final lists of Class Members are confidential and may be used only with respect to this Settlement, and no other purpose. Further, the Settling Parties shall have the right to continue to designate documents provided to any party in connection with this Settlement Agreement as confidential pursuant to this Section.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement on the dates set forth below.

Date:   August 13, 2025

On Behalf of Plaintiff, Individually and as Representative of the Settlement Class:

/s/ Paul M. Secunda
_____

Paul M. Secunda
**WALCHESKE & LUZI LLC**
235 North Executive Drive, Suite 240
Brookside, WI 53005
Tel. (414) 828-2372
psecunda@gmail.com

*Counsel for Plaintiff*

Date:   August 13, 2025_____

On Behalf of Defendants:

/s/ Deborah S. Davidson
_____

Deborah S. Davidson
**MORGAN, LEWIS & BOCKIUS, LLP**
110 N. Wacker Drive
Chicago, IL 60601
Tel: 312.324.1000
deborah.davidson@morganlewis.com

*Counsel for Defendants*